

**FILED**

9/25/2025

RC

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

Alfred Holt and Marilia Coutinho Espinola,

Plaintiffs,

vs.

BH Management Services, LLC,
Amzak Meadows, LLC, and
Amzak Waukegan, LLC,
Katrina Blair, and
LaQuevia Miller,

Defendants.

1:25-cv-10936
Judge LaShonda A. Hunt
Magistrate Judge Keri L. Holleb Hotaling
CaT 2/RANDOM

)
)     Case No.:
)     JURY TRIAL DEMANDED
)
)
)
)

**RECEIVED**

SEP 1 0 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### COMPLAINT AND JURY DEMAND

### NATURE OF THE ACTION

This is a civil rights and housing discrimination action arising from Defendants' pattern of racial

discrimination, retaliatory eviction efforts, and unlawful housing practices against Plaintiffs, a

Black tenant and his Afro-Latina spouse.

### INTRODUCTION

Plaintiffs Alfred Holt and Marilia Coutinho Espinola, residents of 805 Baldwin Avenue, Apt.

303, Waukegan, Illinois, allege that Defendants BH Management Services, LLC, Amzak

Waukegan, LLC, Amzak Meadows, LLC, Katrina Blair, and LaQuevia Miller engaged in a

multi-year course of racial discrimination, retaliation, and tortious conduct following Holt's

protected complaint on September 25, 2024. This action seeks damages, injunctive relief, and expungement of adverse records for violations of the Fair Housing Act, § 1981, and Illinois law.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over federal claims under 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367(a).

3. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events occurred in Lake County, Illinois, within this District.

## PARTIES

4. Plaintiff Alfred Holt resides at 805 Baldwin Avenue, Apt. 303, Waukegan, Illinois, and operates a business developing AI-based suicide-prevention technology for the U.S. Department of Veterans Affairs (VA).

5. Protected Class. Plaintiffs are Black (Holt) and Afro-Latina/Brazilian (Espinola), and thus members of protected classes under the Fair Housing Act.

6. Plaintiff Marilia Coutinho Espinola, Holt's spouse, resides at the same address and is a Registered Behavior Technician (RBT) serving children with autism.

7. Defendant BH Management Services, LLC is a Delaware limited liability company with its principal place of business in Des Moines, Iowa, managing Imperial Tower Apartments, 805 Baldwin Avenue, Waukegan, Illinois.

8. Defendant Amzak Waukegan, LLC is, upon information and belief, an owner or controller of the property at 805 Baldwin Avenue.

9. Defendant Amzak Meadows, LLC is, upon information and belief, an owner or controller of the property at 805 Baldwin Avenue.

10. Defendant Katrina Blair served as Property Manager for the property at all relevant times and acted within the scope of her employment with BH Management.

11. Defendant LaQuevia Miller served as Assistant Property Manager for the property at all relevant times and acted within the scope of her employment with BH Management.

12. At all relevant times, Defendants acted jointly and severally through their agents and employees.

13. Agency/Vicarious Liability. At all times, Blair and Miller acted within the scope of their employment for BH Management and for the owner entities, which are vicariously liable for their acts and omissions.

14. Joint Enterprise/Alter Ego (pleaded in the alternative). BH Management acted as agent for the owner entities (Amzak Waukegan, LLC and Amzak Meadows, LLC) in managing the property, including towing decisions, lease enforcement, and eviction actions.

15. Vendor Agency. TNT Towing/Recovery and related personnel acted as Defendants' agents in enforcing parking rules on the property, within the scope of Defendants' control and direction regarding towing criteria and authorizations.

16. Doe Defendants 1–5. Individuals and entities whose identities are presently unknown, including towing personnel and corporate agents, acted in concert with or at the direction of

Defendants. Plaintiffs will amend to name them when identified. Plaintiffs will diligently seek their identities in discovery and promptly amend.

## FACTUAL ALLEGATIONS

17. Plaintiffs have resided at 805 Baldwin Avenue, Apt. 303, since 2019, maintaining good standing as tenants by curing any short payment delays each month, until retaliatory actions commenced in October 2024.

18. From 2021 through 2023, Defendants issued multiple 5-day eviction notices (Exhibit I). Because the property is a covered dwelling under CARES Act § 4024(c) (see Exhibit S), a 30-day notice was required. Plaintiffs cured any short delays each month.

19. Timeliness/Continuing Violation. Defendants' notice practices from 2021–2023 are part of a continuing course of discriminatory and retaliatory conduct culminating in 2024–2025 adverse actions. Plaintiffs assert these facts both as timely conduct and, if necessary, as background evidence supporting discriminatory intent and pretext. Claims are timely under 42 U.S.C. § 3613(a)(1)(A) and, alternatively, under the continuing-violation doctrine as the conduct culminated in 2024–2025.

20. On September 25, 2024, Holt complained to management regarding racial profiling, discriminatory lease enforcement, and the use of a towing vendor with a history of racist conduct (Exhibit C; Exhibit O).

21. Within days, between September 26 and 30, 2024, Defendants disabled Plaintiffs' RentCafe payment portal and removed them from the resident system, with the portal displaying: "You are

4

not currently listed as a resident. Please contact your property management company for more information" (Exhibit M).

22. On September 30, 2024, Espinola emailed Property Manager Katrina Blair to report the portal block and request the exact balance due (Exhibit K). Access remained blocked until August 2025, with Defendants offering only ad-hoc, off-portal payment options that failed to restore Plaintiffs' resident status.

23. On October 15, 2024, Assistant Manager LaQuevia Miller, accompanied by maintenance staff member Federico Avalos, entered Plaintiffs' apartment without notice or consent, bypassing multiple locks (Exhibit R). Miller later claimed to have spoken with Holt inside; Holt was showering and unaware, as corroborated by his affidavit (Exhibit F). Mr. Avalos is not a defendant and is identified solely to establish the unauthorized entry.

24. On October 23, 2024—28 days after Holt's complaint—Defendants served a 10-day eviction notice alleging marijuana use and an unauthorized pet without evidence, testing, or inspection, which Plaintiffs assert are fabricated and baseless, and bypassed their progressive-discipline policy requiring fines before eviction (Exhibit E-1).

25. Defendants pursued eviction proceedings, Case No. 24 EV 1836, in Lake County Circuit Court from October 2024 to July 23, 2025, before voluntarily dismissing the case without prejudice (Exhibit E-2).

26. Additional wrongful acts include:

a. Unlawful vehicle tows on September 15, 2024, and November 10, 2024, later refunded by U.S. Bank as fraudulent (Exhibit D), with photographs showing a neighboring vehicle

5

encroaching on Plaintiffs' space was not towed while Plaintiffs' car was (Exhibit U), suggesting discriminatory or retaliatory enforcement.

b. Premature return of Holt's business package on May 12, 2025, violating the lease's three-day return policy, resulting in approximately $15,000 in losses (Exhibit Q).

c. A January 2025 "knock-and-offer" by TNT Towing/Recovery and management, including Katrina Blair, attempting to settle with Plaintiffs during U.S. Bank's towing-fraud investigation (Exhibit C).

27. The Waukegan Police Report (Exhibit O) documents two tows (Sept. 15 and Nov. 10, 2024) despite valid registration and reflects management's awareness of prior racist conduct by the towing vendor. Plaintiffs allege Defendants nevertheless continued to employ the vendor, supporting discriminatory motive and deliberate indifference, and corroborating Plaintiffs' retaliation allegations.

28. The nine-month litigation disrupted Holt's work on two VA suicide-prevention proposals with combined ceilings of approximately $8.5 million, leading to lost business opportunities (Exhibits A, B, N). The VA denied the "InVirtCare" concept paper on December 11, 2024 (Exhibit B-2), during the period of retaliatory actions and litigation-related disruption.

29. Espinola developed new ADHD and anxiety diagnoses in late 2024, requiring treatment with fluoxetine and Adderall, as documented in mental health treatment records from her treating providers, including psychologist and psychiatrist clinical notes (Exhibits H, P, T).

30. Espinola experienced three stress-related incidents: (a) a December 10, 2024 accident in which, during a panic attack while driving, she struck a median, causing damage to the driver's

6

side door (Exhibit G-2; no citation issued); (b) a January 22, 2025 accident where, after a panic attack, she failed to yield and received a citation (Exhibit G-3.1); and (c) a January 29, 2025 three-vehicle accident where, after a panic attack, she failed to yield and received a citation (Exhibit G-3.2), with related claims, invoices, and photos (Exhibits G-4, G-5, G-6, G-7, G-8).

31. Since January 2025, Espinola has been unable to drive due to trauma, resulting in a loss of approximately $60,000 in RBT income, supported by payroll records (Exhibits J, J-1, J-2).

32. On July 25, 2025, Plaintiffs notified Defendants of their intent to sue. On August 1, 2025, Defendants reactivated the portal and issued a 30-day Notice of Termination demanding $16,847.67, including nine $140 late fees assessed during the blocked-portal period (Exhibit L).

33. Injunctive-Relief Allegations. The portal lockout and selective towing are ongoing or reasonably likely to recur absent injunctive relief; monetary damages cannot ensure continued access to housing services or prevent future retaliatory eviction attempts. Plaintiffs face irreparable harm from potential loss of housing, interference with medical treatment and employment, and deprivation of statutory civil-rights protections. The balance of equities and public interest favor an injunction preventing further retaliation, discriminatory enforcement, or unauthorized entry while this case proceeds.

34. Defendants' conduct reflects a pattern of racial discrimination, retaliation, and harassment, proximately causing Plaintiffs' economic, medical, and emotional damages.

## CAUSES OF ACTION

### COUNT I — Fair Housing Act Discrimination (42 U.S.C. § 3604(b))

35. Plaintiffs reallege paragraphs 1–34.

36. Defendants' racial profiling, use of a towing vendor with a documented history of racist conduct, and unequal lease enforcement violate 42 U.S.C. § 3604(b) (terms, conditions, or privileges of rental). See *Block v. Frischholz*, 587 F.3d 840, 846 (7th Cir. 2009).

37. Hostile Housing Environment (FHA). Defendants' conduct—including selective towing, portal lockout impeding rent payment, an unannounced apartment entry, and initiating an unsubstantiated rule-violation eviction—was sufficiently severe or pervasive to interfere with Plaintiffs' use and enjoyment of their dwelling because of race, in violation of 42 U.S.C. § 3604(b) and Seventh Circuit precedent recognizing hostile-environment theories under the FHA.

38. Disparate Treatment. Defendants selectively enforced parking/towing and rule provisions against Plaintiffs while not enforcing the same provisions against similarly situated residents (see Exhibit U), supporting an inference of discriminatory intent. Defendants' race-based motive was a motivating factor, and alternatively a but-for cause, of the adverse actions alleged.

39. Comparators. On or about September 15, 2024, a neighboring vehicle encroaching into Plaintiffs' leased space was not towed while Plaintiffs' vehicle was, despite both being similarly situated with respect to parking rules (see photo set, Exhibit U). Plaintiffs are informed and believe additional residents committing comparable alleged violations were not towed or evicted; the identity of such comparators will be developed in discovery.

8

40. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

**COUNT II — Fair Housing Act Retaliation (42 U.S.C. § 3617)**

41. Plaintiffs reallege paragraphs 1–34.

42. The retaliatory blocking of the payment portal, issuance of a 10-day rule-violation notice on October 23, 2024 alleging marijuana use and an unauthorized pet without substantiation, and assessment of late fees following Holt's protected complaint constitute coercion, intimidation, or interference under 42 U.S.C. § 3617. See *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 867 (7th Cir. 2018).

43. Plaintiffs engaged in protected activity on September 25, 2024 (discrimination complaint); Defendants knew of that activity; within days Defendants interfered with Plaintiffs' tenancy by disabling the payment portal, later initiated eviction, and added late fees during the lockout period; and Plaintiffs suffered injury. These facts state a claim under 42 U.S.C. § 3617. Defendants' retaliatory motive was a motivating factor and, in the alternative, a but-for cause of the adverse actions. Retaliation is independently actionable under 42 U.S.C. § 3617 regardless of the merits of the underlying complaint.

44. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

**COUNT III — Illinois Retaliatory Eviction Act (765 ILCS 720/1)**

45. Plaintiffs reallege paragraphs 1–34.

46. Plaintiffs engaged in protected activity by complaining of discrimination on September 25, 2024. Defendants thereafter interfered with and attempted to terminate Plaintiffs' tenancy by disabling the rent portal, issuing a 10-day marijuana notice without substantiation, assessing late fees during the lockout, and serving a 30-day termination notice. Such conduct violates 765 ILCS 720/1. Plaintiffs suffered damages.

47. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their participation.

## COUNT IV — CARES Act (CARES Act § 4024(c); 15 U.S.C. § 9058 (note)) (Alternative Pleading)

48. Plaintiffs reallege paragraphs 1–34.

49. The property, as a covered dwelling under CARES Act § 4024(c); 15 U.S.C. § 9058 (note), due to Defendants' receipt of CARES Act funds (Exhibit S), required a 30-day notice for eviction. Defendants instead issued 5-day notices in 2021–2023 (Exhibit I) in violation of this requirement.

50. Alternative Pleading. To the extent the property was a "covered dwelling" by virtue of federally backed financing or participation in federal assistance programs, Defendants were required to provide a 30-day notice to vacate. Defendants instead issued 5-day notices in 2021–2023 (Exhibit I). In the alternative, the repeated 5-day notices—while knowing Plaintiffs cured short delays—constitute discriminatory and retaliatory enforcement actionable under the FHA and §1981 and constitute unfair or deceptive conduct under Illinois law. Plaintiffs will seek discovery regarding federally backed financing/federal assistance that confers "covered dwelling" status. Plaintiffs assert this claim in the alternative and allege that, regardless of

10

independent enforceability, Defendants' noncompliance evidences discriminatory and retaliatory intent actionable under the FHA and §1981 and constitutes unfair or deceptive conduct under Illinois law.

51. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

## COUNT V — 42 U.S.C. § 1981 (Race Discrimination in Contracting)

52. Plaintiffs reallege paragraphs 1–34.

53. Plaintiffs, who are Black (Holt) and Afro-Latina (Espinola), have equal rights to make and enforce housing contracts, 42 U.S.C. § 1981. Defendants intentionally discriminated on the basis of race by selectively enforcing rules (including towing), disabling Plaintiffs' payment portal, assessing late fees during a retaliatory lockout, and initiating baseless eviction efforts. Defendants' actions impaired the making, performance, and enjoyment of Plaintiffs' lease and related benefits. Defendants' conduct was willful or in reckless disregard of Plaintiffs' rights. Plaintiffs seek compensatory and punitive damages and attorneys' fees under 42 U.S.C. § 1988.

54. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

## COUNT VI — Breach of Lease / Breach of Implied Covenant of Good Faith and Fair Dealing (Illinois law)

55. Plaintiffs reallege paragraphs 1–34.

56. The lease and implied covenant required Defendants to act in good faith and not unreasonably interfere with Plaintiffs' tenancy. Defendants materially breached by disabling the

payment portal, misapplying late fees created by the lockout, authorizing improper tows, and entering the unit without notice. Plaintiffs suffered damages. (Pled in the alternative to Count VII.)

57. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

## COUNT VII — (Alternative) Breach of the Implied Covenant of Quiet Enjoyment (Illinois Common Law)

58. Plaintiffs reallege paragraphs 1–34.

59. Defendants substantially interfered with Plaintiffs' use and enjoyment of their home by disabling the rent portal, initiating baseless eviction, repeatedly towing their vehicle, and entering without notice, causing actual damages. The interference was substantial and unreasonable, not de minimis, and proximately caused actual damages.

60. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

## COUNT VIII — Trespass to Chattels (and, in the Alternative, Conversion) (Illinois Common Law)

61. Plaintiffs reallege paragraphs 1–34.

62. By causing Plaintiffs' vehicle to be towed without lawful justification, Defendants intentionally interfered with Plaintiffs' possessory rights, causing loss and expense (Exhibit D). This constitutes trespass to chattels. In the alternative, the tow(s) amounted to conversion by

12

seriously interfering with Plaintiffs' possessory rights, entitling them to damages (including punitive damages).

63. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

## COUNT IX — Common-Law Trespass and Intrusion Upon Seclusion (Illinois Law)

64. Plaintiffs reallege paragraphs 1–34.

65. The October 15, 2024 unauthorized entry by LaQuevia Miller and Avalos, without notice or consent and bypassing multiple locks (Exhibit R), constitutes trespass and intrusion upon seclusion under Illinois law. See *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E.2d 414, 424–26 (Ill. 2012) (intrusion upon seclusion); *In re Chicago Flood Litig.*, 680 N.E.2d 265, 277 (Ill. 1997) (trespass).

66. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

## COUNT X — Intentional Infliction of Emotional Distress (Illinois Law)

67. Plaintiffs reallege paragraphs 1–34.

68. Defendants' extreme and outrageous conduct—racial discrimination, retaliation, unauthorized entry, and false payment demands—intentionally or recklessly caused severe emotional distress, as evidenced by medical records and affidavits (Exhibits F, G, H, P, T). See *McGrath v. Fahey*, 126 Ill. 2d 78 (1988).

13

69. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

**COUNT XI — Negligent Hiring, Retention, and Supervision (Illinois law)**

70. Plaintiffs reallege paragraphs 1–34.

71. Defendants knew or should have known of the towing vendor's racist conduct and of personnel who conducted unauthorized entry, yet retained and directed them without adequate policies or supervision. This negligence proximately caused Plaintiffs' property loss, emotional distress, and economic damages.

72. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their participation. (Pled in the alternative to intentional theories.)

**COUNT XII — Consumer Fraud / Deceptive Practices (Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2)**

73. Plaintiffs reallege paragraphs 1–34.

74. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/2, prohibits unfair or deceptive acts or practices in the conduct of trade or commerce, including housing transactions affecting consumers.

75. Defendants engaged in an unfair practice by disabling Plaintiffs' RentCafe payment portal from September 26, 2024, to August 2025 (Exhibit M) and assessing late fees totaling $1,260 (9 × $140) during that period (Exhibit L), despite Plaintiffs' attempts to pay via email on September 30, 2024 (Exhibit K). This conduct was intended to deceive Plaintiffs into incurring penalties they could not avoid due to the lockout.

76. Defendants' actions were unfair because they offended public policy (e.g., fair housing principles), were immoral, unethical, oppressive, or unscrupulous, and caused substantial injury to Plaintiffs that was not outweighed by countervailing benefits to consumers or competition. See *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002).

77. Plaintiffs suffered actual damages, including late fees and stress, proximately caused by the portal lockout and related practices, as documented in Exhibits H, P, and T.

78. Defendants' conduct was willful or in reckless disregard of Plaintiffs' rights, warranting punitive damages.

79. Liability is alleged against Doe Defendants 1–5 insofar as discovery reveals their direct participation.

**COUNT XIII — Abuse of Process (Illinois Law)**

80. Plaintiffs reallege paragraphs 1–34.

81. Defendants used legal process (including service of a 10-day rule-violation notice and filing Case No. 24 EV 1836) primarily for an ulterior purpose—to retaliate for Plaintiffs' protected complaint, to coerce payment of late fees generated by a portal lockout, and to intimidate Plaintiffs into abandoning their discrimination claims.

82. Defendants' acts constitute an abuse of process because the process was used to accomplish a result beyond the proper scope of the proceeding, including coercion and retaliation rather than adjudication of a bona fide breach.

83. As a direct and proximate result, Plaintiffs suffered damages as alleged herein.

**COUNT XIV — 42 U.S.C. § 1982 (Property Rights)**

84. Plaintiffs reallege paragraphs 1–34.

85. Defendants intentionally discriminated on the basis of race in Plaintiffs' rights "to inherit, purchase, lease, sell, hold, and convey real and personal property," 42 U.S.C. § 1982, by selectively enforcing rules, disabling the payment portal, imposing late fees during a retaliatory lockout, and initiating baseless eviction, impairing Plaintiffs' leasehold interests and related property rights.

86. Plaintiffs suffered damages as alleged herein.

## DAMAGES SOUGHT

87. Proximate damages include:

a. Lost Business Opportunities (VA Projects). As a direct result of Defendants' conduct and the ensuing litigation burden, Plaintiffs missed critical milestones on two VA suicide-prevention proposals with a combined ceiling of approximately $8.5 million, resulting in lost business expectancy and lost profits that will be proven with reasonable certainty through contemporaneous proposal calendars, pipeline records, prior performance margins on comparable VA work, and corroborating communications (Exhibits A, B, N). Plaintiffs will offer evidence apportioning losses caused by Defendants' conduct versus market factors.

b. Economic Losses. Approximately $15,000 in business losses from the premature package return (Exhibit Q) and approximately $60,000 in lost RBT income due to Espinola's inability to drive (Exhibits J, J-1, J-2).

c. Emotional Distress. Damages reflecting Espinola's ADHD and anxiety diagnoses, accidents, and inability to drive, supported by medical records (Exhibits H, P, T).

d. Punitive damages to punish and deter willful misconduct, to be proven at trial.

88. Plaintiffs seek compensatory and punitive damages, the amounts of which will be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment for compensatory and punitive damages;

B. Issue preliminary and permanent injunctive relief barring further retaliation, harassment, or eviction proceedings and enjoining enforcement of the August 2025 Notice of Termination, including: (i) maintaining full portal access; (ii) waiving/removing all late fees assessed during the lockout; (iii) ceasing selective towing pending a uniform written policy filed with the Court; and (iv) no unit entries absent lawful notice or bona fide emergency;

C. Order Defendants to remove all late fees and negative ledger entries assessed during the blocked-portal period (September 26, 2024–August 2025) and restore accurate tenant records;

D. Declare under 28 U.S.C. § 2201 that Defendants' portal lockout, selective towing, and unauthorized entry violated the FHA, § 1981, and Illinois law;

E. Require Defendants to expunge any negative rental history, internal ledger notations, and third-party reports generated from the portal lockout and dismissed eviction;

17

F. Enjoin Defendants from retaliatory or selective towing absent a uniform, written, and non-discriminatory policy disclosed to Plaintiffs and the Court;

G. Award prejudgment interest where permitted by law;

H. Enter a preservation order requiring Defendants to retain towing authorizations, video footage, portal logs/audit trails, ledger histories, and internal communications;

I. Award costs;

J. Award reasonable attorney's fees and costs under 42 U.S.C. §§ 3613(c)(2), 1988, and 815 ILCS 505/10a(c);

K. Grant all further just relief; and

L. Set an expedited briefing and hearing schedule under Fed. R. Civ. P. 65 for Plaintiffs' motion for temporary restraining order and/or preliminary injunction.

Plaintiffs reserve the right to seek attorney's fees under 42 U.S.C. §§ 3613(c)(2) and 1988 if represented by counsel.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues triable by jury.

DATED: September 5, 2025

**Respectfully submitted,**
Alfred Holt, Pro Se
Marilia Coutinho Espinola, Pro Se
805 Baldwin Avenue, Apt. 303
Waukegan, IL 60085
(224) 518-8376
albizsmart@gmail.com

18

**Verification**

*(28 U.S.C. § 1746)*

We declare under penalty of perjury that the foregoing is true and correct.

Dated: September 5, 2025

Signature: _____
　　　　　　　　Alfred Holt

Signature: _____
　　　　　　Marilia Coutinho Espinola

# Exhibit Index

Exhibit A: VA Correspondence – Brimmer & Holloway Emails (Dec. 2024)

Exhibit B: VA Proposal – "InVirtCare: On-Demand, Veteran-Led In-Person Crisis Response for Suicide Prevention" (Nov. 20, 2024)

Exhibit B-2: VA Denial Email (Dec. 11, 2024)

Exhibit C: Transcript of conversation with Property Manager Katrina Blair admitting awareness of racist towing vendor, 2024–2025

Exhibit D: U.S. Bank refund documentation for tows, 2024

Exhibit E-1: 10-Day Notice of Termination of Tenancy, Oct. 22, 2024

Exhibit E-2: Eviction dismissal order, July 23, 2025, Case No. 24 EV 1836

Exhibit F: Affidavit of Alfred Holt, August 2025

Exhibit G: Affidavit of Marilia Coutinho Espinola, August 2025

Exhibit G-1: Photograph of accident scene, Jan. 22, 2025 – Marilia panic attack, failed to yield; backend damage to another vehicle, citation issued

Exhibit G-2: Photograph of damage to driver's side door of Marilia's car, Dec. 2024 accident (panic attack, median strike, no citation)

Exhibit G-3.1: Records of the January 22, 2025 accident in which Marilia failed to yield and received a citation; includes related medical and incident documentation

Exhibit G-3.2: Records of the January 29, 2025 three-vehicle accident in which Marilia failed to yield and received a citation; includes related documentation

Exhibit G-4: Progressive subrogation, $7,814.56

Exhibit G-5: GEICO subrogation, $16,103.25

Exhibit G-6: Waukegan FD invoice, $494.00

Exhibit G-7: Photos of debris, damage, recovery

Exhibit G-8: Car lender demand, $7,008.47

Exhibit H: Psychiatrist clinical notes, fluoxetine, Adderall; anxiety/ADHD (redacted for court use)

Exhibit I: 5-day eviction notices, 2021–2023 (two available)

Exhibit J: RBT income evidence summary

Exhibit J-1: Paystub, July 15, 2025

Exhibit J-2: Time-off & coverage disruptions, PTO request + July 15 coverage text

Exhibit K: September 30, 2024 email re: blocked portal

Exhibit L: 30-day Notice of Termination, August 2025 & late-fee ledger

Exhibit M: RentCafe screenshot, September 2024: "You are not currently listed as a resident"

Exhibit N: Financial estimates of lost federal contracting opportunities, ~$8.5M

Exhibit O: Waukegan Police report, towing/racial discrimination

Exhibit P: Psychologist clinical notes summary – Anna Matyja, PhD (June 2025)

Exhibit Q: May 2025 premature package return, emails/docs

Exhibit R: Unlawful Entry Evidence, October 15, 2024 & false "conversation" claim

Exhibit S: Documentation of Defendants' receipt of CARES Act funds

Exhibit T: Psychiatric review from treating doctor, 2024–2025

Exhibit U: Photographic evidence of selective parking enforcement, September 2024

# EXHIBIT A

VA Correspondence – Brimmer & Holloway Emails (Dec. 2024)

## Follow-up from IEX – End Veteran Suicide - InVirtCare

**Brimmer, Dave (he/him/his)** <David.Brimmer@va.gov>
To: Alfred Holt <alfred.holt@invirtcare.com>

Wed, Dec 11, 2024 at 2:05 PM

Hi Alfred,

That's not good news. I just read Section V of the BAA and it's very broad. Again, I'm not a part of the process but it may have been related to cost? I might suggest reaching out to the BAA email address to ask which specific parts of Section V you were deficient in before resubmitting (which I encourage you to do).

I still think it's a strong proposal with lots of merit. Hopefully, we can get you an opportunity to showcase your work for veterans. Please don't stop trying. If this doesn't pan out, there will be other opportunities for sure.

Keep your head up,
Dave

### Dave Brimmer, MS, MPA
*Pathfinder Tech Scout*
VHA Innovation Ecosystem

 **Aminah Holloway, MSW** (She/Her) · 1:13 am
Hi Alfred,

I hope this message finds you well. My name is Aminah Holloway and as a veteran and mental health professional, I am deeply inspired by InVirtCare's mission to close the gaps in veteran mental health support. I believe the veteran-to-veteran approach is incredibly impactful and aligns closely with my passion for serving those who served our country.

Recently, I came across the posting for the Veteran Crisis Responder position. With my background in crisis intervention, mental health, and peer support, I believe I could contribute meaningfully to InVirtCare's mission. I would love to learn more about your vision for this role and how I can best serve your organization and the veterans you support.

Thank you for the incredible work InVirtCare is doing. I hope to have the opportunity to connect and discuss how I might contribute to your mission.

Warm regards,
Aminah Holloway
MSW | Army Veteran

# EXHIBIT B

VA Proposal – "InVirtCare: On-Demand, Veteran-Led
In-Person Crisis Response for Suicide Prevention" (Nov. 20,
2024)

InVirtCare

## Exhibit B: VA Proposal

**November 20, 2024**

**Subject**: Submission of Concept Paper: *InVirtCare: On-Demand, Veteran-Led In-Person Crisis Response for Suicide Prevention*

Dear VA BAA Review Team,

I am pleased to submit the attached concept paper, *InVirtCare: On-Demand, Veteran-Led In-Person Crisis Response for Suicide Prevention,* for your consideration under the VA's Broad Agency Announcement. This proposal outlines an innovative, veteran-centric solution designed to complement existing VA initiatives and significantly reduce veteran suicides through rapid, in-person crisis response.

**Key Project Details**:

- **Requested Budget**: $2 million for the initial setup phase and $4 million for the pilot phase.
- **Project Duration**: 7–12 months for the pilot phase.
- **Projected Impact**: Deliver 5,000 in-person crisis interventions, achieve a 15–20% reduction in suicide rates in targeted areas, and lay the foundation for national scalability.

InVirtCare's approach aligns with the VA's mission by providing trusted, veteran-to-veteran crisis intervention while integrating seamlessly with existing programs like the Veterans Crisis Line (VCL), VMET, and the firearm lockbox initiative. Our platform empowers the VA to offer a **scalable**, **cost-effective**, and **innovative solution** to meet the urgent needs of veterans in crisis.

I am confident that our proposal will demonstrate InVirtCare's potential to save lives and complement the VA's critical work. Should you have any questions or require further information, please do not hesitate to contact me directly at **(224) 518-8376** or **alfred.holt@invirtcare.com**.

Thank you for considering our submission. I look forward to the opportunity to collaborate in addressing this vital mission.

Sincerely,
**Alfred Holt**
Co-Founder/CEO
InVirtCare
www.invirtcare.com



## InVirtCare: On-Demand, Veteran-Led In-Person Crisis Response for Suicide Prevention

### Overview of the Problem

Veteran suicide remains a critical issue, with over 6,000 veteran lives lost annually and the Veterans Crisis Line (VCL) receiving over 1 million crisis calls each year. While programs like VMET (Veteran Mental Evaluation Teams) provide crisis response, they present significant challenges. Many veterans are reluctant to engage with law enforcement during mental health emergencies, and providers lack the ability to track VMET responders in real-time, adding to the uncertainty and complexity of managing care effectively.

This underscores the urgent need for a veteran-centered solution that not only builds trust but also ensures accountability and flexibility. InVirtCare addresses these gaps by offering rapid, veteran-to-veteran in-person response, complemented by the ability to escalate interventions seamlessly to a live virtual call with a licensed mental health professional. This dual-layered approach prioritizes dignity, trust, and comprehensive care.

### Proposed Solution: InVirtCare

InVirtCare offers a groundbreaking, veteran-to-veteran, in-person response model designed to complement the VA's existing suicide prevention programs like the Crisis Line, Firearm Lockbox Program, and VMET by providing a decentralized, on-demand responder network. With a network of thousands of trained veterans, our responders are positioned to reach veterans in crisis within a 10-minute average response time in high-risk areas.

### Key Features:

- **Veteran Responders**: Our responders share a lived understanding of military experiences, building immediate trust and rapport with veterans in crisis. (View video https://youtu.be/UQxHK0nqof4?feature=shared)
- **Rapid Response Time**: Aiming for a 10–15 minute arrival time, even in rural and high-risk areas.
- **In-Person Response**: Responders are equipped with tablets to connect to a VA mental health professional if needed.
- **Real-Time Tracking System:** A built-in sophisticated tracking tool to monitor responder availability and location to ensure optimal deployment and response times. (View demo https://invirtcare.v0.build/ )
- **Crisis Line Integration**: Enhancing the VCL's capabilities by providing staff access to the InVirtCare platform, enabling them to request responders and visually track their real-time location relative to the veteran in need.
- **Support for Firearm Lockbox Program**: Complementing the VA's firearm lockbox initiative, InVirtCare responders can assist in distributing lockboxes and securing firearms during interventions.
- **App Accessibility**: Providers, VCL staff, the veterans and their family can all access the InVirtCare platform and request an onsite visit.
- **AI-Powered Risk Assessment:** First of its kind, a built-in artificial intelligence calendar to analyze personal and historical data, identifying high-risk life events, allowing proactive outreach and intervention. (View demo https://invirtcare-ai.v0.build/ )

- **Comprehensive Resource Navigation:** Assisting veterans in accessing VA and non-VA resources for housing, healthcare, and long-term support, facilitating a seamless transition from crisis intervention to sustained care.
- **Scalable Model:** Designed to evolve from a pilot program to a nationwide initiative capable of delivering 1 million annual visits to match the crisis line's call volume.

---

### Scaling Vision

Following the pilot, InVirtCare aims to scale nationally over 3–4 years to address up to 1 million visits annually, aligning with the current volume of VCL calls. This expansion will ensure nationwide access to life-saving in-person care for veterans in crisis.

---

### Cost-Effectiveness

InVirtCare's model offers substantial cost savings and enhanced efficiency compared to existing programs like VMET (Veteran Mobile Emergency Teams) by:

- Reducing hospitalizations, emergency service utilization, and law enforcement involvement.
- Delivering scalable, decentralized care through a trusted contingent responder network.

Our approach prioritizes dignity, trust, and rapid response, providing a veteran-centered alternative that aligns with the unique needs of those we serve.

With a $4 million budget for the pilot phase, we will fund responder training, platform enhancements, and operational costs. This investment bridges critical gaps in the VA's current crisis response framework while complementing existing initiatives such as the firearm lockbox program, ensuring a holistic and innovative approach to veteran suicide prevention.

---

### Team Expertise

- **Alfred Holt, CEO**: Over 15 years in staffing and software development, with a proven track record of scaling large teams for companies like Uber and Meta.
- **Mitchell Fong, COO**: Former VP of Virtual Care at Renown Health, driving innovative telehealth programs for a $2 billion organization.
- **James Roxburgh, Strategic Advisor**: Former CEO of Telehealth for Banner Health, overseeing mental health programs at an $8 billion healthcare network.
- **Shoshana Johnson, Board Member**: The first Black female POW in U.S. history, is a Purple Heart recipient and an outspoken advocate for veterans' mental health. Her lived experiences and dedication bring invaluable insight to our mission of preventing veteran suicide.

### Budget

**Setup Phase:** $2M

- Platform completion: $200,000
- Recruitment and training: $300,000
- Responder standby and response costs: $500,000


InVirtCare

- Operational expenses: $1M

   **Pilot Phase:** $4M

- Expanded responder network: $1.5M
- Crisis intervention operations: $1.5M
- Data collection, analysis, software optimization, and reporting: $1M

**Long-Term Vision**: Scale nationally over 3–4 years to reach 1 million annual visits, requiring sustained funding and VA partnership.

### Pilot Program Goals

The 7–12 month pilot program will deploy 80 veteran responders in urban and rural regions with high suicide rates. Key objectives include:

- **Visits**: 5,000 in-person crisis interventions during the pilot period.
- **Impact**: A projected 15–20% reduction in suicide rates in target areas.
- **Evaluation**: Metrics will include response time, crisis resolution rates, and follow-up care effectiveness.

### Key Metrics for Success

1. **Veteran Interventions**: Deliver 5,000 in-person visits during the pilot; scale to 1 million annually post-expansion.
2. **Response Time**: Maintain a 10–15 minute average in pilot areas.
3. **Suicide Reduction**: Achieve a 15–20% reduction in veteran suicides in pilot regions, leading to significant cost savings by decreasing hospitalization and emergency services utilization.
4. **Satisfaction**: Secure an NPS of 50+ and ensure continuous quality improvement through veteran feedback.
5. **Conversion**: Transition at least 5% of veterans assisted into responder roles
6. **Lives Saved**: Measure and document the number of lives saved through pilot interventions, providing data to support broader implementation.

### Conclusion and Call to Action

InVirtCare is a transformative solution to the veteran suicide crisis. By leveraging trust, accountability, and innovation, we complement and enhance existing VA initiatives to create a measurable, life-saving impact. Together, we can set a new standard for suicide prevention. We invite the VA to partner with us to launch this pilot program and lead the charge in preventing veteran suicide.

### References

The effectiveness of suicide prevention programs varies by population and approach. Key examples include:

1. **Air Force Suicide Prevention Program (AFSPP)**: Implemented in 1996, AFSPP reduced suicide rates among Air Force personnel by approximately **21%**, with annual suicides dropping from 68 in 1994 to 20 in 1999 [1].
2. **Capital Region Suicide Prevention Program**: Launched in New York, this program targets underserved communities, aiming for a **10% reduction** in suicide attempts and deaths through data-driven strategies [2]

# EXHIBIT B-2

VA Denial Email (Dec. 11, 2024)

M Gmail

## Concept Paper: InVirtCare – Veteran Suicide Prevention

**VHA Suicide Prevention BAA** <VHASuicidePreventionBAA@va.gov>
To: Alfred Holt <alfred.holt@invirtcare.com>

Wed, Dec 11, 2024 at 12:59 PM

Good afternoon,

Thank you for submitting a Concept Paper to the Department of Veterans Affairs (VA), Veterans Health Administration (VHA) Innovation Ecosystem (VHAIE) Broad Agency Announcement (BAA) for Suicide Prevention (36C10X24R0053).

Your Concept Paper *On-Demand 24/7, Veteran-Led, In-Person Crisis Response for Suicide Prevention* was reviewed and evaluated. We regret to inform you that will not be invited to submit for a full proposal, based on the criteria in Section V of the BAA. We value your interest in being part of the solution for suicide prevention for Veterans.

Should you wish to submit additional Concept Papers to the Department of Veterans Affairs (VA), Veterans Health Administration (VHA)Innovation Ecosystem (VHAIE) Broad Agency Announcement (BAA) for Suicide Prevention (36C10X24R0053), please do so prior to August 15, 2025.

Thank you on behalf of The Suicide Prevention BAA Review Team

[Quoted text hidden]

# EXHIBIT C

Transcript of conversation with Property Manager Katrina
Blair admitting awareness of racist towing vendor, 2024–2025

Ex: C

## Exhibit C: Audio Recording Transcript

### Transcript of Recorded Conversation

(November 23, 2024 Between Defendant and Property Manager Katrina Blair )

**Defendant (Mr. Holt):**

I don't understand how this happened again. My wife's car was towed even though we were wrongly towed last month and had to pay $370. Our registration has always been valid and we showed this to them the 1st time.

**Katrina Blair (Property Manager):**

Yeah, I remember. You mentioned that, and I did tell them to put your wife's car on the no-tow list. I don't know why they did it again.

**Defendant:**

This just feels like predatory towing. And the guy running that company, he's said racist things. You told me yourself that he is a racist.

**Katrina Blair:**

I know. I don't like them either. We've been trying to find another company to replace them, but we're still under contract with TNT Recovery. It's hard to get out of it.

**Defendant:**

But if you know they're racist, and you're still using them, that's the problem. You even admitted that you knew about it.

**Katrina Blair:**

I've had tenants complain before. I've even dealt with it myself. But until we get another vendor, there's nothing I can do.

**Defendant:**

This is more than just an inconvenience. This feels like targeted discrimination.

## Exhibit C: Audio Recording Transcript

**Katrina Blair:**

I get it. I'm not Black, but I understand how that feels. The things I've heard from that guy, I don't agree with it. But as a property manager, I don't have full control over vendor contracts.

**Defendant:**

But you're tolerating it. That's complicity.

**Katrina Blair:**

Like I said, I don't like it either. I'm trying to get someone else in here, but until then, my hands are tied.

# EXHIBIT D

U.S. Bank refund documentation for tows, 2024

**US bank.**

P.O. Box 6335
Fargo, ND 58125-6335

20740

December 27, 2024

000044609 01 SP     106481213269528 P N
MARILIA COUTINHO-ESPINOLA
805 BALDWIN AVE APT 303
WAUKEGAN, IL 60085-2359

D241212011715

Important information about your U.S. Bank Visa® Check Card account ending in 9153

Dear MARILIA COUTINHO-ESPINOLA,

We are writing to you about the recent transaction(s) you alerted us to on your account.

After reviewing the information that has been supplied, we have determined the transaction is correct as billed as you received the services represented by the transaction. Therefore, your claim is denied.

Due to the above circumstances, on 01/09/2025 we will be reversing the provisional credit issued to your account on 12/12/2024 in the amount of $370.00 plus any transactional fees previously refunded.

You have the right to receive copies of the information. Please contact us if you would like the information.

We apologize for any inconvenience. We are here to help. If you have any questions, please reach out to us. You can contact us through the U.S. Bank mobile app, usbank.com, or call us at 1-800-254-9874. We accept relay calls. Cardmember Service Representatives are available 24 hours a day, 7 days a week.

Sincerely,

Cardmember Service



# EXHIBIT E-1

10-Day Notice of Termination of Tenancy, Oct. 22, 2024

## 10-DAY NOTICE OF TERMINATION OF TENANCY

**To:** **Alfred Holt / Marilia Coutinho Espinola** / All Other Occupants And Lessees
**805 Baldwin Avenue**
**Apartment No. 303**
**Waukegan, Illinois 60085**

You are hereby notified that your right of possession of the following described premises, to wit: 805 Baldwin Avenue, Apartment No. 303, Waukegan, Illinois 60085, together with all other accommodations used by you in connection therewith, will be terminated as follows:

(1) You have breached the terms of your lease for the above accommodations, as follows: **Violation of Lease Paragraph 20 ["Prohibited Conduct"]** – "You and your occupants or guests may not engage in the following activities:...disturbing or threatening the rights, comfort, health, safety, or convenience of others; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia..."; **Violation of Lease Paragraph 27 ["Animals"]** – "Unless otherwise provided under federal, state, or local law, no animals...are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing..."; **Violation of Lease Paragraph 32 ["Default by Resident"]** – "You will be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to...(4) you...violate the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs...8) any illegal drugs, illegal weapons, or drug paraphernalia are found in your apartment...9) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 20..."; **Violation of Addendum Regarding Recreational and Medical Marijuana Use** – "...Possession, use, manufacture or sale of any illegal substance, including marijuana, or any use of marijuana by the tenant and/or guests will result in immediate termination..."; **Violation of Crime/Drug Free Housing Addendum** – "Resident...A. Shall not engage in any illegal or criminal activity on or about the premises...[including] the following...Violation of any federal drug laws governing the use, possession...of marijuana...Engaging in, or allowing, any behavior that is associated with drug activity...Any breach of the Lease Contract that otherwise jeopardizes the health, safety, and welfare of the Owner, Owner's agents, or other Residents..."; **Violation of Resident Handbook and Community Policies** – "Smoking...Your community follows and complies with federal law regarding marijuana and is, and will continue to be, a drug free community. Possession, use, manufacturing, or sale of any illegal substance, including marijuana, or marijuana concentrate..." The foregoing violations arise from the discovery of several lease violations after a unit inspection conducted by property management/staff on or about October 15, 2024, including but not limited to: 1) you allowing an unauthorized cat to reside in your unit; and 2) various drug paraphernalia found in your unit related to the alleged use of marijuana and/or tobacco.

The undersigned hereby elects to terminate your right of possession, and you are notified to quit and deliver up possession of the same within ten (10) days from the date of service hereof. Unless you promptly comply with the above, suit will be instituted for possession, together with costs.

Dated this 22nd day of October, 2024

Amzak Waukegan LLC /
Imperial Tower Apartments, Lessor

By: _____
Its Authorized Agent

# EXHIBIT E-2

Eviction dismissal order, July 23, 2025, Case No. 24 EV 1836

**Exhibit E-2: Eviction Dismissal Order**

STATE OF ILLINOIS

COUNTY OF L A K E

SS

Ex: E-2

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

Amzak Waukegan LLC

vs.

GEN. NO. 24 EV 1836

Alfred Holt
Marilia Coutinho Espinola
Unknown Occupants

**ORDER**

**THIS CAUSE COMING ON TO BE HEARD** for ~~trial~~ Status, proper notice having been given and
the Court being fully advised of the premises:

**IT IS ORDERED, ADJUDGED AND DECREED** as follows:

1.  That upon the oral motion of the Plaintiff, this cause is voluntarily dismissed
    without prejudice.

2.  No court costs incurred by the
    Defendants as the fees were previously
    waived.

3.  Clerk of Court shall impound the file.

Dated at Waukegan, Illinois this

23rd day of July 2025

ENTER: _07/23/2025_

Judge _____

ORDER PREPARED BY: Law Offices of David K. Barhydt
David K. Barhydt / Atty Code #6192456
2901 Butterfield Rd.
Oak Brook, IL 60523
(630) 218-4915
support@barhydtlaw.com

# EXHIBIT F

Affidavit of Alfred Holt, August 2025

## AFFIDAVIT OF ALFRED HOLT

STATE OF ILLINOIS  )
COUNTY OF LAKE  )

I, Alfred Holt, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. My name is Alfred Holt, and I am over the age of 18. I reside at 805 Baldwin Avenue, Apt. 303, Waukegan, Illinois 60085. I am a business owner developing AI-based suicide-prevention technology for the U.S. Department of Veterans Affairs (VA) and the spouse of Plaintiff Marilia Coutinho Espinola.

2. I have personal knowledge of the facts stated herein, and I am competent to testify to them if called as a witness.

3. I have resided at 805 Baldwin Avenue, Apt. 303, since 2019, maintaining good standing as a tenant alongside my wife, Marilia Coutinho Espinola, by curing any short payment delays each month, until retaliatory actions commenced in October 2024.

4. On September 25, 2024, I complained to property management about racial profiling, discriminatory lease enforcement, and the use of a towing vendor with a history of racist conduct. Within days, from September 26 to 30, 2024, Defendants disabled our RentCafe payment portal, preventing us from paying rent and displaying the message: "You are not currently listed as a resident. Please contact your property management company for more information."

5. On October 15, 2024, Assistant Property Manager LaQuevia Miller, accompanied by maintenance staff member Federico Avalos, entered our apartment without notice or consent, bypassing multiple locks. I was showering at the time and unaware of their

presence until later, which caused significant distress upon learning of the unauthorized entry.

6. On October 23, 2024, Defendants served a 10-day eviction notice alleging marijuana use and an unauthorized pet, claims I assert are fabricated and unsupported by evidence, testing, or inspection. This notice followed my protected complaint and disrupted my ability to focus on my work.

7. The ongoing issues, including unlawful vehicle tows on September 15 and November 10, 2024 (later refunded by U.S. Bank as fraudulent), and the portal lockout, interfered with my business operations. These actions disrupted my work on two VA suicide-prevention proposals with a combined ceiling of approximately $8.5 million, leading to the denial of the "InVirtCare" concept paper on December 11, 2024, and resulting in significant lost business opportunities.

8. On May 12, 2025, Defendants prematurely returned a critical business package, violating the lease's three-day return policy, which caused approximately $15,000 in losses due to missed deadlines and damaged materials.

9. The nine-month litigation from October 2024 to July 23, 2025, further strained my ability to meet VA project milestones, exacerbating the financial impact on my business.

10. The Defendants' actions including the unauthorized entry, baseless eviction notice, vehicle tows, and portal lockout substantially interfered with my ability to conduct business, causing financial and emotional harm.

11. I affirm that the statements made herein are true and correct to the best of my knowledge and belief.

**Exhibit F**

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

DATED: September 8, 2025

Alfred Holt

Subscribed and sworn to before me this 8 day of September, 2025.

# EXHIBIT G

Affidavit of Marilia Coutinho Espinola, August 2025

## AFFIDAVIT OF MARILIA COUTINHO ESPINOLA

STATE OF ILLINOIS  )
COUNTY OF LAKE  )

I, Marilia Coutinho Espinola, being first duly sworn on oath, depose and state as follows:

1. My name is Marilia Coutinho Espinola, and I am over the age of 18. I reside at 805 Baldwin Avenue, Apt. 303, Waukegan, Illinois 60085. I am a Registered Behavior Technician (RBT) and the spouse of Plaintiff Alfred Holt.

2. I have personal knowledge of the facts stated herein, and I am competent to testify to them if called as a witness.

3. I have resided at 805 Baldwin Avenue, Apt. 303, since 2019, maintaining good standing as a tenant alongside my husband, Alfred Holt, until retaliatory actions commenced in October 2024.

4. On September 25, 2024, my husband complained to property management about racial profiling, discriminatory lease enforcement, and the use of a towing vendor with a history of racist conduct.

5. Within days, from September 26 to 30, 2024, Defendants disabled our RentCafe payment portal, preventing us from paying rent and displaying the message: "You are not currently listed as a resident. Please contact your property management company for more information."

6. On September 30, 2024, I emailed Property Manager Katrina Blair to report the portal block and request the exact balance due. Access remained blocked until August 2025, forcing us to seek ad-hoc payment options that did not restore our resident status.

7. On October 15, 2024, Assistant Property Manager LaQuevia Miller, accompanied by maintenance staff member Federico Avalos, entered our apartment without notice or consent, bypassing multiple locks. I was not present at the time, and my husband was unaware of their entry as he was showering. This caused me significant distress and made me feel unsafe in my own home.

8. On October 23, 2024, Defendants served a 10-day eviction notice alleging marijuana use and an unauthorized pet, claims I assert are fabricated and unsupported by evidence, testing, or inspection. This notice followed my husband's complaint and further worsened my stress and fear of losing our home.

9. The ongoing harassment, including unlawful vehicle tows on September 15 and November 10, 2024, and the portal lockout, contributed to severe emotional distress. As a result, I developed new diagnoses of ADHD and anxiety in late 2024, requiring treatment with fluoxetine and Adderall, as documented by my psychiatrist (see Exhibit H).

10. My emotional distress manifested in panic attacks that directly impacted my ability to drive safely. Specifically:

    a. On December 10, 2024, during a panic attack, I struck a median, causing damage to the driver's side door of my vehicle (Exhibit G-2). No citation was issued.

    b. On January 22, 2025, after another panic attack, I failed to yield and received a citation (Exhibit G-3.1).

    c. On January 29, 2025, following a panic attack, I was involved in a three-vehicle accident, failed to yield, and received a citation (Exhibit G-3.2), with related claims and invoices (Exhibits G-4, G-5, G-6, G-7, G-8).

**Exhibit G**

11. Since January 2025, I have been unable to drive due to the trauma from these incidents. Losing the ability to drive has disrupted my independence, daily life, and ability to work as an RBT, resulting in a loss of approximately $60,000 in income, supported by payroll records (Exhibits J, J-1, J-2).

12. These experiences have left me with persistent anxiety, difficulty sleeping, and ongoing fear of retaliation from management. I no longer feel safe in my own home, and the stress has affected my physical health, professional career, and overall quality of life.

13. I affirm that the statements made herein are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

DATED: September 8, 2025

*Marilia Coutinho Espinola*

Marilia Coutinho Espinola

Subscribed and sworn to before me this 8 day of September, 2025.

# EXHIBIT G-1

Photograph related to the January 22, 2025 accident in which Marilia, after experiencing a panic attack while driving, failed to yield and collided with another vehicle, causing damage to the backend of that car.



# EXHIBIT G-2

Documentation and photographs related to the December 10,
2024 accident in which Marilia, after experiencing a panic
attack while driving, failed to yield; no police report was filed
and no citations issued



Ex: G-2

# EXHIBIT G-3.1

Records of the January 22, 2025 accident in which Marilia,
after experiencing a panic attack while driving, failed to yield
and received a citation; includes related medical and incident
documentation

**ILLINOIS CITATION AND COMPLAINT**

Ex: G-3.1

**COMPLAINT**

**WAUKEGAN POLICE DEPARTMENT**

| CASE NO. | Code 921 | ISP DIST. OCC. |

| COUNTY OF | LAKE | | TOWNSHIP OF | | ☐ TWP. RD. |

PEOPLE STATE OF ILLINOIS VS. ☐ CITY/VILLAGE OF MUNICIPAL CORPORATION PLAINTIFF **WAUKEGAN, ILLINOIS** VS.

**DEFENDANT**

NAME (Last) OUTINMAR (First) MAR (M.I.) A    SID #

ADDRESS (Street) BALDWIN AVE #SI5 (Apt)    EYES    GENDER

CITY STATE ZIP WAUKEGAN IL 60085    HAIR HEIGHT WEIGHT

DR. T.C. S552540896I2 STATE IL ☐ CDL EXPIR. DATE I2/23 DATE OF BIRTH I2-88

The Undersigned states that on I/2I/25 at 9:0 A.M. P.M. Defendant did unlawfully operate:

**VEHICLE**

REGISTR. NO. OA77003    STATE IL    YEAR 2025    US DOT #

MAKE VOLKSWAGON    YEAR 20I3    COLOR BLC

| 053 ☐ PEDESTRIAN | 001 ☐ TRAIL/SEMI-TRAIL | 002 ☐ PASSENGER CAR | 004 ☐ TRUCK | COMMERCIAL MOTOR VEHICLE: YES ☐ NO ☐ |
| 009 ☐ BUS | 006 ☐ TRUCK TRACTOR | 060 ☐ RECREATIONAL VEH. | | PLACAED/ED HAZ. MATERIAL: YES ☐ NO ☐ |
| 040 ☐ MOTORCYCLE | ☐ OTHER CODE(S) | | | 16 OR MORE PASS. VEHICLE: YES ☐ NO ☐ |

Upon a Public Highway, or other Location, Specifically W/B Belvidere R

@ Dr Plaine

Located in the County and State Aforesaid and Did Then and There Commit the Following Offense    ☐ URBAN DISTRICT

**VIOLATION**

**I.V.C. 625 ILCS 5/ :**

| ☐ | 3-707 OPERATING UNINSURED VEHICLE | ☐ | 11-502 (___ ) ILLEGAL TRANSPORTATION ALCOHOL |
| ☐ | 6-101 NO VALID DRIVER'S LICENSE | ☒ | 11-601(a) FAILURE TO REDUCE SPEED/ACCIDENT |
| ☐ | 6-303 (___ ) DRIVING WHILE LICENSE SUSPENDED/REVOKED | ☐ | 11-601(b) SPEEDING ___ MPH IN A ___ MPH ZONE |
| ☐ | 11-305 DISOBEYING TRAFFIC CONTROL DEVICE | ☐ | 11-709 (___ ) IMPROPER LANE USAGE |
| ☐ | 11-501(a) (___ ) DRIVING UNDER INFLUENCE | ☐ | 12-603.1 FAILURE TO WEAR SEAT BELT (___ ) D (___ ) P |
| ☐ ILCS ☐ LOCAL ORDINANCE | | CH ___ ACT ___ SEC ___ |

NATURE OF OFFENSE

**INCIDENT**

| CRASH TYPE: | ☐ DRIVER INJURY ONLY | ☐ PROPERTY DAMAGE | ☐ PERSONAL INJURY | ☐ FATAL | RPR NO. 2851 |
| ROAD CONDITIONS: | ☐ WET | ☐ DRY | ☒ SNOW | ☐ ICE | |
| VISIBILITY: | ☐ DAY | ☐ NIGHT | ☐ RAIN | ☐ SNOW | ☐ FOG | ☐ CLEAR |
| METHOD: | 0. ☐ H.H.RADAR | 1. ☐ PLAIN CAR | 2. ☐ RADAR | 3. ☐ A.CRAFT | 4. ☐ MARKED | 5. ☐ VASCAR |
| | 6. ☐ C. SIGNED | 7. ☐ ASSIST | 8. ☐ ACCIDENT | | 9. ☐ OTHER | 10. ☐ LIDAR |
| NOTATIONS: | | | | | |

**NOTICE TO APPEAR**

**METHOD OF RELEASE** (see middle portion, back side of Gold copy)

☐ **PRE-TRIAL RELEASE: DETAINED**    Location: _____

☒ **COURT APPEARANCE REQUIRED**
You are required to come to court on the date, time and place noted below. If you intend to plead "NOT GUILTY", follow the instructions on the form entitled "Avoid Multiple Court Appearances" prior to your court date.

☐ **NO COURT APPEARANCE REQUIRED**
If you intend to plead "GUILTY" and avoid coming to court, follow the instructions to plead GUILTY and waive your court appearance. If you intend to plead "NOT GUILTY", follow the instructions on the form entitled "Avoid Multiple Court Appearances" prior to your court date and come to court on the date, time and place noted below.

CIRCUIT COURT LOCATION AND DATE

ADDRESS / COURTHOUSE    ☒ 301 S. Greenleaf St., Park City, Courtroom - A    ☐ 18 N. County, Courtroom

CITY WAUKEGAN    ZIP 60085    IL    ON 2/24/25 AT I0:0 ☐ A.M. ☐ P.M.

Under penalties as provided by law for false certification pursuant to Section 1-109 of the Code of Civil Procedure and perjury pursuant to Section 32-2 of the Criminal Code of 2012, the undersigned certifies that the statements set forth in this instrument are true and correct.

MONTH 2 DAY 2 YEAR 25    OFFICER'S SIGNATURE    I.D. NO. 2709

# EXHIBIT G-3.2

Records of the January 29, 2025 three-vehicle accident in which Marilia, after experiencing a panic attack while driving, failed to yield and received a citation; includes related documentation

**ILLINOIS CITATION AND COMPLAINT**

**WAUKEGAN POLICE DEPART** G-3.2 **55**

**COMPLAINT**

| CASE NO. | **Code 921** | OCC. | **VIOLATOR** |

COUNTY OF **LAKE** TOWNSHIP OF ☐ TWP. RD.

☑ PEOPLE STATE OF ILLINOIS VS. ☐ CITY/VILLAGE OF MUNICIPAL CORPORATION PLAINTIFF **WAUKEGAN, ILLINOIS** VS.

**DEFENDANT**

NAME Continho-Espinola Marvlia (Last) (First) (M.I.) SID #

ADDRESS 805 (Street) Baldwin 302 (Apt.) EYES GENDER

CITY STATE ZIP Waukegan IL 60085 HAIR BRW HEIGHT 5'04" WEIGHT 145

DR. LIC. C352 5408 8612 ☐ ☐ CDL STATE IL EXPIR. DATE 1-2-29 DATE OF BIRTH 1-12-88

The Undersigned states that on 1/29/25 at 835 A.M. P.M. Defendant did unlawfully operate:

**VEHICLE**

REGISTR. NO. DA 77008 STATE IL YEAR 25. US DOT #

MAKE Volkswagen YEAR 13 COLOR Blue

033 ☐ PEDESTRIAN 081 ☐ TRAIL/SEMI-TRAIL 052 ☑ PASSENGER CAR 084 ☐ TRUCK | 009 ☐ BUS 006 ☐ TRUCK TRACTOR 060 ☐ RECREATIONAL VEH. | 043 ☐ MOTORCYCLE ☐ OTHER CODE(S)

COMMMERCIAL MOTOR VEHICLE: YES ☐ NO ☑ PLACARDED HAZ. MATERIAL: YES ☐ NO ☑ 16 OR MORE PASS. VEHICLE YES ☐ NO ☑

Upon a Public Highway, or other Location, Specifically Grand /Ash

Located in the County and State Aforesaid and Did Then and There Commit the Following Offense ☐ URBAN DISTRICT

**VIOLATION**

I.V.C. 625 ILCS 5/ :

☐ 3-707 OPERATING UNINSURED VEHICLE
☐ 6-101 NO VALID DRIVER'S LICENSE
☐ 6-303 (___) DRIVING WHILE LICENSE SUSPENDED/REVOKED
☐ 11-305 DISOBEYING TRAFFIC CONTROL DEVICE
☐ 11-501(a) (___) DRIVING UNDER INFLUENCE
☐ ILCS ☐ LOCAL ORDINANCE CH_____ ACT _____ SEC _____

☐ 11-502 (___) ILLEGAL TRANSPORTATION ALCOHOL
☑ 11-601(a) FAILURE TO REDUCE SPEED/ACCIDENT
☐ 11-601(b) SPEEDING ____ MPH IN A ____ MPH ZONE
☐ 11-709 (___) IMPROPER LANE USAGE
☐ 12-603.1 FAILURE TO WEAR SEAT BELT (___) D (___) P

NATURE OF OFFENSE

**INCIDENT**

CRASH TYPE: ☐ DRIVER INJURY ONLY ☐ PROPERTY DAMAGE ☑ PERSONAL INJURY ☐ FATAL REP. NO. 25-3726

ROAD CONDITIONS: ☐ WET ☑ DRY ☐ SNOW ☐ ICE

VISIBILITY: ☐ DAY ☑ NIGHT ☐ RAIN ☐ SNOW ☐ FOG ☐ CLEAR

METHOD: 0. ☐ H.H.RADAR 1. ☐ PLAIN CAR 2. ☐ RADAR 3. ☐ A.CRAFT 4. ☐ MARKED 5. ☐ VASCAR 6. ☐ C. SIGNED 7. ☐ ASSIST 8. ☑ ACCIDENT 9. ☐ OTHER 10. ☐ LIDAR

NOTATIONS:

**METHOD OF RELEASE** (see middle portion, back side of Gold copy).

☐ **PRE-TRIAL RELEASE: DETAINED** Location: _____

☐ **COURT APPEARANCE REQUIRED**
You are required to come to court on the date, time and place noted below. If you intend to plead "NOT GUILTY", follow the instructions on the form entitled "Avoid Multiple Court Appearances" prior to your court date.

☑ **NO COURT APPEARANCE REQUIRED**
If you intend to plead "GUILTY" and avoid coming to court, follow the instructions to plead GUILTY and waive your court appearance. If you intend to plead "NOT GUILTY", follow the instructions on the form entitled "Avoid Multiple Court Appearances" prior to your court date and come to court on the date, time and place noted below.

**NOTICE TO APPEAR**

CIRCUIT COURT LOCATION AND DATE

ADDRESS / COURTHOUSE ☑ 301 S. Greenleaf St., Park City, Courtroom - A ☐ 18 N. County, Courtroom

CITY **WAUKEGAN** ZIP **60085** IL ON 9-3-25 AT 300 A.M. P.M.

Under penalties as provided by law for false certification pursuant to Section 1-109 of the Code of Civil Procedure and perjury pursuant to Section 32-2 of the Criminal Code of 2012, the undersigned certifies that the statements set forth in this instrument are true and correct.

1/29/25 MONTH DAY YEAR OFFICER'S SIGNATURE 757 I.D. NO.

# EXHIBIT G-4

Progressive subrogation, $7,814.56



# CREDIT COLLECTION SERVICE

## C O M M E R C I A L

*Ex: G-4*

725 Canton Street, Norwood, MA 02062
Self-service: www.ccscommercial.com
Monday - Friday: 8:00AM-8:00PM, ET

**CALL CENTER: (617) 581-1077**



04232 1 MB 0.617 T 7
MARILIA COUTINHO-ESPINOLA
805 BALDWIN AVE APT 303
WAUKEGAN IL 60085-2359

Date: 05/07/25
File Number: 01 0066 36347
Pin Number: 12195
25966568851
LOSS DATE: 01/29/2025
SUBROGATION CLAIM

| **REGARDING:** PROGRESSIVE NORTHERN INSURANCE COMPANY | **AMOUNT OF THE CLAIM:** $7,814.56 |
|---|---|

Thank you for your attention at this time. As of 05/07/25, the above referenced subrogation claim remains unpaid. Our client is requesting evidence of valid insurance coverage that may have existed on the date of the incident.

Please promptly provide your insurance information to this office and we will immediately redirect our recovery efforts to your insurance carrier for payment.

In the event you were uninsured on the date of the incident, you can remit payment by mail (together with the payment stub portion of this notice) or by visiting our self-service website @ **www.ccscommercial.com**. Please call **(800) 345-7501** to provide your insurance information or to discuss suitable payment terms with a Customer Service Agent. Thank you.



**VALID INSURANCE COVERAGE:** If you provide this office with proof of valid insurance coverage, we will suspend recovery efforts against you personally (unless your insurance carrier declines coverage). Please provide the name and telephone number of your insurance company, policy number, and claim number (if available). Please be aware, some policies have limited coverage and you may be responsible for damages that are not covered by your carrier.



**CALL CENTER:** You can receive personal attention from a Customer Service Agent during the hours referenced at the top of this notice: (617) 581-1077.



**MAIL PAYMENT:** You can mail your check together with the payment stub portion of this notice. You can make your check payable to: PROGRESSIVE NORTHERN INSURANCE COMPANY.



**MAIL OR FAX CORRESPONDENCE:** You can mail correspondence to: CCSC P.O. Box 7249, Portsmouth, NH 03802-7249 or fax to: (617) 762-3351. You can include a copy of this notice to avoid processing delays.

0059 - IL

**ATTENTION:** Please be advised, failure to respond to this notice could result in a lawsuit being filed against you and/or suspension of your driver's license (contingent upon applicable state law).

| **File Number: 01 0066 36347** **Pin Number: 12195** **MARILIA COUTINHO-ESPINOLA** | **PLEASE PAY THIS AMOUNT:** $7,814.56 |
|---|---|



We offer secure email messaging, as well as the ability to pay or send correspondence online. It's quick, easy, and helps protect the environment. Please consider visiting our self-service website at: **www.ccscommercial.com**.

Do not mail post-dated checks. You can call (800) 345-7501 for personal attention. CCSC may process payment as a one-time electronic funds withdrawal using information from your check.

CCSC
PAYMENT PROCESSING CENTER
P.O. BOX 55156
BOSTON, MA 02205-5156

# EXHIBIT G-5

GEICO subrogation, $16,103.25

# Thomas George Assoc  

Post Office Box 30 - East Northport NY 11731-0030
(800) 443-8338
www.tgaltd.com

July 29, 2024

MARILIA ESPINOLA          1439 /4
805 BALDWIN AVE APT 303
WAUKEGAN IL 60085-2359

Re:   GEICO
OUR FILE NUMBER: 1181783-026
Amount of Claim: $16,103.25
Claim Number: 8668197550000001

This firm has made a concerted effort to make arrangements for you to resolve the above captioned claim that is due our client.

As of this date no amicable resolution has arisen.

Unless you, within thirty (30) days after receipt of this notice, dispute the validity of this claim, or any portion thereof, the claim will be assumed to be valid by the subrogation representative.

If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this claim, or any portion thereof, this office will obtain verification of the claim or obtain a copy of a judgement and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

This communication is from a subrogation representative and is an attempt to recover a claim, any information obtained will be used for that purpose.

Contact the undersigned at 631-261-8800 between 9-5 Eastern Standard time, so that some financial arrangements can be agreed upon.

Very truly yours,

Fred Fuller

# EXHIBIT G-6

Waukegan FD invoice, $494.00

 Fire RecoveryUSA
Fire Billing Solutions

*Ex: G-6*

Fire Recovery USA, LLC.
2271 Lava Ridge Court
Suite 120
Roseville, CA 95661-3065
(888) 640-7222

**Waukegan Fire Department,IL**
**Invoice #1864494**

Date: 03/06/2025
Incident Date: 01/29/2025
Tax ID: 26-2305306

| Bill To | Insured |
|---|---|
| The General | Marilia Coutinho - Espinola |
| | Claim #: 01008530427 |
| | Policy #: 1BIL7975818 |
| | Incident Location: Grand Ave @ N Ash St, Waukegan Waukegan, Il 60085 |

| Item | Description | Rate | Qty | Units | Total |
|---|---|---|---|---|---|
| Scene Assessment and Stabilization | Waukegan Fire Department responded to a motor vehicle incident at Grand Ave @ N Ash St, Waukegan Waukegan, Il 60085 on 01/29/2025 and performed scene assessment and stabilization as well as a hazardous materials clearance check. Restored the scene to a non-hazardous condition. | $ 494.00 | 1 | | $ 494.00 |
| | | | | Total Due: | **$ 494.00** |

# EXHIBIT G-7

Photos of debris, damage, recovery

**Ex: G-7**

**Exhibit G-7: Photo 3 (Car 3 Total Loss)**



Ex: G-7

**Exhibit G-7:   Photo 2 (Car 2 Crushed Frontend)**



Ex: G-7

**Exhibit G-7:  Photo 1 (Car 1 Crushed Frontend)**



# EXHIBIT G-8

Car lender demand, $7,008.47

Ex: G-8

**Exhibit G-8: Creditor Demand Letter for Total Loss**

## Law Offices of Gabriel B. Antman, P.C.
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
(312) 782-5520
(312) 977-0922 fax

June 12, 2025

Marilia Coutinho Espinola
805 Baldwin Ave., Apt. 303
Waukegan, IL 60085

| Re: | Original Creditor: | **CHICAGO ACCEPTANCE, LLC** |
|---|---|---|
| | **Origin of Debt:** | **Retail Installment Contract and Security Agreement** |
| | Creditor Account No.: | 202320 |
| | Security Interest: | 2013 Volkswagen Tiguan |
| | VIN: | WVGBV3AX9DW562680 |
| | Amount Due: | $7,008.47 |
| | Date of Default: | April 15, 2025 |

Chicago Acceptance, LLC ("Original Creditor") has engaged our law firm, as a debt collector, to collect from you the indebtedness in the amount shown above. On behalf of Original Creditor, demand is hereby made for payment of said indebtedness, or, in the alternative, voluntary surrender of the above referenced vehicle.

| | |
|---|---|
| As of April 15, 2025, you owed the principal amount of: | $7,008.47 |
| Between April 15, 2025 and June 12, 2025: | |
| You were charged this amount in interest: | $0.00 |
| You were charged this amount in late fees and/or other fees: | $0.00 |
| You were credited this amount: | $0.00 |
| **Total Amount Due:** | **$7,008.47** |

To dispute the debt, or any part of the debt, notify our law firm on or before **30 DAYS FROM TODAY'S DATE.** If you do not, we will assume that our information is correct.

If you notify our law firm on or before **30 DAYS FROM TODAY'S DATE,** that you dispute the debt, or any part of the debt, we must stop collection on any amount you dispute until we send you verification of the debt including the name and address of the original creditor, if different from the current creditor. You may use the enclosed form or write to us without the form.

*You may also go to* www.cfpb.gov/det-collection *to learn more about your rights under federal law.* For instance, you have the right to stop or limit how we contact you.

Very truly yours,

LAW OFFICES OF GABRIEL B. ANTMAN, P.C.

Gabriel B. Antman

GBA/ns

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# EXHIBIT H

Psychiatrist clinical notes, fluoxetine, Adderall;
anxiety/ADHD

**Ex: H**

**Exhibit H – Psychiatric Clinical Notes (Redacted and Formatted for Court Use)**

**Provider:** Silu Lohani, MD – Rosalind Franklin University Health
**Date of Service:** August 19, 2025
**Format:** Telehealth visit, 18 minutes, psychotherapy + medication management

**Chief Complaint:** "I am good, nothing changed, but a lot going on."

**History:**

- Patient is a 37-year-old female (Marilia Coutinho Espinola), treated for anxiety and ADHD.

- Reports heightened stress related to ongoing housing disputes and eviction proceedings for 9 months.

- States that stress and anxiety were exacerbated after blocked access to rent portal and receipt of an October 2024 eviction notice.

- Reports three motor vehicle accidents during December 2024 – January 2025, coinciding with peak stress.

- Describes ongoing financial strain and job limitations due to ongoing stress, trauma, and inability to drive.

**Medications:**

- Fluoxetine – prescribed for anxiety.

- Adderall – prescribed for ADHD.

**Assessment:**

- Patient reports improvement in anxiety compared to initial crisis but remains under significant stress related to housing dispute.

- ADHD symptoms managed with medication.

- Anxiety heightened during 9 months of housing litigation, directly linked to stressors from the eviction process and blocked rent portal.

**Ex: H**

## Exhibit H – Psychiatric Clinical Notes (Redacted and Formatted for Court Use)

**Plan:**

- Continue fluoxetine and Adderall.

- Ongoing monitoring of anxiety and ADHD symptoms.

- Encourage coping strategies and stress management.

**Certification:**

This excerpt is a true and accurate copy of relevant portions of the treatment notes of Dr. Silu Lohani, MD, Rosalind Franklin University Health, dated August 19, 2025, reformatted and redacted for clarity and relevance.

2

# EXHIBIT I

5-day eviction notices, 2021–2023

**Ex: I**

Imperial Tower Apartments
805 Baldwin Ave
Waukegan, IL 60085

Date: January 17, 2023

Alfred Holt
805 Baldwin Ave Apt 303
Waukegan, IL 60085

### LANDLORD'S FIVE DAYS' NOTICE

You are hereby notified that there is now due the undersigned landlord the sum of **$1,091.90 One Thousand Ninety One Dollars and 90/100------------** being rent for the in the Waukegan, IL, County of Lake and State of Illinois, described as follows, to wit: **805 Baldwin Ave Apt 303 Waukegan, IL 60085** together with all buildings, sheds, closets, out-buildings and garages used in connection with said premises.

You are further notified that payment of said sum so due has been and is hereby demanded of you, and that unless payment thereof is made on or before the expiration of <u>five days</u> after service of this notice your right of possession to said premises will be terminated.

ONLY FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

LANDLORD/AGENT: BH Management Services, Inc. is hereby authorized to receive said rent for the undersigned.

Imperial Tower Apartments    BY: _____ Date: January 17, 2023
Lessor                  As agent for BH Management Services/Imperial Tower Apartments

### ** PROOF OF SERVICE **

**STATE OF ILLINOIS**
**COUNTY OF LAKE**

_____ certifies and says that he/she served the foregoing "Landlord's Five Days' Notice" on the <u>17th</u> day of January 2023, as follows:

( )    By delivering a true copy thereof to the within named Tenant, Alfred Holt
( X )   By posting a true copy thereof on the premises, pursuant to Apartment Lease Contract Paragraph 31 after knocking and no one answering AND by sliding a copy under the door of the premises.
AND
( )    By sending a true copy thereof to the within named Tenant, by certified mail, with a returned receipt from the addressee.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the Affidavit of Service are true and correct.

_____

**LUMINOUS**

Imperial Tower Apartments
805 Baldwin Ave
Waukegan, IL 60085

Date: November 7, 2022

Alfred Holt
805 Baldwin Ave Apt 303
Waukegan, IL 60085

## LANDLORD'S FIVE DAYS' NOTICE

You are hereby notified that there is now due the undersigned landlord the sum of **$1,560.71 One Thousand Five Hundred Sixty Dollars and 71/100------------** being rent for the in the Waukegan, IL, County of Lake and State of Illinois, described as follows, to wit: **805 Baldwin Ave Apt 303 Waukegan, IL 60085** together with all buildings, sheds, closets, out-buildings and garages used in connection with said premises.

You are further notified that payment of said sum so due has been and is hereby demanded of you, and that unless payment thereof is made on or before the expiration of five days after service of this notice your right of possession to said premises will be terminated.

ONLY FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

LANDLORD/AGENT: BH Management Services, Inc. is hereby authorized to receive said rent for the undersigned.

Imperial Tower Apartments        BY: _____        Date: November 7, 2022
Lessor                                            As agent for BH Management Services/Imperial Tower Apartments

## ** PROOF OF SERVICE **

**STATE OF ILLINOIS**
**COUNTY OF LAKE**

_____ certifies and says that he/she served the foregoing "Landlord's Five Days' Notice" on the 7th day of November 2022, as follows:

(  )    By delivering a true copy thereof to the within named Tenant, Alfred Holt
( X )   By posting a true copy thereof on the premises, pursuant to Apartment Lease Contract Paragraph 31 after knocking and no one answering AND by sliding a copy under the door of the premises.
AND

(  )    By sending a true copy thereof to the within named Tenant, by certified mail, with a returned receipt from the addressee.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the Affidavit of Service are true and correct.

_____

1

# EXHIBIT J

RBT income evidence

# EXHIBIT J-1

Paystub, July 15, 2025

**North Shore Pediatric Therapy**
950 Lee St
Ste 105
Des Plaines, IL 60016

Ex: J -|

## Exhibit J |- Marilia Espinola Paystub (North Shore Pediatric Therapy)
**Check Date**
July 25, 2025

DIRECT DEPOSIT VOUCHER

151712   NSPT-VH-ABA
**Marilia Coutinho Espin**
805 Baldwin avenue
303
Waukegan, IL  60085-2359

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| Evolve Bank And Trus | C | ***2617 | 1,397.13 |
| Jp Morgan Chase Bank | C | ***8376 | 0.00 |
| Us Bank NA | C | ***3590 | 0.00 |
| Other | | | 0.00 |
| **Total Direct Deposits** | | | **1,397.13** |

## Non Negotiable - This is not a check - Non Negotiable

### North Shore Pediatric Therapy

**Marilia Coutinho Espinola**

**Earnings Statement**

| | | | | |
|---|---|---|---|---|
| Employee ID | **8006363** | Fed Taxable Income | **1,587.59** | |
| Location | **NSPT-VH-ABA** | Fed Filing Status | **M** | |
| Hourly | **$22.50** | State Filing Status | **M-2** | |

| | |
|---|---|
| Check Date | **July 25, 2025** |
| Period Beginning | **July 6, 2025** |
| Period Ending | **July 19, 2025** |

| | |
|---|---|
| Voucher Number | **24955** |
| Net Pay | **1,397.13** |
| Total Hours Worked | **0.00** |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| Billable H | 22.50 | 63.25 | 1,423.13 | 21,431.28 |
| Client Nap | 18.00 | 5.00 | 90.00 | 913.50 |
| Holiday | | | | 840.00 |
| Late Cance | | | | 400.50 |
| Non-Billab | 15.00 | 1.75 | 26.25 | 408.75 |
| Overtime | | | | 101.25 |
| Personal D | | | | 336.00 |
| PTO | 21.00 | 4.00 | 84.00 | 1,344.00 |
| retro pay | 18.00 | 2.25 | 40.50 | 382.50 |
| **Gross Earnings** | | **76.25** | **1,663.88** | **26,157.78** |

| Taxes | Amount | YTD |
|---|---|---|
| FITW | 0.00 | 5.64 |
| IL | 67.73 | 1,075.68 |
| MED | 23.02 | 362.70 |
| SS | 98.43 | 1,550.83 |
| **Taxes** | **189.18** | **2,994.85** |

| Deductions | Amount | YTD |
|---|---|---|
| Dental Ins | 18.85 | 282.75 |
| Medical Insurance | 57.44 | 861.60 |
| Vol Life Spouse | 0.64 | 9.60 |
| Voluntary Life Ins | 0.64 | 9.60 |
| **Deductions** | **77.57** | **1,163.55** |

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| Jp Morgan Chase Bank | C | ***8376 | 0.00 |
| Us Bank NA | C | ***3590 | 0.00 |
| Evolve Bank And Trust | C | ***2617 | 1,397.13 |
| Other | | | 0.00 |
| **Total Direct Deposits** | | | **1,397.13** |

| | **Available Plan Year** | |
|---|---|---|
| Time Off | to Use | Used |
| Personal | 0.00 | 16.00 |
| PTO | 4.00 | 60.00 |
| Regular | | |

# EXHIBIT J-2

Time-off & coverage disruptions, PTO request + July 15
coverage text

Ex: J-2

## Exhibit J-2 – Employment Time-Off & Coverage Disruptions (Dec. 2024 – July 2025)

This exhibit provides documentation of disruptions to Marilia Coutinho Espinola's employment schedule caused by litigation stress and related incidents. The evidence demonstrates both formal payroll records of time-off taken and direct contemporaneous communications showing her efforts to arrange work coverage due to mandatory court appearances.

### J-2(a) – July 15, 2025 Coverage Request (Internal Work Message)

Attached is a contemporaneous internal message from Marilia requesting coverage from coworkers for her client session on July 15, 2025, due to a scheduled 3:00 p.m. court appearance.

This communication illustrates the real-time disruption to her work schedule and the emotional/mental toll of balancing litigation with professional obligations.

### J-2(b) – Paylocity PTO Records (Dec. 2024 – July 2025)

Attached are Paylocity payroll records reflecting time-off entries connected to court appearances and related stress events.

- December 2024 – PTO hours used surrounding eviction litigation.

- January 2025 – PTO hours used during accident period and court requirements.

- July 2025 – PTO hours used around court hearings.

These records confirm verifiable, employer-tracked absences that reduced her available work hours and earnings.

Summary:
Together, these documents provide both official payroll verification and direct communications establishing that the eviction litigation caused repeated, measurable interference with Marilia's employment.

Ex: J-2

**J-2(a) – July 15, 2025 Coverage Request (Internal Work Messages)**

01:52

‹ 1 A VH Session Coverage ›
Muted

monday or tuesday

Hi Team,
On July 15, next Tuesday, I will
have court appointment at 3 pm.,
so I'm trying to arrange coverage
for that afternoon; Since my friend
@claire, already agreed to take
my session with RB from 3-4:30
pm,

Can someone stay with her
CLIENT AP from 3-4:30 , please ?
( July 15 Tuesday)

Lindsy Arizmendi

LA   Marilia C.

Hi Team, On July 15, next Tuesday,
I will have court appointment at 3
pm., so I'm trying to arrange
coverage for that afternoon; Since
my friend @claire, already agreed
to take my session with RB...

I'm available 3:30-4:30 so I can
take for that time

Thank youuuu Lindsyyyy, this will
help !

That's okay          with
Clairee taking my session with RB
from 3-4:30, next Tuesday ? JULY

Type a message   ☺ ◎ 🎤

01:49

‹ 1 AG Abigail Gordon ›
Last seen yesterday

Thank you so much dear

April 9, 14:36

I forgot to ask! Could you end
your session plz?

I'm só sorry

I was out of my mind worry about
my court

April 9, 15:58

No worries!

April 25, 13:18

I have Java communication log

Perf! Can you leave it in his room?
He's napping rn!

June 5, 11:51

I have AP for nap! If you could
bring him to the nap room at the
end of your session it'd be a big
help!!

June 12, 11:51

Type a message   ☺ ◎ 🎤

**J-2(b) – Paylocity PTO Records (Dec. 2024 – July 2025)**

2

Ex: J-2

**North Shore Pediatric Therapy [151712]**

☰ **HR & Payroll**  Employees  HR  Payroll  User Access

Personal  Work  Employment  Pay  Benefits  Performance  Training  **Time Off**

Balances  Time Off History  Leave Tracking  Requests  Time Off Documents

## Time Off History

| | | | | |
|---|---|---|---|---|
| **Transaction Date From** | 1/1/2025 | | **Time Off Type** | — All — |
| **Transaction Date To** | 8/28/2025 | | **Transaction Type** | — All — |
| **Begin Date From** | 1/1/2025 | | ○ Show Totals? | |
| **Begin Date To** | 8/28/2025 | | **Transaction Subtype** | — All — |

Search  Show All  Reset  Save Sea

| Trans Date / | Begin Date | Type | Trans Type | Subtype | Hours/Days | Avail Hours/Days | S |
|---|---|---|---|---|---|---|---|
| 08/22/2025 | 08/11/2025 | PTOR | Used | | 8.00 Hours | 0.00 Hours | |
| 07/25/2025 | 07/15/2025 | PTOR | Used | | 4.00 Hours | 0.00 Hours | |
| 07/11/2025 | 06/23/2025 | PTOR | Used | | 5.50 Hours | 4.00 Hours | |
| 06/27/2025 | 06/09/2025 | PTOR | Used | | 7.50 Hours | 1.50 Hours | |
| 05/30/2025 | 05/14/2025 | PTOR | Used | | 2.75 Hours | 9.00 Hours | |
| 05/30/2025 | 05/15/2025 | PTOR | Used | | 2.75 Hours | 6.25 Hours | |
| 05/30/2025 | 05/19/2025 | PTOR | Used | | 5.25 Hours | 1.00 Hours | |
| 05/16/2025 | 04/28/2025 | PTOR | Used | | 2.00 Hours | 10.50 Hours | |
| 05/16/2025 | 05/08/2025 | PTOR | Used | | 2.75 Hours | 7.75 Hours | |
| 05/02/2025 | 04/16/2025 | PTOR | Used | | 2.00 Hours | 10.50 Hours | |
| 05/02/2025 | 04/17/2025 | PTOR | Used | | 2.00 Hours | 8.50 Hours | |
| 04/18/2025 | 04/01/2025 | PTOR | Used | | 4.00 Hours | 10.50 Hours | |
| 04/18/2025 | 04/09/2025 | PTOR | Used | | 2.00 Hours | 8.50 Hours | |
| 03/21/2025 | 03/03/2025 | PTOR | Used | | 8.00 Hours | 6.50 Hours | |
| 03/07/2025 | 02/24/2025 | PERS | Used | | 0.75 Hours | 0.00 Hours | |
| 03/07/2025 | 02/20/2025 | PTOR | Used | | 2.75 Hours | 13.25 Hours | |
| 03/07/2025 | 02/21/2025 | PTOR | Used | | 2.75 Hours | 10.50 Hours | |
| 02/21/2025 | 02/11/2025 | PERS | Used | | 2.75 Hours | 0.75 Hours | |
| 02/07/2025 | 01/22/2025 | PERS | Used | | 4.50 Hours | 3.50 Hours | |
| 02/07/2025 | 01/30/2025 | PTOR | Used | | 4.00 Hours | 8.00 Hours | |
| 01/24/2025 | 01/15/2025 | PERS | Used | | 4.00 Hours | 12.00 Hours | |
| 01/24/2025 | 01/16/2025 | PERS | Used | | 4.00 Hours | 8.00 Hours | |

3

Ex: J-2

## J-2(b) – Paylocity PTO Records (Dec. 2024 – July 2025)

**North Shore Pediatric Therapy [151712]**

≡ **HR & Payroll**    Employees    HR    Payroll    User Access

Help

Personal    Work    Employment    Pay    Benefits    Performance    Training    **Time Off**

Balances    Time Off History    Leave Tracking    Requests    Time Off Documents

### Time Off History

| **Transaction Date From** | 1/1/2024 | | **Time Off Type** | -- All -- | ○ |
| **Transaction Date To** | 12/31/2024 | | **Transaction Type** | -- All -- | ○ |
| **Begin Date From** | 1/1/2024 | | | **Show Totals?** | |
| **Begin Date To** | 12/31/2024 | | **Transaction Subtype** | -- All -- | |

Search    Show All    Reset                                                   Save Sea

| Trans Date ↗ | Begin Date | Type | Trans Type | Subtype | Hours/Days | Avail Hours/Days | \$ |
|---|---|---|---|---|---|---|---|
| 12/13/2024 | 12/03/2024 | PTOR | Used | | 2.00 Hours | 2.00 Hours | |
| 12/13/2024 | 12/04/2024 | PTOR | Used | | 2.00 Hours | 0.00 Hours | |
| 11/29/2024 | 11/11/2024 | PTOR | Used | | 6.00 Hours | 4.00 Hours | |
| 11/29/2024 | 11/14/2024 | PTOR | Used | | 4.00 Hours | 0.00 Hours | |
| 11/15/2024 | 11/04/2024 | PTOR | Used | | 9.00 Hours | 33.00 Hours | |
| 11/15/2024 | 11/05/2024 | PTOR | Used | | 9.00 Hours | 24.00 Hours | |
| 11/15/2024 | 11/06/2024 | PTOR | Used | | 9.00 Hours | 15.00 Hours | |
| 11/15/2024 | 11/07/2024 | PTOR | Used | | 9.00 Hours | 6.00 Hours | |

4

# EXHIBIT K

September 30, 2024 email re: blocked portal

**Ex: K**

## Fwd: On line account access

---------- Forwarded message ---------
From: **Marília Espinola** <espinola120188@gmail.com>
Date: Mon, Sep 30, 2024 at 11:53
Subject: On line account access
To: Katrina Blair (Imperial Tower Apartments) <Trina.Blair+v0jg7eeqqdz@imperial-tower.residentservice.com>

Hello Katrina,

I'm not able to enter on my online portal. I would like to know how much is my exactly total rent amount . I appreciate your time and help in this matter.

Marilia

My phone number: 2244176131

# Exhibit L

30-Day Notice of Termination, August 2025 & Ledger of Late Fees This record shows Defendants' excessive retaliation. After blocking Plaintiffs from paying rent through the portal for nearly a year, Defendants voluntarily dismissed the eviction case. Despite that dismissal, they then attempted to charge Plaintiffs retroactive rent and late fees arising from the portal block they themselves caused. This demonstrates ongoing retaliatory intent and excessive penalties.

## NOTICE OF TERMINATION OF TENANCY
## [30-DAY NOTICE]

To: Alfred Holt and Marilia Coutinho Espinola_____/ and all other occupants and lessees
   805 Baldwin Ave Apt 303_____
   Waukegan, IL 60085

You are hereby notified that your right of possession of the following described premises, to wit:
805 Baldwin Ave Apt 303, Waukegan, IL 60085;

Together with all other accommodations used by you in connection therewith, will be terminated as follows:

X      There is due to the undersigned for accrued and past-due rental for said accommodations
aforesaid the sum of **$ 16,847.67. PLUS any rent or additional rent that comes due prior to the
expiration of the 30 day notice pursuant to the terms of the Lease,** for which demand is herewith
made, and unless payment is made <u>IN CERTIFIED FUNDS</u> within thirty (30) days from the date of service
hereof, your right of possession is terminated.

Only **FULL PAYMENT** of the rent demand in the notice **PLUS any rent or additional rent
that comes due prior to the expiration of the 30-day notice** pursuant to the terms of the Lease
will waive the landlord's right to terminate your right of possession under the lease, unless the
landlord agrees in writing to continue your right of possession in exchange for receiving partial
payment. Upon filing for eviction any renewal offers previously made to you are hereby withdrawn.
Unless you promptly comply with the above, suit will be instituted for possession, and for rental
due, together with the costs of such proceeding.

Dated this _15th____day of ____August_____, 2025      Imperial Tower Apartments

Lessor
By: _____
Its Authorized Agent

### PROOF OF SERVICE

STATE OF ILLINOIS                    )
                                     ) SS
County of LAKE                       )

Katrina Blair_____, certifies and says that he/she served the
forgoing "Notice of Termination of Tenancy" on the _15th_____ day of August_____,
2025, as follows:

___ By delivering a true copy thereof to the within-named tenant _____

___ By leaving a true copy thereof with _____, a person above the age of
thirteen years, residing on or in possession of the premises.

_X_ By sending a true copy thereof with _United States Postal Service_____, via
certified mail, return receipt requested.

___ By posting a true copy to the door and sliding a true copy thereof under the lessee's door to the
premises, no one having answered after knocking, pursuant to Paragraph 31 of the Lease.

Under penalties as provided by law pursuant to Section 1 – 109 of the Code of Civil Procedure, the undersigned
certificates that the statements set forth in the Affidavit of Service are true and correct.



 Menu

Logged in as: Alfred Holt

# PAYMENTS

Auto-pay Setup

Recent Activity    Payment Accounts

## CURRENT BALANCE: $18,569.93

as of 9/9/2025

Rent (11/2024)

$589.67

11/1/2024

1-25

BH Liability (11/2024)

$14.00

11/1/2024

Pest Control Fee (11/2024)

$3.00

11/1/2024

Storage Space (11/2024)

$15.00

11/1/2024

Allocated Trash - 09/01/24-09/30/24

$18.75

11/1/2024

Service Fee - 11/01/24-11/30/24

$5.50

11/1/2024

Water and Sewer - 09/01/24-09/30/24

$50.94

11/1/2024

Late Charge, 10% of $1400.00

$140.00

11/4/2024

Monthly Pet Fees & Charges (12/2024)

$30.00

12/1/2024

Rent (12/2024)

$1,400.00

12/1/2024

Parking Space (12/2024)

$25.00

12/1/2024

BH Liability (12/2024)

$14.00

12/1/2024

Pest Control Fee (12/2024)

$3.00

12/1/2024

Storage Space (12/2024)

$15.00

12/1/2024

Allocated Trash - 10/01/24-10/31/24

$10.35

12/1/2024

Common Area Electricity - 10/01/24-10/31/24

$6.83

12/1/2024

Gas - 10/01/24-10/31/24

$16.64

12/1/2024

Service Fee - 12/01/24-12/31/24

$5.50

12/1/2024

Water and Sewer - 10/01/24-10/31/24

$51.75

12/1/2024

Late Charge, 10% of $1400.00

$140.00

12/4/2024

Storage Space (01/2025)

$15.00

1/1/2025

BH Liability (01/2025)

$14.00

1/1/2025

Pest Control Fee (01/2025)

$3.00

1/1/2025

Parking Space (01/2025)

$25.00

1/1/2025

Rent (01/2025)

$1,400.00

1/1/2025

Monthly Pet Fees & Charges (01/2025)

$30.00

1/1/2025

Allocated Trash - 11/01/24-11/30/24

$21.25

1/1/2025

Common Area Electricity - 11/01/24-11/30/24

$7.07

1/1/2025

1/1/2025

Gas - 11/01/24-11/30/24

$33.92

1/1/2025

Service Fee - 01/01/25-01/31/25

$5.50

1/1/2025

Water and Sewer - 11/01/24-11/30/24

$54.23

1/1/2025

Late Charge, 10% of $1400.00

$140.00

1/4/2025

Monthly Pet Fees & Charges (02/2025)

$30.00

2/1/2025

Rent (02/2025)

$1,400.00

2/1/2025

Parking Space (02/2025)

$25.00

2/1/2025

BH Liability (02/2025)

$14.00

2/1/2025

Pest Control Fee (02/2025)

$3.00

2/1/2025

Storage Space (02/2025)

$15.00

2/1/2025

Allocated Trash - 12/01/24-12/31/24

$13.76

2/1/2025

Common Area Electricity - 12/01/24-12/31/24

$6.73

2/1/2025

Gas - 12/01/24-12/31/24

$71.36

2/1/2025

Service Fee - 02/01/25-02/28/25

$5.50

2/1/2025

Water and Sewer - 12/01/24-12/31/24

$48.92

2/1/2025

Late Charge, 10% of $1400.00

$140.00

2/4/2025

Allocated Trash - 01/01/25-01/31/25

$14.54

3/1/2025

Common Area Electricity - 01/01/25-01/31/25

$7.70

3/1/2025

Gas - 01/01/25-01/31/25

$94.92

3/1/2025

Service Fee - 03/01/25-03/31/25

$5.50

3/1/2025

Water and Sewer - 01/01/25-01/31/25

$47.76

3/1/2025

Monthly Pet Fees & Charges (03/2025)

$30.00

3/1/2025

Rent (03/2025)

$1,400.00

3/1/2025

Parking Space (03/2025)

$25.00

3/1/2025

BH Liability (03/2025)

$14.00

3/1/2025

Pest Control Fee (03/2025)

$3.00

3/1/2025

Storage Space (03/2025)

$15.00

3/1/2025

Late Charge, 10% of $1400.00

$140.00

3/4/2025

Monthly Pet Fees & Charges (04/2025)

$30.00

4/1/2025

Rent (04/2025)

$1,400.00

4/1/2025

Parking Space (04/2025)

$25.00

4/1/2025

BH Liability (04/2025)

$14.00

4/1/2025

Pest Control Fee (04/2025)

$3.00

4/1/2025

Storage Space (04/2025)

$15.00

4/1/2025

Allocated Trash - 02/01/25-02/28/25

$16.62

4/1/2025

Common Area Electricity - 02/01/25-02/28/25

$8.64

4/1/2025

Gas - 02/01/25-02/28/25

$95.01

4/1/2025

Service Fee - 04/01/25-04/30/25

$5.50

4/1/2025

Water and Sewer - 02/01/25-02/28/25

$49.00

4/1/2025

Late Charge, 10% of $1400.00

$140.00

4/4/2025

4/4/2025

Monthly Pet Fees & Charges (05/2025)

$30.00

5/1/2025

Rent (05/2025)

$1,400.00

5/1/2025

Parking Space (05/2025)

$25.00

5/1/2025

BH Liability (05/2025)

$14.00

5/1/2025

Pest Control Fee (05/2025)

$3.00

5/1/2025

Storage Space (05/2025)

$15.00

5/1/2025

Allocated Trash - 03/01/25-03/31/25

$15.28

5/1/2025

Common Area Electricity - 03/01/25-03/31/25

$8.63

5/1/2025

Gas - 03/01/25-03/31/25

$95.34

5/1/2025

Service Fee - 05/01/25-05/31/25

$5.50

5/1/2025

Water and Sewer - 03/01/25-03/31/25

$83.17

5/1/2025

Late Charge, 10% of $1400.00

$140.00

5/4/2025

Monthly Pet Fees & Charges (06/2025)

$30.00

6/1/2025

Rent (06/2025)

$1,400.00

6/1/2025

Parking Space (06/2025)

$25.00

6/1/2025

BH Liability (06/2025)

$14.00

6/1/2025

Pest Control Fee (06/2025)

$3.00

6/1/2025

Storage Space (06/2025)

$15.00

6/1/2025

Allocated Trash - 04/01/25-04/30/25

$13.31

6/1/2025

Common Area Electricity - 04/01/25-04/30/25

$8.77

6/1/2025

Gas - 04/01/25-04/30/25

$78.35

6/1/2025

Service Fee - 06/01/25-06/30/25

$5.50

6/1/2025

Water and Sewer - 04/01/25-04/30/25

$87.38

6/1/2025

Late Charge, 10% of $1400.00

$140.00

6/4/2025

Monthly Pet Fees & Charges (07/2025)

$30.00

7/1/2025

Rent (07/2025)

$1,400.00

7/1/2025

Parking Space (07/2025)

$25.00

7/1/2025

BH Liability (07/2025)

$14.00

7/1/2025

Pest Control Fee (07/2025)

$3.00

7/1/2025

Storage Space (07/2025)

$15.00

7/1/2025

Allocated Trash - 05/01/25-05/31/25

$12.15

7/1/2025

Common Area Electricity - 05/01/25-05/31/25

$7.68

7/1/2025

Gas - 05/01/25-05/31/25

$62.41

7/1/2025

Service Fee - 07/01/25-07/31/25

$5.50

7/1/2025

Water and Sewer - 05/01/25-05/31/25

$57.93

7/1/2025

Late Charge, 10% of $1400.00

$140.00

7/4/2025

Monthly Pet Fees & Charges (08/2025)

$30.00

8/1/2025

Rent (08/2025)

$1,400.00

8/1/2025

# EXHIBIT M

RentCafe screenshot, September 2024: "You are not currently listed as a resident"

**Ex: M**

**Exhibit M – RentCafe screenshot, September 2024" You are not currently listed as a resident"**



# EXHIBIT N

Financial estimates of lost federal contracting opportunities, ~$8.5M

Ex: N

## Exhibit N – Financial Estimates of Lost Federal Contracting Opportunities

Prepared by: Alfred Holt
Date: August 27, 2025

### Background

Between 2023 and 2024, I was actively engaged in communications with the U.S. Department of Veterans Affairs (VA) regarding technology proposals, including the InVirtCare suicide-prevention platform (see Exhibits B & B-2). These proposals were developed in response to official VA innovation calls and were designed to address urgent needs, including veteran suicide prevention.

The total estimated value of these opportunities was approximately $8,500,000 across multiple VA contracting avenues.

Impact of Eviction Litigation
From October 2024 through July 2025, I was forced to devote nearly all of my time and resources to defending an unlawful eviction case (Case No. 24 EV 1836). This nine-month litigation period:

Prevented me from finalizing and refining submissions to the VA.

Blocked travel and networking opportunities tied to the proposals.

Caused reputational damage by creating instability in my business operations.

Although the eviction case was dismissed on July 23, 2025, by that time the VA contracting windows had closed, resulting in lost contracts.

### Financial Estimate

Direct Contract Value: $8,500,000

Proposal A (InVirtCare Concept Paper, Topic Area 0003): $5,000,000

Proposal B (Secondary VA Program Support): $3,500,000

Projected Growth Multiplier: Based on VA adoption rates and referrals, successful execution could reasonably have scaled to $50,000,000–$100,000,000 over five years.

For the purposes of this case, the conservative loss estimate is $8,500,000.

Ex: N

## Exhibit N – Financial Estimates of Lost Federal Contracting Opportunities

Conclusion

The retaliatory eviction litigation and associated stressors directly prevented my ability to compete for and secure these VA contracts. As a result, I suffered quantifiable economic damages of not less than $8,500,000, with significantly higher long-term opportunity costs.

Submitted as Exhibit N
/s/ Alfred Holt
Pro Se Plaintiff

# EXHIBIT O

Waukegan Police report, towing/racial discrimination

Ex: O



This Incident has been reported to the
Waukegan Police Department
and is pending approval

Waukegan Police Department
101 N. West Street
Waukegan, IL 60085
847-599-2608

**General Information**

| | |
|---|---|
| Incident Type | Theft |
| Tracking Number | T24000887 |
| Report Date | 11/23/2024 01:56 AM |

**Reporting Person Information**

| | |
|---|---|
| Name | Holt, Alfred |
| Home Address | 805 Baldwin Ave apt 303, Waukegan, IL 60085, US |
| Home Phone | 224-518-8376 |
| Mobile Phone | 224-518-8376 |
| Email | albizsmart@gmail.com |
| Race | Black |
| Ethnicity | Black |
| Sex | Male |
| DOB | 04/14/1986 |

**Incident Information**

| | |
|---|---|
| Incident Location | 805 Baldwin Avenue, Waukegan, IL 60085 |
| Incident Time (start) | 11/23/2024 12:00 AM |
| Incident Time (end) | 11/23/2024 01:30 AM |
| Location Type | Parking Lot/Garage |

**Property Information**

No 1

| | |
|---|---|
| Type | Other |
| Brand | Volkswagon |
| Model | Tiguan |
| Color | Black |
| How Many | 1 |
| Market Value ($) | 15000 |

**Narrative**

Incident Description

Approximately two months ago, TNT Towing towed my wife's Volkswagen Tiguan from our apartment parking lot. She showed them her updated registration and paid 350. Today, TNT Towing has once again towed her vehicle without justification, despite her registration now being fully valid and active, as confirmed by the Illinois Secretary of State. This repeated towing raises serious concerns about potential criminal conduct, as the vehicle was removed without cause or proper authority.We are pursuing legal action against the property management group for retaliation and discrimination. Additionally, the property manager previously informed me that the owner of TNT Towing has a documented history of making racist and discriminatory remarks. This repeated targeting of our property appears intentional and unlawful, and we request an investigation into the matter to address these ongoing violations.

Print This Report

# Exhibit P

Psychologist Treatment Summary / Clinical Notes – 2024–2025

Behavioral Health · 3471 N Green Bay Rd, NORTH CHICAGO IL 60064-3093

COUTINHO ESPINOLA, Marilia (id #168976, dob: 01/12/1988)

*Ex; P*

Rosalind Franklin University Health System
3471 N Green Bay Rd
NORTH CHICAGO, IL 60064-3095
Phone: (847) 473-4357, Fax: (847) 247-6950

Date: 06/18/2025

Dear Marilia Coutinho Espinola,

The following is a summary of your visit today. If you have any questions, please contact our office.

Sincerely,

ANNA MATYJA, PhD

## Patient Care Summary for Marilia Coutinho Espinola

### Most Recent Encounter
06/17/2025 Anna Matyja: 3471 N Green Bay Rd, North Chicago, IL 60064-3095, Ph. tel:+1-847-4734357

### Reason for Visit
None recorded.

### Assessment and Plan

None recorded.

Discussion Note: None recorded.

Patient educational handouts: No information available.

### Plan of Care

| Reminders | | | Provider |
|---|---|---|---|
| Appointments | BH Telehealth Return (60) | 06/24/2025 7:00PM | Anna Matyja, PhD |
| Lab | None recorded. | | |
| Referral | None recorded. | | |
| Procedures | None recorded. | | |
| Surgeries | None recorded. | | |
| Imaging | None recorded. | | |

# Current Medications

*Ex.P*

Your medical record indicates you are on the following medicine. If this list is not consistent with the medications you are currently taking, or if you are taking additional over-the-counter medicines, please inform your provider.

| Name | Prescribed Date Start Date |
|---|---|
| Adderall XR 20 mg capsule,extended release | 04/21/2025 |
| Take 1 capsule every day by oral route in the morning for 30 days. | |
| dextroamphetamine-amphetamine ER 15 mg 24hr capsule,extend release | |
| TAKE 1 CAPSULE BY MOUTH ONCE DAILY IN THE MORNING FOR 30 DAYS | |
| ergocalciferol (vitamin D2) 1,250 mcg (50,000 unit) capsule | |
| TAKE 1 CAPSULE BY MOUTH ONCE A WEEK | |
| Ferrocite 324 mg (106 mg iron) tablet | |
| TAKE 1 TABLET BY MOUTH TWICE DAILY | |
| fluoxetine 20 mg capsule | |
| TAKE 1 CAPSULE BY MOUTH ONCE DAILY ALONG WITH 40MG STRENGTH FOR A TOTAL OF 60MG | |
| fluoxetine 40 mg capsule | |
| TAKE 1 CAPSULE BY MOUTH ONCE DAILY AS DIRECTED | |
| levothyroxine 25 mcg tablet | |
| TAKE 1 TABLET BY MOUTH ONCE DAILY IN THE MORNING ON AN EMPTY STOMACH | |

## Medications Administered

None recorded.

## Vitals

None recorded.

## Results
### Lab Results

None recorded.

## Allergies

Please review your allergy list for accuracy. Contact your provider if this list needs to be updated.

| Code | Code System | Name | Reaction | Severity | Onset |
|---|---|---|---|---|---|
| NKDA | | | | | |

## Problems

| Name | Status | Onset Date | Source |
|---|---|---|---|
| Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type | Active | 10/11/2024 | |
| Anxiety | Active | 12/30/2024 | |
| Attention Deficit Hyperactivity Disorder, Combined Type | Active | 04/27/2025 | |

## Procedures

None recorded.

## Vaccine List

Here is a copy of your most up-to-date vaccination list.

2



## Tobacco Smoking Status

None recorded.

---

## Past Encounters

| Encounter Date | Diagnosis | Provider |
|---|---|---|
| 06/17/2025 | | Anna Matyja, PhD: 3471 N Green Bay Rd, North Chicago, IL 60064-3095, Ph. (847) 473-4357 |
| 06/10/2025 | Attention Deficit Hyperactivity Disorder, Combined Type; Anxiety | Anna Matyja, PhD: 3471 N Green Bay Rd, North Chicago, IL 60064-3095, Ph. (847) 473-4357 |
| 05/22/2025 | Attention Deficit Hyperactivity Disorder, Combined Type; Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type; Anxiety | Silu Lohani, MD: 3471 N Green Bay Rd, North Chicago, IL 60064-3095, Ph. (847) 473-4357 |

## Demographics

| | | | |
|---|---|---|---|
| Sex: | Female | Ethnicity: | Information not available |
| DOB: | 01/12/1988 | Race: | Information not available |
| Preferred language: | English | Marital status: | Married |

Contact: 805 Baldwin Ave, Waukegan, IL 60085, Ph. tel:+1-224-4176646

---

Note: Patients are solely responsible for maintaining the privacy and security of all information printed from the Patient Portal.

# EXHIBIT Q

May 2025 premature package return, emails/docs

**Exhibit Q – May 2025 premature business package return (emails)**

## Unaddressed Lease Violation – Returned Packages & Lack of Response

**Alfred Holt** <albizsmart@gmail.com>                                    Tue, Jun 3, 2025 at 3:32 PM
To: Lisa.Cannella@bhmanagement.com, Lisa.Cannella@livebh.com

Hello Lisa,

I'm writing to formally escalate an unresolved issue involving a clear lease violation by the onsite property management at Imperial Tower Apartments in Waukegan, IL (Unit 303), and the concerning lack of response following my written communication.

On **May 30**, the property management office returned multiple delivered packages that were essential to my business. According to the lease agreement (see attached Exhibit A), management is not permitted to return packages unless they remain unclaimed for **MORE than three (3) days after receipt** . The packages in question were received on **May 27**, and I was notified via email **after 5:00 PM** that same day. By any reasonable interpretation of the lease, **May 31** would have been the earliest lawful date to return the packages.

Despite sending a clear written notice outlining this lease violation, as of today, **Tuesday, June 3,** I have **received no response** from either of the onsite managers (LaQuevia Miller or Katrina Blair). This silence is troubling and appears intentional.

This is not an isolated incident. It reflects a **broader pattern of procedural misconduct** that raises serious concerns about oversight, accountability, and professionalism at the property level. I'm reaching out in good faith to ensure senior management is aware and can take corrective action to prevent further breaches.

I would appreciate a written response confirming that this matter is being addressed appropriately and that future compliance with lease terms will be enforced consistently.

Sincerely,
**Alfred Holt**
Unit 303 – Imperial Tower Apartments

805 Baldwin Ave, Waukegan IL, 60085



**Exhibit A copy.jpeg**
2589K

**Exhibit Q – May 2025 premature business package return (emails)**

 Gmail

---

## Unaddressed Lease Violation – Returned Packages & Lack of Response

**Lisa Cannella** <Lisa.Cannella@bhmanagement.com>
To: Alfred Holt <albizsmart@gmail.com>

Tue, Jun 3, 2025 at 4:26 PM

Hello Alfred,

Thank you for reaching and providing your feedback. I'll discuss your concerns with the team.

Thanks,

**From:** Alfred Holt <albizsmart@gmail.com>
**Sent:** Tuesday, June 3, 2025 3:33 PM
**To:** Lisa Cannella <Lisa.Cannella@bhmanagement.com>; Lisa Cannella <Lisa.Cannella@livebh.com>
**Subject:** Unaddressed Lease Violation – Returned Packages & Lack of Response

---

**This Message Is From an External Sender**

This message came from outside your organization.

[Quoted text hidden]

# EXHIBIT R

Unlawful Entry Evidence, October 15, 2024 & false "conversation" claim

Ex: R

**Exhibit R:  Property Manager Unlawful Apartment Entry**

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| Amzak Waukegan LLC, | ) | |
| | ) | Case No. 24 EV 1836 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Alfred Holt, Marilia Coutinho Espinola and | ) | |
| Unknown Occupants, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>AFFIDAVIT OF LAQUEVIA MILLER</u>

LAQUEVIA MILLER, being first duly sworn upon oath, deposes and states as follows:

1.    I am the Assistant Community Manager for Amzak Waukegan LLC, the Plaintiff in the above-captioned matter.

2.    I have personal knowledge of the facts asserted in this Affidavit and if called to testify in this matter I could competently testify to the facts contained in this Affidavit.

3.    Plaintiff is the owner and landlord of the residential premises located at 805 Baldwin Avenue, Waukegan, Illinois, and known as the Imperial Tower Apartments.

4.    As Assistant Community Manager, I am responsible for assisting the Community Manager with the day-to-day operations at Imperial Tower Apartments. I am also familiar with the books and records of the Plaintiff.

5.    Defendants, Alfred Holt and Marilia Coutinho Espinola, entered into a written lease agreement with Plaintiff on April 30, 2024, for Apt. No. 303 at 805 Baldwin Avenue, Waukegan, Illinois (the "Lease Agreement"). A true and correct copy of the Lease Agreement is attached to the Verified Complaint filed in this case.



EXHIBIT

1

1

6. Defendants currently reside in Apt. No. 303 at 805 Baldwin Avenue, Waukegan, Illinois.

7. The management office schedules two routine inspections of all apartment units at Imperial Tower Apartments per year. The Spring inspection takes place in April and the Fall inspection takes place in October.

8. The Fall routine inspection for the 805 building was scheduled for October 15, 2024, and notices of the scheduled inspection were posted to building doors and slid under each apartment door.

9. On October 15, 2024, Frederico, the maintenance supervisor, and myself knocked on the Defendants' door three times and waited for an answer. We received no response from the Defendants, so Frederico unlocked the door to Defendants' apartment and called out from outside the doorway "hello, management, we are here to do your inspection". Defendant Alfred Holt called out and Fredrico and I closed the door and stated that we were there for the inspection.

10. At that point, Defendant Alfred Holt gave Fredrico and I permission to enter the apartment.

11. I inquired with Defendant Alfred Holt whether he had any work orders that needed to be scheduled. He said no.

12. Fredrico and I proceeded to the kitchen area and dining area. In the kitchen area, I noticed cat bowls with food and water in them on the kitchen floor.

13. In the dining room, on the table, I saw two bongs, an open container with marijuana, zig-zag cones and two different dispensary bags from Plant 13 and Greenlight.

2

14.     Following the inspection of Defendants' apartment, on October 21, 2024, I contacted the property's attorney's office, the Law Offices of David K. Barhydt, and requested that they prepare a 10-Day Notice of Termination of Tenancy as a result of finding the cat bowls with food and water in them and finding two bongs, an open container with marijuana, zig-zag cones and two different dispensary bags from Plant 13 and Greenlight in Defendants' apartment on October 15, 2025, as the Defendants were in violation of Paragraphs 20, 27 and 32 of the Lease Agreement, as well as, being in violation of the Addendum Regarding Recreational and Medical Marijuana Use, the Crime/Drug Free Housing Addendum to the Lease Agreement and the Community Policies for the Plaintiff. True and correct copies of the Lease Agreement, Addendum and Community Policies are attached to the Verified Complaint.

15.     On October 22, 2024, I reviewed the 10-Day Notice of Termination of Tenancy for accuracy. I dated the Notice and signed the Notice as Plaintiff's Authorized Agent.

16.     On October 23, 2024, Jason Laning personally served a copy of the 10-Day Notice of Termination of Tenancy on Defendant Alfred Holt at 805 Baldwin Avenue, Apt. 303, Waukegan, Illinois 60085. A true and correct copy of the 10-Day Notice of Termination of Tenancy and Proof of Service is attached to the Verified Complaint.

17.     Defendants did not vacate the apartment within the 10-day period.

Laquevia Miller

3

# EXHIBIT S

Documentation of Defendants' receipt of CARES Act funds

Ex: S

**Exhibit S:  Cares Act Funds - Property Coverage Evidence**

Imperial Tower Apartments
805 Baldwin Ave
Waukegan, IL  60085

Date:  August 18, 2022

Alfred Holt
805 Baldwin Ave Apt 303
Waukegan, IL  60085

## LANDLORD'S THIRTY DAYS' NOTICE
### PER SECTION 4024(c) OF THE CARES ACT

You are hereby notified that there is now due the undersigned landlord the sum of **$2,217.18 Two Thousand Two Hundred Seventeen Dollars and 18/100-----------** being rent for the in the Waukegan, IL, County of Lake and State of Illinois, described as follows, to wit:  **805 Baldwin Ave Apt 303 Waukegan, IL 60085** together with all buildings, sheds, closets, out-buildings and garages used in connection with said premises.

You are further notified that payment of said sum so due has been and is hereby demanded of you, and that unless payment thereof is made on or before the expiration of thirty days after service of this notice your right of possession to said premises will be terminated.

ONLY FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

LANDLORD/AGENT:  BH Management Services, Inc is hereby authorized to receive said rent for the undersigned.

Imperial Tower Apartments        BY: _____        Date: August 18, 2022
Lessor                                           As agent for BH Management Services/Imperial Tower Apartments

### ** PROOF OF SERVICE **

**STATE OF ILLINOIS**
**COUNTY OF LAKE**

_____ certifies and says that he/she served the foregoing "Landlord's Thirty Days' Notice" on the 18th day of August 2022, as follows:

(  )    By delivering a true copy thereof to the within named Tenant, Alfred Holt
( X )   By posting a true copy thereof on the premises, pursuant to Apartment Lease Contract Paragraph 31 after knocking and no one answering AND by sliding a copy under the door of the premises.
AND
(  )    By sending a true copy thereof to the within named Tenant, by certified mail, with a returned receipt from the addressee.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the Affidavit of Service are true and correct.

_____

1

# EXHIBIT T

Psychiatric review from treating doctor, 2024–2025

  

3471 N Green Bay Rd
NORTH CHICAGO, IL 60064-3095
Phone: (847) 473-4357 Fax: (847) 247-6950

Re: Marilia Coutinho Espinola

To whom it may concern,

I am writing this letter on behalf of Ms Marilia Coutinho Espionola who has been a patient under my care since 10/11/2024. Mr. Espionola has been diagnosed with Anxiety disorder, Depression and Attention deficit hyperactivity disorder. In addition to undergoing pharmacological treatment with this provider, she also follows up with Dr. Matyja for additional psychotherapy. She is currently being prescribed medications to help her better manage her symptoms from the above conditions. Her mood and overall symptoms are fairly well controlled at this time on the current medication regimen which she has been tolerating well.However, significant psychosocial stressors or environmental factors including stressful life events and living situation can increase the risk of worsening of symptoms making her susceptible to a flare up of the symptoms related to above conditions.

Sincerely,
Silu Lohani MD
Rosalind Franklin University Health Clinics
Assistant Professor of Psychiatry
3471 Green Bay Road
North Chicago, IL 60064
847-473-4357

Electronically Signed by: SILU LOHANI, MD

Silu Lohani, MD
08/28/2025

# EXHIBIT U

Photographic evidence of selective parking enforcement,
September 2024

**Exhibit U:  Photo evidence of selective towing enforcement (wife's car vs. encroaching car, October 2024)**

 Gmail

Alfred Holt <alfred.holt@invirtcare.com>

## (no subject)

**Alfred Holt** <alfred.holt@invirtcare.com>                                                      Sat, Nov 23, 2024 at 1:53 PM
To: trina.blair@livebh.com, imperialtower@livebh.com

This was last night after my car was towed.  As you can see this person is completely in our parking space, but yet the decision was to tow my car…



**Picture taken within 15 minutes of car being wrongfully towed.**



[Quoted text hidden]
[Quoted text hidden]