**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALFRED HOLT and MARILIA COUTINHO ESPINOLA, | ) ) ) | |
| Plaintiffs, | ) ) | Case No: 1:25-cv-10936 |
| v. | ) ) | Judge LaShonda A. Hunt |
| BH MANAGEMENT SERVICES, LLC, AMZAK MEADOWS, LLC, AMZAK WAUKEGAN, LLC, KATRINA BLAIR, and LAQUEVIA MILLER, | ) ) ) ) ) ) | Magistrate Judge Keri L. Holleb Hotaling<br><br>Jury Trial Demanded |
| Defendants. | ) | |

**DEFENDANTS BH MANAGEMENT SERVICES, LLC, AMZAK WAUKEGAN, LLC, KATRINA BLAIR, AND LAQUEVIA MILLER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)**

Defendants, BH MANAGEMENT SERVICES, LLC ("BH"), AMZAK WAUKEGAN, LLC ("AMZAK"), KATRINA BLAIR ("BLAIR"), and LAQUEVIA MILLER ("MILLER") (collectively, "Defendants"), by and through their attorneys, Phillip G. Litchfield, Zachary G. Stillman, and Litchfield Cavo LLP, respectfully move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), to dismiss Plaintiffs' Complaint in its entirety. In support of this Motion, Defendants state as follows:

**Table of Contents**

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD .............................................................................................................2

    I.   12(b)(1) ........................................................................................................................2

    II.  12(b)(6) ........................................................................................................................3

ARGUMENT...........................................................................................................................4

    I.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) ........................4

    II.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ........................5

A. Shotgun Pleading ...................................................................................5

B. Fair Housing Act Discrimination (Count I)............................................6

C. Fair Housing Act Retaliation (Count II)................................................7

D. Illinois Retaliatory Eviction Act (Count III) .........................................8

E. CARES Act (Count IV).........................................................................9

F. Sections 1981 and 1982 (Counts V / XIV)..........................................10

G. Breach of Lease and Implied Covenants (Counts VI / VII) .................12

H. Trespass to Chattels and Conversion (Count VII) ...............................14

I. Trespass and Intrusion upon Seclusion (Count IX) ..............................15

J. Intentional Infliction of Emotional Distress (Count X).........................16

K. Negligent Hiring/Supervision (Count XI) ............................................17

L. Illinois Consumer Fraud and Deceptive Business Practices Act (Count XII).............18

M. Abuse of Process (Count XII)..............................................................19

CONCLUSION.................................................................................................20

## Table of Authorities

Page(s)

*Cases*

*Allen v. Wright*,
468 U.S. 737 (1984).....................................................................................2, 5

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009).....................................................................2, 3, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................3, 10

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................... 3

*Benno v. Cent. Lake Cnty. Joint Action Water Agency*,
242 Ill. App. 3d 306 (2d Dist. 1993)........................................................... 15

*Beraha v. Baxter Healthcare Corp.*,
956 F.2d 1436 (7th Cir. 1992) ..................................................................... 13

*Bloch v. Frischholz*,
587 F.3d 771 (7th Cir. 2009).....................................................................6, 7

*Blue Cross Ass'n v. 666 N. Lake Shore Dr. Assocs.*,
100 Ill. App. 3d 647 (1st Dist. 1981) ........................................................... 13

*Bonney v. King*,
201 Ill. 47 (1903) ........................................................................................ 19

*Brown v. Lober*,
75 Ill. 2d 547 (1979) ................................................................................... 13

*Busse v. Motorola, Inc.*,
   351 Ill. App. 3d 67 (2004) ................................................................................................ 15
*Chicago Title Land Tr. Co. v. JS II, LLC*,
   2012 IL App (1st) 063420 ............................................................................................... 16
*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .......................................................................................................... 5
*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
   589 U.S. 327 (2020) ................................................................................................... 10, 11
*Connick v. Suzuki Motor Co.*,
   174 Ill.2d 482 (1996) ...................................................................................................... 18
*CustomGuide v. CareerBuilder, LLC*,
   813 F. Supp. 2d 990 (N.D. Ill. 2011) ............................................................................... 6
*Dell'Armi Builders, Inc. v. Johnston*,
   172 Ill. App. 3d 144 (2d Dist. 1988) ............................................................................... 13
*Dial v. City of O'Fallon*,
   81 Ill.2d 548 (1980) ........................................................................................................ 15
*Doe v. Brouillette*,
   389 Ill. App. 3d 595 (3d Dist. 2009) ............................................................................... 17
*Doe v. Coe*,
   2019 IL 123521 ............................................................................................................... 17
*Evers v. Astrue*,
   536 F.3d 651 (7th Cir. 2008) ............................................................................................ 3
*Feltmeier v. Feltmeier*,
   207 Ill.2d 263 (2003) ...................................................................................................... 16
*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
   458 U.S. 375 (1982) ........................................................................................................ 10
*Gen. Motors Corp. v. Douglass*,
   206 Ill. App. 3d 881 (1st Dist. 1990) .............................................................................. 14
*Graham v. Commonwealth Edison Co.*,
   318 Ill. App. 3d 736 (1st Dist. 2000) .............................................................................. 17
*Hendon v. Statesman Way Apartments*,
   Case No. 25-cv-1326-bhl, 2025 WL 2709599 (E.D. Wis. Sep. 23, 2025) ............................ 9
*Hobbs v. Goncharko*,
   No. 25-cv-3398, 2025 WL 2532561 (N.D. Ill. Sept. 3, 2025) ......................................... 6, 7, 8
*Holiday Magic, Inc. v. Scott*,
   4 Ill. App. 3d 962 (1st Dist. 1972) .................................................................................. 19
*Horton v. Marovich*,
   925 F. Supp. 540 (N.D. Ill. 1996) ..................................................................................... 3
*In re Thebus*,
   108 Ill.2d 255 (1985) ...................................................................................................... 14
*Johnson v. Flannery*,
   Case No. 3:21-cv-50421, 2022 WL 103710 (N.D. Ill. Jan. 11, 2022) ................................. 8
*Johnson v. Kmart Corp.*,
   311 Ill. App. 3d 573 (1st Dist. 2000) .............................................................................. 15
*Johnson v. Prentice*,
   29 F.4th 895 (7th Cir. 2021) ............................................................................................. 4

*Jones v. Alfred H. Mayer Co.*,
   392 U.S. 409 (1968)...................................................................................................... 11

*Kolegas v. Heftel Broad. Corp.*,
   154 Ill.2d 1 (1992) ...................................................................................................... 16

*Kulhanek v. Casper*,
   2023 IL App (1st) 221454............................................................................................ 12

*Kumar v. Bornstein*,
   354 Ill. App. 3d 159 (1st Dist. 2004) ......................................................................... 19

*Kurowski v. Rush Sys. for Health*,
   683 F. Supp. 3d 836 (N.D. Ill. 2023) .......................................................................... 14

*Lawrence v. Dunbar*,
   919 F.2d 1525 (11th Cir. 1990) ..................................................................................... 2

*Lewis v. Ind. Wesleyan Univ.*,
   36 F.4th 755 (7th Cir. 2022)....................................................................................... 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).................................................................................................2, 4

*Maras v. Milestone, Inc.*,
   348 Ill. App. 3d 1004 (3d Dist. 2004)....................................................................15, 17

*Marshall-Mosby v. Corp. Receivables, Inc.*,
   205 F.3d 323 (7th Cir. 2000)......................................................................................... 3

*McCurry v. Kenco Logistics Servs.*,
   942 F.3d 783 (7th Cir. 2019) ...................................................................................... 10

*McGrath v. Fahey*,
   126 Ill.2d 78 (1988) .................................................................................................... 16

*Midland Mgmt. Co. v. Helgason*,
   158 Ill.2d 98 (1994) .................................................................................................... 12

*Morris v. Office Max, Inc.*,
   89 F.3d 411 (7th Cir. 1996)....................................................................................10, 11

*Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*,
   2025 WL 975967 (N.D. Ill. Mar. 31, 2025) ................................................................. 7

*Pantoja-Cahue v. Ford Motor Credit Co.*,
   375 Ill. App. 3d 49 (1st Dist. 2007) ........................................................................... 18

*Pavlik v. Kornhaber*,
   326 Ill. App. 3d 731 (1st Dist. 2001) ......................................................................... 17

*People ex rel. Madigan v. J.T. Einoder, Inc.*,
   2015 IL 117193 ............................................................................................................ 9

*Perry v. Vill. of Arlington Heights*,
   186 F.3d 826 (7th Cir. 1999)......................................................................................... 2

*Public Fin. Corp. v. Davis*,
   66 Ill.2d 85 (1976) ...................................................................................................... 17

*Robinson v. RiverHills Bank*,
   Case No. 3:21-CV-195-DPJ-LGI, 2022 WL 4234269 (S.D. Miss. Aug. 16, 2022)................. 9

*Robinson v. Toyota Motor Credit Corp.*,
   201 Ill.2d 403 (2002) ..............................................................................................18, 19

*Schweihs v. Chase Home Finance LLC*,
   2021 IL App (1st) 191779............................................................................................ 16

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)...................................................................................................... 4
*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................................2, 5
*St. John's United Church of Christ v. City of Chicago*,
    502 F.3d 616 (7th Cir. 2007)...................................................................................... 3
*Swyear v. Fare Foods Corp.*,
    911 F.3d 874 (7th Cir. 2018)..................................................................................... 13
*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008).................................................................................. 10
*U.S. v. Hassebrock*,
    21 F.4th 494 (7th Cir. 2021)........................................................................................ 4
*U.S. SEC v. Winemaster*,
    529 F. Supp. 3d 880 (N.D. Ill. 2021) ........................................................................ 6
*U.S. v. Sutton*,
    962 F.3d 979 (7th Cir. 2020)...................................................................................... 4
*Vega v. Chi. Park Dist.*,
    958 F. Supp. 2d 943 (N.D. Ill. 2013) ...................................................................... 15
*Ward v. Kutak Rock LLP*,
    2023 IL App (1st) 221499-U ..................................................................................... 17
*Wetzel v. Glen St. Andrew Living Cmty.*,
    901 F.3d 856 (7th Cir. 2018)...............................................................................6, 7, 8
*Younge v. Cushman & Wakefield, Inc.*,
    2024 IL App (1st) 221524-U ..................................................................................... 17
*Zankle v. Queen Anne Landscaping*,
    311 Ill. App. 3d 308 (2d Dist. 2000)........................................................................ 18
*Zissu v. IH2 Prop. Ill., L.P.*,
    157 F. Supp. 3d 797 (N.D. Ill. 2016) ...................................................................... 14

**Statutes**
15 U.S.C. § 9058.........................................................................................................1, 9
42 U.S.C. § 1982.......................................................................................................1, 11
42 U.S.C. § 3604(b) ................................................................................................1, 6, 7
42 U.S.C. § 3617.....................................................................................................1, 7, 8
42 U.S.C. §§ 1981 and 1982................................................................................. Passim
765 ILCS 720................................................................................................................. 8
765 ILCS 720/1.......................................................................................................... 1, 8
765 ILCS 721................................................................................................................. 8
765 ILCS 721/1............................................................................................................. 8
765 ILCS 721/5............................................................................................................. 9
815 ILCS 505/2......................................................................................................... 1, 18

**Other Authorities**
87 C.J.S. Trespass § 49 (2021) ................................................................................... 16

## INTRODUCTION

Plaintiffs Alfred Holt ("Holt") and Marilia Coutinho Espinola ("Espinola") (collectively, "Plaintiffs") filed their 136-page Complaint against defendants on September 25, 2025, following leave to proceed *in forma pauperis*. ECF Nos. 7, 12, 14. The Complaint interchangeably asserts fourteen overlapping federal and state claims against all named defendants, including alleged violations of the Fair Housing Act, the CARES Act, 42 U.S.C. §§ 1981 and 1982, and various Illinois common-law and statutory causes of action:

Plaintiffs' Complaint asserts claims against each defendant interchangeably, asserting the following claims:

- Count I – Fair Housing Act Discrimination (42 U.S.C. § 3604(b))
- Count II – Fair Housing Act Retaliation (42 U.S.C. § 3617)
- Count III – Illinois Retaliatory Eviction Act (765 ILCS 720/1)
- Count IV – CARES Act (15 U.S.C. § 9058)
- Count V – Race Discrimination in Contracting (42 U.S.C. § 1981)
- Count VI – Breach of Lease / Implied Covenant of Good Faith and Fair Dealing (Illinois common law)
- Count VII – Breach of the Implied Covenant of Quiet Enjoyment (Illinois common law)
- Count VIII – Trespass to Chattels / Conversion (Illinois common law)
- Count IX – Trespass and Intrusion Upon Seclusion (Illinois common law)
- Count X – Intentional Infliction of Emotional Distress (Illinois common law)
- Count XI – Negligent Hiring, Retention, and Supervision (Illinois common law)
- Count XII – Consumer Fraud and Deceptive Business Practices (815 ILCS 505/2)
- Count XIII – Abuse of Process (Illinois common law)
- Count XIV – Property Rights (42 U.S.C. § 1982)

Despite its length, the Complaint consists almost entirely of conclusory assertions, group pleading, and recitations of statutory elements without supporting facts. Plaintiffs fail to identify any actionable conduct by the Defendants or any factual basis connecting the Defendants' routine property-management actions to the alleged statutory or common-law violations.

Accordingly, dismissal is proper under Federal Rule of Civil Procedure 12(b)(1) because several counts fail to allege any cognizable injury sufficient to establish Article III standing.

1

Plaintiffs' claimed harms—such as incidental financial losses and alleged development of ADHD, and alleged panic attacks leading to automobile accidents—are not concrete, particularized, or fairly traceable to any challenged conduct. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016); *Allen v. Wright*, 468 U.S. 737, 757 (1984).

Dismissal is further warranted under Rule 12(b)(6) because the Complaint consists of improper and disfavored "shotgun pleading" throughout, and further fails to state a plausible claim under any federal or state theory. Count IV (CARES Act) fails as a matter of law because the cited statutory provision expired years ago and creates no private right of action. The remaining counts consist largely of conclusory, duplicative, or immaterial allegations that do not satisfy federal pleading standards.

In short, even taking Plaintiffs' allegations as entirely true as asserted, none state a plausible claim against These Defendants. The Complaint should therefore be dismissed in its entirety, or alternatively, the legally defective counts should be stricken with prejudice.

## LEGAL STANDARD

### I.   12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Standing is an essential component of subject matter jurisdiction, and the plaintiff bears the burden of establishing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999).

A Rule 12(b)(1) motion may present either a facial or a factual attack on jurisdiction. *Apex Digital*, 572 F.3d at 443–44. A facial attack argues that the complaint itself fails to allege a basis for jurisdiction; in that case, the Court accepts all well-pleaded allegations as true and considers only the pleadings. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). By contrast, a

factual attack asserts that, although the complaint is formally sufficient, the facts in reality do not support jurisdiction. In that circumstance, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted to determine whether subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)).

If the plaintiff fails to meet either burden, dismissal under Rule 12(b)(1) is proper. *Apex Digital*, 572 F.3d at 445–46.

## II. 12(b)(6)

A Complaint is subject to dismissal under Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In reviewing such a motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Horton v. Marovich*, 925 F. Supp. 540, 542–43 (N.D. Ill. 1996). However, legal conclusions and conclusory statements are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.

Dismissal is therefore appropriate where, even accepting all well-pleaded facts as true, the complaint fails to allege a set of facts entitling the plaintiff to relief. *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

Rule 8 demands more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

3

Although pro se pleadings are construed "generously" and reviewed "by substance, not label," *U.S. v. Hassebrock*, 21 F.4th 494, 498 (7th Cir. 2021); *U.S. v. Sutton*, 962 F.3d 979, 984 (7th Cir. 2020), they must still adhere to the procedural rules and requirements outlined by the Federal Rules of Civil Procedure, including pleading requirements. *See Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2021).

## ARGUMENT

I.    **Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

Even accepting Plaintiffs' allegations as true, their claimed injuries fail to establish Article III standing. To invoke federal jurisdiction, a plaintiff must demonstrate (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The burden of establishing these elements rests on the party invoking jurisdiction. *Apex Digital, Inc.*, 572 F.3d at 443.

Here, Plaintiffs' asserted "damages" (ECF No. 14 ¶ 87) fail to allege any injury in fact and are entirely speculative and disconnected from any statutory right allegedly violated. The claimed losses—missed "VA suicide-prevention proposals" totaling $8.15 million, business income lost due to Espinola's "inability to drive," general "emotional distress" tied to ADHD and anxiety, and vehicle-towing expenses allegedly incurred as a result of management enforcement of parking rules—bear no causal relationship to Defendants' alleged housing conduct. None constitutes a cognizable injury "to a legally protected interest" arising under the Fair Housing Act or sections 1981 and 1982. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–43 (1976) (injury must be "fairly traceable" to defendant's challenged conduct, not to independent third-party or personal circumstances).

Moreover, the alleged economic losses are neither concrete nor particularized within the meaning of *Spokeo*, 578 U.S. at 339–40. Plaintiffs identify no facts showing that Defendants' housing management practices directly caused lost government contracts or other professional harm. The chain of causation relies on speculative assumptions about unrelated business ventures, third-party funding decisions, Espinola's own "inability to drive," and a purported $15,000 loss from a prematurely returned "business package." Those claims arise from Plaintiffs' independent business operations, not any housing-related conduct cognizable under the Fair Housing Act, sections 1981 and 1982, or any other claims asserted by Plaintiffs. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be "certainly impending," and "allegations of possible future injury are not sufficient").

Even if emotional or reputational harm were cognizable, Plaintiffs fail to allege any concrete, particularized injury distinct from general dissatisfaction or self-imposed business setbacks. *See Allen v. Wright*, 468 U.S. 737, 754 (1984). The supposed injuries—missed VA proposals, the package return, lost RBT income, and Espinola's driving limitations—are speculative, self-inflicted, and untraceable to any act of discrimination.

Because Plaintiffs have not alleged a concrete injury fairly traceable to Defendants' conduct and redressable by this Court, they lack Article III standing, and the Complaint must be dismissed in its entirety under Rule 12(b)(1).

## II. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

### A. *Shotgun Pleading*

Plaintiffs' Complaint should be dismissed in its entirety under Rule 12(b)(6) because it constitutes impermissible "shotgun" pleading. Each count indiscriminately incorporates all preceding paragraphs and defendants, making it impossible to discern which factual allegations support which claims. This pleading style "can prevent the opposing party from reasonably being

able to prepare a response or simply make the burden of doing so more difficult." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011); *see also U.S. SEC v. Winemaster*, 529 F. Supp. 3d 880, 906–07 (N.D. Ill. 2021). Such shotgun pleadings fail to provide fair notice of the specific conduct alleged against each Defendant and the legal basis for each count. Because the Complaint's structure obscures its claims and frustrates Rule 8's requirement of a "short and plain statement," dismissal is warranted. In any event, even apart from its defective form, each count fails to state a claim for the independent reasons set forth below.

### B. *Fair Housing Act Discrimination (Count I)*

Count I of Plaintiffs Complaint asserts claims for discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(b). Plaintiffs' claim for discrimination fails because no conduct plausibly constituting "discrimination in the terms, conditions, or privileges of rental, or in the provision of services or facilities," as required by section 3604(b) is asserted.

The Seventh Circuit construes section 3604(b) narrowly to cover either (1) pre-acquisition discrimination in renting, or (2) limited post-acquisition discrimination affecting the "provision of services or facilities" connected to one's tenancy. *Bloch v. Frischholz*, 587 F.3d 771, 779 (7th Cir. 2009) (*en banc*); *Wetzel v. Glen St. Andrew Living Cmty.*, 901 F.3d 856, 867 (7th Cir. 2018). The Northern District recently reaffirmed this boundary, holding that section 3604(b) covers only discriminatory treatment in the conditions of tenancy or services provided—not general landlord-tenant disputes or administrative grievances. *Hobbs v. Goncharko*, No. 25-cv-3398, 2025 WL 2532561, *3–5 (N.D. Ill. Sept. 3, 2025).

Here, Plaintiffs' section 3604(b) claim rests on conclusory allegations of "racial profiling," use of a towing vendor with "a history of racist conduct," and purported "selective enforcement" of parking and rule provisions. ECF No. 14 at ¶¶ 36–39. None of these allegations plausibly connects any Defendant's conduct to Plaintiffs' race. Plaintiffs plead no facts suggesting

Defendants made any race-based comments, adopted any policy directed toward protected classes, or treated similarly situated tenants differently. The alleged towing dispute, portal lockout, and apartment entry are, at most, facially neutral management acts, not "discriminatory terms or conditions of rental" under section 3604(b). *See Hobbs*, 2025 WL 2532561, at 3–5 (limiting § 3604(b) to conduct demonstrably motivated by race, such as racial epithets or disparate maintenance service). Even taking these allegations as true, isolated, facially neutral incidents do not amount to discrimination. *See Bloch*, 587 F.3d at 779; and *Wetzel*, 901 F.3d at 867.

Unlike *Hobbs*, Plaintiffs here do not allege racially-motivated refusals of maintenance, differential service, or use of racial slurs. Their allegations instead concern, at most, ordinary management decisions—billing disputes, portal access, vehicle towing, and lease enforcement—none of which plausibly implicate race or any protected characteristic. *Hobbs* illustrates what is missing: in that case, specific allegations of racial epithets, disparate treatment in maintenance and access, and eviction threats sufficed to survive dismissal. *Id.* Plaintiffs' complaint here contains no such facts and merely asserts discrimination in conclusory fashion, which is insufficient under *Twombly* and *Iqbal*.

Moreover, section 3604(b) requires that discriminatory intent be a "motivating factor" in the challenged action. *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, 2025 WL 975967, at 42 (N.D. Ill. Mar. 31, 2025). Plaintiffs allege none. Absent factual allegations that any Defendant treated them differently because of race, color, or another protected class, Count I fails to state a plausible claim and should be dismissed with prejudice.

### C. Fair Housing Act Retaliation (Count II)

Count II asserts a claim for retaliation under the Fair Housing Act, 42 U.S.C. § 3617. Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with" a person for exercising FHA rights. To state such a claim, a plaintiff must allege that (1) they engaged in a

protected activity under the FHA; (2) they suffered an adverse action; and (3) a causal connection exists between the two. *Wetzel*, 901 F.3d at 868.

Here, Plaintiffs do not allege any *protected activity* within the meaning of section 3617. Their complaint references a "discrimination complaint" made on September 25, 2024 (ECF No. 14 at ¶ 43) but fails to identify to whom it was made, whether it concerned discriminatory housing practices, or whether it was made in any FHA-related forum or context. Requests or disputes over payment, portal access, towing, or lease enforcement—even if characterized as "complaints"—are not protected activities unless tied to alleged discrimination prohibited by the FHA. *Hobbs*, 2025 WL 2532561, at *8 (quoting *Johnson v. Flannery*, Case No. 3:21-cv-50421, 2022 WL 103710, at *2 (N.D. Ill. Jan. 11, 2022)) ("That may be retaliation, but it is not retaliation under the Fair Housing Act.").

Even assuming Plaintiffs engaged in some protected activity, the alleged "blocking of the payment portal," "rule-violation notice," and "assessment of late fees" (ECF No. 14 at ¶ 42) are facially neutral administrative acts. Plaintiffs plead no facts showing these were taken *because* of any FHA-related complaint or that any Defendant acted with retaliatory motive. Without factual allegations linking purported adverse actions to any FHA-protected conduct, Count II fails as a matter of law. *Hobbs*, 2025 WL 2532561, at *8.

Accordingly, Count II should be dismissed with prejudice.

### D. *Illinois Retaliatory Eviction Act (Count III)*

Count III asserts a claim under the Illinois Retaliatory Eviction Act (765 ILCS 720/1). It fails as a matter of law in that the governing statute is repealed as of January 1, 2025. Public Act 103-0831, § 10 (eff. Jan. 1, 2025) (repealing 765 ILCS 720 and enacting 765 ILCS 721). The legislature simultaneously enacted the Landlord Retaliation Act (765 ILCS 721/1 *et seq.*), which governs prospective conduct only and contains no retroactive application clause. Plaintiffs'

allegations concern acts that allegedly occurred between September 2024 and January 2025, predating the effective date of the new statute. Accordingly, the repealed Act provides no continuing cause of action, and the replacement statute does not apply retroactively. *See People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29 (repealed statutes cannot form the basis for civil liability absent a savings clause).

Plaintiffs' allegations concern acts that allegedly occurred in late 2024—months before the effective date of the new statute—and therefore cannot support any claim under either the repealed or replacement law. Even if the new Act applied, its prohibitions extend only to retaliatory eviction-type actions—e.g., nonrenewal, termination, rent increase, or decrease in services—taken in response to protected tenant activity such as reporting code violations or organizing tenants. *See* 765 ILCS 721/5. Plaintiffs allege none of those things; they instead describe routine management issues such as portal access, towing, and billing disputes. Those do not state a claim under Illinois's retaliation framework. Accordingly, Count III should be dismissed with prejudice for failure to state a claim.

### E. CARES Act (Count IV)

In Count IV, Plaintiffs assert claims under the CARES Act, 15 U.S.C. § 9058, alleging that Defendants violated the temporary moratorium on eviction notices by issuing five-day notices in 2021–2023. Plaintiffs' argument has no legal or factual basis. Section 4024 of the CARES Act imposed a limited, time-bound moratorium on certain eviction actions and notice periods, which expired on July 25, 2020, and was not renewed by Congress. *Hendon v. Statesman Way Apartments*, Case No. 25-cv-1326-bhl, 2025 WL 2709599, *4 (E.D. Wis. Sep. 23, 2025). Courts uniformly hold that the provision created no continuing obligations and no private right of action once the moratorium lapsed. *See, e.g.*, *Hendon*, 2025 WL 2709599, *4; *Robinson v. RiverHills Bank*, Case No. 3:21-CV-195-DPJ-LGI, 2022 WL 4234269, *8-9 (S.D. Miss. Aug. 16, 2022).

9

Plaintiffs' alleged notices of eviction are dated November 7, 2022, and January 17, 2023. ECF No. 14 at 72-74. Because these notices were issued more than two years after the CARES Act moratorium expired, and because § 4024 provides no enforceable private remedy, Count IV fails as a matter of law and should be dismissed with prejudice for failure to state a claim.

### F. Sections 1981 and 1982 (Counts V / XIV)

In Counts V and XIV, Plaintiffs assert claims under 42 U.S.C. sections 1981 and 1982 for alleged race-based interference with contractual and property rights against Defendants. These claims fail as a matter of law.

Section 1981 guarantees that "all persons … shall have the same right … to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981. To state a claim, a plaintiff must allege (1) membership in a protected racial class; (2) intentional discrimination on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in the statute—i.e., the making, performance, modification, or termination of a contract, or the enjoyment of its benefits. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Section 1981 reaches only purposeful discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).

Following *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 331 (2020), a section 1981 plaintiff must also plead that "but for" race, the plaintiff would not have suffered the alleged loss of a legally protected right. This standard is stricter than Title VII's "motivating-factor" test. *See Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755 (7th Cir. 2022); *McCurry v. Kenco Logistics Servs.*, 942 F.3d 783, 788 (7th Cir. 2019). Although intent may be pled generally, a complaint must include enough factual content to allow a reasonable inference of discriminatory purpose. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *Iqbal*, 556 U.S. at 678.

Section 1982, which shares its origin and purpose with section 1981, guarantees all citizens "the same right … to inherit, purchase, lease, sell, hold, and convey real and personal property" as white citizens. 42 U.S.C. § 1982; *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968). Because both statutes derive from the Civil Rights Act of 1866, courts construe them in tandem. *Morris*, 89 F.3d at 414. Thus, a section 1982 claim requires the same showing of purposeful racial discrimination and "but-for" causation as section 1981.

Here, Plaintiffs fail to allege any facts plausibly showing racial discrimination in the making, performance, or enjoyment of a contractual or property right. The allegations that Defendants "selectively enforced rules," "disabled the payment portal," "imposed late fees," and "initiated baseless eviction efforts" (ECF No. 14 ¶¶ 53, 85) describe routine lease-administration disputes, not purposeful race discrimination within the meaning of sections 1981 or 1982. *See Morris*, 89 F.3d at 414 (no section 1981 or 1982 violation where plaintiffs alleged they were "checked out" by police but denied neither admittance nor service).

Plaintiffs identify no contractual term denied or impaired because of race, nor any act that prevented them from making, performing, or enjoying a lease contract. The Complaint asserts only that Defendants enforced rules and imposed fees in a manner Plaintiffs perceived as unfair. Such assertions—absent facts showing that Defendants treated similarly situated non-minority tenants differently—do not satisfy *Twombly* or *Iqbal*. *See Comcast Corp*, 589 U.S. at 331 (section 1981 plaintiff must plead that, *but for* race, he would not have suffered the alleged loss of rights).

The same defects foreclose the section 1982 claim. That statute protects the right to "inherit, purchase, lease, sell, hold, and convey" property on equal terms. 42 U.S.C. § 1982; *Jones*, 392 U.S. at 437. Plaintiffs allege no deprivation of possession, no refusal to lease or renew, and no interference with their ability to "purchase, lease, sell, hold, or convey" any property interest.

11

Their alleged leasehold remained intact throughout. At most, they complain of administrative disagreements arising from rent payment and management practices—matters outside the scope of sections 1981 and 1982.

Because Plaintiffs allege neither intentional discrimination nor a "but-for" causal connection between race and any loss of contractual or property rights, Counts V and XIV fail as a matter of law and should be dismissed.

### G. *Breach of Lease and Implied Covenants (Counts VI / VII)*

In Counts VI and VII, Plaintiffs assert claims for Breach of Lease, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Breach of the Implied Covenant of Quiet Enjoyment. These counts fail as a matter of law.

"A lease is a contract that gives rise to the landlord-tenant relationship." *Kulhanek v. Casper*, 2023 IL App (1st) 221454, ¶ 30 (citing *Midland Mgmt. Co. v. Helgason*, 158 Ill.2d 98, 103 (1994)). Accordingly, landlord-tenant relations are governed by the same principles as any other contract. *Id.* Therefore, a claim for "breach of lease" is, in substance, a breach of contract claim.

At the threshold, Plaintiffs' claims suffer from the same "shotgun pleading" defect discussed initially: Plaintiffs indiscriminately assert these contract-based claims against *all* Defendants without identifying which entity was actually a party to the lease. A lease, like any contract, binds only its signatories. *See Id.* Plaintiffs' failure to specify the contracting landlord or attach the lease itself renders it impossible to determine from the pleadings which, if any, Defendant owed them contractual obligations. Non-parties to a lease cannot be liable for its breach.

Even setting aside that threshold deficiency, the allegations fail to state a plausible claim for breach of any lease term. A breach of contract requires: (1) a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a material breach by the defendant; and (4)

12

resulting damages. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018). Plaintiffs identify no specific lease provision breached—only generalized complaints about "disabled payment portals," "misapplied fees," and "entry without notice." (ECF No. 14 ¶ 56). These allegations, even if true, amount at most to routine administrative or management disputes, not a material breach of contract. Illinois law requires an identifiable contractual duty and an actual failure of performance; dissatisfaction with management practices does not suffice.

Any claim under implied covenant of good faith and fair dealing fares no better. Illinois law is clear that the covenant is merely a rule of contract construction—it does not create independent duties or support a standalone cause of action. *Beraha v. Baxter Healthcare Corp.*, 956 F.2d 1436, 1443–45 (7th Cir. 1992).

Similarly, the implied covenant of quiet enjoyment protects tenants from substantial interference with possession of the premises—not minor inconveniences. *Blue Cross Ass'n v. 666 N. Lake Shore Dr. Assocs.*, 100 Ill. App. 3d 647, 652 (1st Dist. 1981). A breach requires conduct amounting to actual or constructive eviction or a material disturbance of possession. *Brown v. Lober*, 75 Ill. 2d 547, 553 (1979); *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 149 (2d Dist. 1988). Mere inconvenience, administrative error, or dissatisfaction is insufficient. *Blue Cross*, 100 Ill. App. 3d at 652.

Here, Plaintiffs allege no deprivation of possession and remained in their unit at all times. Their complaints—that Defendants temporarily disabled a payment portal, assessed late fees, authorized towing, and entered the unit without notice—describe only isolated management disputes incidental to tenancy. Such actions, even if proven, fall well short of the "material interference" required to sustain a claim for breach of quiet enjoyment. *Id.*

Accordingly, Counts VI and VII should be dismissed for failure to state a claim.

13

### H. *Trespass to Chattels and Conversion (Count VII)*

Count VIII fails as a matter of law regardless of whether Plaintiff alleges trespass to chattels or conversion.

Under Illinois law, trespass to chattels requires an injury to or interference with possession of chattel, with or without physical force. *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 850 (N.D. Ill. 2023) (quoting *Zissu v. IH2 Prop. Ill., L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016)). The interference must be substantial enough to cause damage or dispossession. *Id.* Merely *arranging* for lawful towing of a vehicle from private property pursuant to lease or parking rules does not constitute a trespass, because the owner's possessory rights are only temporarily suspended and the chattel is returned intact. *See Kurowski*, 683 F. Supp. 3d at 850 (dismissing trespass claim where no actual injury to returned property alleged). Plaintiffs do not allege that their vehicle was damaged, unlawfully retained, or otherwise permanently deprived from them.

To the extent Plaintiffs allege *conversion*, that claim fares no better. Conversion requires a plaintiff to allege (1) a right to the property, (2) an absolute and unconditional right to immediate possession, (3) a demand for return, and (4) an unauthorized assumption of control, dominion, or ownership. *Gen. Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 885–86 (1st Dist. 1990). Conversion requires permanent deprivation, not a temporary tow or administrative hold. *In re Thebus*, 108 Ill.2d 255, 259 (1985).

Here, Plaintiffs merely allege that their vehicle was towed "without lawful justification," not that it was destroyed, sold, or withheld after demand. Even accepting their allegations as true, this is—at most—a garden-variety parking dispute, not tortious conversion or trespass.

Accordingly, Count VIII should be dismissed with prejudice for failure to state a claim.

### I. *Trespass and Intrusion upon Seclusion (Count IX)*

Count IX asserts claims sounding in trespass and intrusion upon seclusion. Either way it fails as a matter of law.

To plead intrusion upon seclusion, plaintiffs must plead (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the intrusion concerned private, not merely personal, matters; and (4) the intrusion caused anguish and suffering. *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 70 (2004); *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013). The third element—a showing that the subject matter was private—is a prerequisite to the others. *Busse*, 351 Ill. App. 3d at 70.

Mere entry or observation, without an egregious invasion of privacy, is insufficient. *Johnson v. Kmart Corp.*, 311 Ill. App. 3d 573, 578 (1st Dist. 2000). Plaintiffs allege only that two employees entered the unit, not that they observed, recorded, or disseminated private facts. Such routine, brief entry—even if mistaken—does not satisfy the "highly offensive" element.

Nor can Plaintiffs impose vicarious liability on the corporate defendants absent facts showing authorization, ratification, or that the entry furthered a business purpose. Intrusion upon seclusion is an intentional tort; Illinois law bars *respondeat superior* liability where the act is purely personal. *Maras v. Milestone, Inc.*, 348 Ill. App. 3d 1004, 1008 (3d Dist. 2004).

The trespass claim fares no better. Under Illinois law, trespass requires an intentional, unauthorized entry onto land in the possession of another. *Benno v. Cent. Lake Cnty. Joint Action Water Agency*, 242 Ill. App. 3d 306, 313 (2d Dist. 1993). A defendant may also be liable if they cause a thing or third person to enter onto the land. *Dial v. City of O'Fallon*, 81 Ill.2d 548, 554 (1980). However, it is a complete defense that the entry was permitted by the terms of a valid and lawful contract, such as a lease granting management access for inspections, repairs, or

15

emergencies. *See Schweihs v. Chase Home Finance LLC*, 2021 IL App (1st) 191779, ¶ 30 (citing 87 C.J.S. Trespass § 49 (2021)).

Although every intentional trespass technically gives rise to nominal damages even without proof of harm, *Chicago Title Land Tr. Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶¶ 77, 88, Illinois courts still require factual allegations showing an unauthorized or wrongful entry. Here, Plaintiffs do not allege that any named defendant personally entered or directed an entry, nor that the access exceeded lease-based maintenance rights. At most, the alleged incident reflects a disputed exercise of managerial authority within premises under BH's control, not a tortious invasion of possessory rights.

Accordingly, Count IX should be dismissed for failure to state a claim.

### J. *Intentional Infliction of Emotional Distress (Count X)*

Count X purports to assert a claim for intentional infliction of emotional distress ("IIED"). It fails as a matter of law.

To plead IIED under Illinois law, a plaintiff must allege: (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to cause or knew there was a high probability their conduct would cause emotional distress; and (3) the conduct actually caused severe distress. *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 268–69 (2003); *McGrath v. Fahey*, 126 Ill.2d 78, 86 (1988).

The "extreme and outrageous" threshold is exceptionally high. Conduct must "go beyond all possible bounds of decency" and be "regarded as intolerable in a civilized community." *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 21 (1992). Mere insults, indignities, or routine disputes—even if upsetting—do not suffice. *Id.*; *McGrath*, 126 Ill.2d at 86–87.

Plaintiffs' allegations that Defendants caused "stress," "panic attacks," or "emotional upset" from property management decisions, billing issues, or a single alleged entry into their

apartment fall far short of this standard. Ordinary landlord-tenant disagreements and business communications—even if unpleasant—are not "outrageous" as a matter of law. *See Public Fin. Corp. v. Davis*, 66 Ill.2d 85, 90 (1976) (asserting lawful rights under contract not extreme and outrageous); *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 746-47 (1st Dist. 2000) (termination of services not outrageous such that it gives rise to IIED).

Nor do Plaintiffs allege any pattern of conduct comparable to the "continuing course of abusive behavior" necessary to sustain an IIED claim. *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 746 (1st Dist. 2001). At most, they describe isolated incidents, which Illinois courts routinely deem insufficient.

Finally, IIED is an intentional tort requiring personal participation; it cannot be imposed vicariously on a corporate defendant absent allegations that the act was authorized, directed, or committed in furtherance of its business. *Maras v. Milestone, Inc.*, 348 Ill. App. 3d 1004, 1008 (3d Dist. 2004). Plaintiffs plead none.

Because the Complaint identifies no conduct "beyond all bounds of decency" and no facts showing actual intent or causation of severe distress, Count X should be dismissed for failure to state a claim.

### K. *Negligent Hiring/Supervision (Count XI)*

Count XI alleges negligent hiring, retention, and supervision. Under Illinois law, such a claim requires concrete facts showing the employer knew or should have known its employee was unfit and failed to act, and that this failure proximately caused the injury. *Doe v. Coe*, 2019 IL 123521 ¶¶ 58–62; *Doe v. Brouillette*, 389 Ill. App. 3d 595, 606 (3d Dist. 2009). Mere recitals of a "duty to supervise" are insufficient. Illinois courts routinely dismiss negligent supervision claims resting only on boilerplate allegations. *See Ward v. Kutak Rock LLP*, 2023 IL App (1st) 221499-U, ¶ 13; *Younge v. Cushman & Wakefield, Inc.*, 2024 IL App (1st) 221524-U, ¶ 118. Here,

Plaintiffs plead no facts showing that BH or any other defendant knew or should have known of any dangerous or incompetent employee, no identified prior incidents, and no specific supervisory lapse linked to any alleged harm. Absent such allegations, Count XI fails to state a claim and should be dismissed with prejudice for failure to state a claim.

### L. *Illinois Consumer Fraud and Deceptive Business Practices Act (Count XII)*

In Count XII, Plaintiffs assert claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, alleging that These Defendants "disabled" their online rent portal and charged late fees to deceive them into incurring penalties. The claim fails as a matter of law.

To state an ICFA claim, a plaintiff must plead with particularity a deceptive or unfair act, the defendant's intent that the plaintiff rely on such act, and resulting damages. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417–19 (2002); *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 501–02 (1996). Conclusory or group allegations do not suffice. *Pantoja-Cahue v. Ford Motor Credit Co.*, 375 Ill. App. 3d 49, 61 (1st Dist. 2007).

Here, Plaintiffs do not identify any specific misrepresentation, omission, or concealment by These Defendants or any individual employee. The complaint merely alleges that a payment portal was unavailable for a period of time and that late fees were assessed under the lease. Such allegations do not amount to a "deceptive act or practice" within the meaning of the ICFA. *Robinson*, 201 Ill.2d at 417 (deceptive conduct must involve a false statement or concealment of a material fact); *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2d Dist. 2000) ("A naked breach-of-contract claim does not support a Consumer Fraud Act claim.").

Even taken as true, the conduct alleged—temporary loss of portal access and imposition of late fees under a residential lease—constitutes, at most, a private contractual dispute between landlord and tenant. The ICFA applies only to conduct "in trade or commerce" that implicates

18

consumer-protection concerns affecting the marketplace, not to individualized billing or management disputes. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169 (2005).

Nor do Plaintiffs state an "unfairness" claim under *Robinson*. To qualify as unfair, the practice must offend established public policy, be oppressive or unscrupulous, and cause substantial injury to consumers. 201 Ill.2d at 417–18. Alleged disabling of a rent-payment portal and assessment of late fees does not meet that threshold. It neither implicates public policy nor rises to the level of oppression or marketplace deception contemplated by the Act.

Because Plaintiffs allege no actionable misrepresentation, omission, or unfair practice, and no consumer nexus beyond their own lease relationship, Count XII fails to state a claim under the ICFA and should be dismissed with prejudice.

### M. Abuse of Process (Count XII)

In Count XIII, Plaintiffs allege that These Defendants committed "abuse of process" by serving a 10-day notice and filing an eviction action that was later dismissed. This claim fails under settled Illinois law. The tort of abuse of process requires (1) the existence of an ulterior purpose or motive, and (2) an act in the use of legal process that is not proper in the regular course of proceedings. *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (1st Dist. 2004); *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 967 (1st Dist. 1972). Merely filing or maintaining a lawsuit—even with alleged improper motives—does not constitute abuse of process. *Holiday Magic*, 4 Ill. App. 3d at 967 (1st Dist. 1972) (citing *Bonney v. King*, 201 Ill. 47, 51 (1903)).

Here, Plaintiffs allege no improper act or perversion of process beyond the ordinary use of legal process to seek possession of property. The alleged "retaliatory" purpose, even if accepted as true, does not convert a standard eviction action into an actionable abuse of process. Because Plaintiffs identify no act by Defendants outside the legitimate scope of that proceeding, Count XIII fails to state a claim and should be dismissed with prejudice for failure to state a claim.

19

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Complaint should be dismissed in its entirety. Plaintiffs lack Article III standing because their alleged injuries are speculative, self-inflicted, and untraceable to any conduct by These Defendants. Even if jurisdiction existed, each count fails to state a plausible claim for relief under Rule 12(b)(6). The pleading is a prototypical *shotgun complaint* that obscures the basis of each cause of action, conflates multiple defendants, and asserts conclusory allegations unsupported by specific facts.

WHEREFORE, Defendants, BH MANAGEMENT SERVICES, LLC, AMZAK WAUKEGAN, LLC, KATRINA BLAIR, and LAQUEVIA MILLER, respectfully request that Plaintiffs' Complaint be dismissed, with prejudice, and for any further relief that this Court deems reasonable and just.

Respectfully submitted,

/s/ *Phillip G. Litchfield*
One of the Attorneys for Defendants

Phillip G. Litchfield (6317818)
Zachary G. Stillman (6342749)
**LITCHFIELD, CAVO, LLP**
303 West Madison, Suite 300
Chicago, IL 60606
(312) 781-6584 (Litchfield)
(312) 781-6672 (Stillman)
LitchfieldP@LitchfieldCavo.com
Stillman@litchfieldcavo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 26, 2025, the foregoing Motion was served via email to the following parties, as well as electronically filed with the CM/ECF system.

ALFRED HOLT
*Pro Se Plaintiff*
805 Baldwin Ave, Apt 303
Waukegan, Illinois 60085
(224) 518-8376
Albizsmart@gmail.com

MARILIA COUTINHO ESPINOLA
*Pro Se Plaintiff*
805 Baldwin Ave, Apt 303
Waukegan, Illinois 60085
Mariliaholt@gmail.com

/s/ *Zachary G. Stillman*
One of the Attorneys for Defendants