BC JKS

RECEIVED
12/17/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| Alfred Holt and Marilia Coutinho Espinola, ) | | |
| ) | | |
| Plaintiffs, ) | Case No.: 1:25-cv-10936 | |
| ) | | |
| vs. ) | Judge LaShonda A. Hunt | |
| ) | | |
| ) | Magistrate Judge Keri L. Holleb | |
| BH Management Services, LLC, ) | Hotaling | |
| Amzak Waukegan, LLC, ) | | |
| Katrina Blair, and ) | Jury Trial Demanded | |
| LaQuevia Miller, ) | | |
| ) | | |
| Defendants. | | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

(Filed as of Right – Fed. R. Civ. P. 15(a)(1)(B))

**NATURE OF THE ACTION**

1. This is a civil rights and fair housing action for race-based discrimination and retaliation, and related Illinois-law claims, arising from Defendants' use of a towing vendor management knew was racist, retaliatory housing actions after Plaintiffs complained, an unlawful entry/inspection, and the prosecution of eviction proceedings based on fabricated allegations and pretext.

**PRELIMINARY STATEMENT**

2. This First Amended Complaint supersedes and replaces the original Complaint in full.

1

3. Defendants have attempted to reframe their conduct as a routine "financial" or "billing" matter. Plaintiffs allege that is false. The initial termination notice issued on October 22, 2024 alleged only "marijuana presence" and an "unauthorized pet," with no rent demand, no police report, no testing, and no witness statements. Plaintiffs allege those accusations were fabricated and deployed as retaliation after Plaintiffs complained about discriminatory towing practices and racist conduct by Defendants' towing vendor.

4. In recorded management-level discussions before the October 2024 termination notice, Defendant Katrina Blair acknowledged the towing vendor's racism and confirmed Defendants' awareness of it, yet maintained the relationship for "contract" reasons (Exhibit C). In addition, in state-court discovery, Defendants admitted under oath they conducted no formal internal investigation and possessed no written documentation confirming any marijuana-related breach before serving the October 22, 2024 termination notice (Exhibit W). Plaintiffs allege these admissions support pretext and unlawful motive.

## I. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

6. This Court has supplemental jurisdiction over related Illinois law claims under 28 U.S.C. § 1367(a).

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this District and Defendants conduct business here.

8. This Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and its equitable powers.

## II. PARTIES

9. Plaintiff Alfred Holt is a Black resident of Waukegan, Illinois, and a tenant at 805 Baldwin Avenue, Apt. 303, Waukegan, Illinois 60085.

10. Plaintiff Marilia Coutinho Espinola is a Brazilian (Latina) resident of Waukegan, Illinois, and a tenant at the same address.

11. Defendant Amzak Waukegan, LLC is the owner of the residential property located at 805 Baldwin Avenue, Waukegan, Illinois (the "Property").

12. Defendant BH Management Services, LLC ("BH Management") is the property management company responsible for day-to-day management, enforcement, notices, and vendor relationships at the Property.

13. Defendant Katrina Blair ("Blair") was the Property Manager at the Property and personally participated in the conduct alleged herein.

14. Defendant LaQuevia Miller ("Miller") was an Assistant Property Manager at the Property and personally participated in the conduct alleged herein, including the unlawful entry/intrusion described below.

15. Plaintiffs are "aggrieved persons" under the Fair Housing Act ("FHA"), 42 U.S.C. § 3602(i).

## III. FACTUAL ALLEGATIONS

**A. Tenancy and Good Standing**

16. Plaintiffs have resided at the Property since approximately 2019 pursuant to a written lease and paid rent through Defendants' online RentCafe portal.

17. Prior to September 2024, Plaintiffs allege they were in good standing and had not received comparable lease-termination notices or eviction filings based on alleged drug activity.

**B. Protected Complaints Regarding Discriminatory Towing and Racist Vendor Conduct**

18. On or about September 21, 2024, Plaintiffs' vehicle was towed in circumstances Plaintiffs allege were wrongful and selective when compared to similarly situated white tenants' vehicles.

19. On September 21, 2024, Holt complained to Blair regarding selective towing and discriminatory treatment and explained he felt uncomfortable as a Black tenant.

20. On September 25, 2024, Holt again complained to Blair in a recorded conversation and raised the towing vendor's racism and discriminatory conduct (Exhibit C).

21. In that recorded conversation, Blair responded "They are" when Holt stated the towing vendor was racist, and Blair further stated "That conversation happens with me," acknowledging awareness of the racist conduct (Exhibit C).

22. In the same recorded conversation, Blair stated she would continue using the towing vendor due to the contract, including: "I have to have a towing company… Whether I like them or not. And I'm already in a contract" (Exhibit C).

**C. Financial Harm Related to Towing; U.S. Bank Finding of Improper/Fraudulent Tow Charge**

23. Plaintiffs allege the towing vendor charged them substantially more than other vehicles towed from the Property, including $370.

4

24. A U.S. Bank investigation later determined the towing charges were improper or fraudulent and confirmed the dispute outcome in writing (Exhibit D).

25. Plaintiffs allege that after the bank investigation began, Defendants and/or the towing vendor attempted to discourage Plaintiffs from cooperating with the investigation, including an in-person contact at Plaintiffs' residence (Exhibit D).

**D. Retaliatory Portal Lockout; Late Fees and Artificial Financial Pressure**

26. Within days of the September 21 and September 25, 2024 complaints, Defendants disabled Plaintiffs' access to the RentCafe payment portal, displaying the message "You are not currently listed as a resident" (Exhibit M).

27. Plaintiffs allege the portal lockout prevented Plaintiffs from paying rent through the only method Defendants accepted and triggered the accrual of late fees and ledger balances Defendants later used as pressure and leverage.

**E. Unannounced Entry / Inspection (Oct. 15, 2024)**

28. On or about October 15, 2024, while the portal was locked, Miller and maintenance staff entered Plaintiffs' apartment without prior notice and without consent, purportedly for an "inspection."

29. Holt was inside the home at the time, including being in the bathroom/shower during the entry. Plaintiffs allege there was no emergency and no lawful basis for entry without notice.

**F. October 22, 2024 Termination Notice Based on Alleged Marijuana/Pet Violations**

30. On or about October 22, 2024, Defendants served a 10-Day Termination Notice alleging only "marijuana presence" and an "unauthorized pet" (Exhibit E-1).

31. Plaintiffs deny marijuana use on the premises and deny having an unauthorized pet.

32. Plaintiffs allege Defendants had no credible factual basis for the marijuana allegation, produced no testing, no witness statements, and no written documentation supporting the allegation.

**G. "Smoking Gun" Sworn Admissions in State-Court Discovery**

33. In subsequent state-court discovery, Defendants admitted under oath that the October 22, 2024 notice was served "within a few weeks" of Holt's complaint about the towing vendor (Exhibit W).

34. Defendants further admitted under oath they conducted "no formal internal investigation" into the alleged marijuana use or pet violation before serving the October 22, 2024 notice (Exhibit W).

35. Defendants further admitted under oath they possess "no written documentation" confirming any marijuana-related breach supporting the October 22, 2024 notice (Exhibit W).

36. Plaintiffs allege these sworn admissions corroborate pretext and show the October 2024 termination was not legitimate lease enforcement but retaliation following protected civil rights complaints.

**H. Disparate Treatment and Comparators**

37. Plaintiffs allege Defendants selectively enforced rules and escalated enforcement against Plaintiffs while tolerating repeated violations by similarly situated white tenants.

38. Plaintiffs allege Defendants' vendor towed Plaintiffs' vehicle under circumstances where similarly situated white tenants were not treated the same, and Plaintiffs also rely on photographic evidence of selective enforcement (Exhibit U).

**I. First Eviction Proceeding Filed Under "Amzak Meadows, LLC" and Dismissed**

39. Defendants filed an eviction action in 2024 premised on the marijuana/pet allegations described above.

40. Plaintiffs allege the 2024 eviction was filed under the name "Amzak Meadows, LLC" (Exhibit V).

41. Plaintiffs allege Defendants prosecuted the 2024 eviction for months and then voluntarily dismissed it on July 23, 2025 when Plaintiffs prepared to litigate the merits and present evidence refuting Defendants' allegations (Exhibit E-2).

**J. Second Retaliatory Eviction Filed During This Federal Case**

42. Plaintiffs filed this federal civil rights action on or about September 12, 2025.

43. While this federal case was pending, Defendants filed a second eviction action in November 2025 seeking new sums not previously demanded, which Plaintiffs allege constitutes further retaliation (Exhibit T).

**K. Damages and Harm**

44. Plaintiffs allege Defendants' conduct caused severe emotional distress, fear of homelessness, sleep disturbance, and loss of peace and quiet in their home.

45. Plaintiffs allege Holt suffered substantial economic harm and business disruption due to the retaliatory campaign and resulting instability, including missing critical deadlines for two VA suicide-prevention proposals valued at approximately $8.5 million (Exhibits A, B, N).

46. Plaintiffs allege Espinola suffered significant mental health injuries, including anxiety and ADHD symptoms, panic attacks, multiple major car accidents, and inability to drive, resulting in lost wages exceeding $40,000 and related harms supported by records (Exhibits G, H, J).

## IV. CAUSES OF ACTION

**COUNT I – Retaliation (Fair Housing Act, 42 U.S.C. § 3617)**

(Against BH Management, Amzak Waukegan, and Blair)

47. Holt engaged in protected activity by complaining to management on September 21 and September 25, 2024 about discriminatory towing and a towing vendor's racist conduct (Exhibit C).

48. After these protected complaints, Defendants took distinct adverse housing-related actions including disabling Plaintiffs' RentCafe access, triggering late fees and artificial pressure, entering the home without notice or consent while Holt was showering, serving the October 22, 2024 termination notice based on alleged marijuana/pet violations, and pursuing eviction litigation (Exhibits M, E-1, E-2).

49. Defendants' sworn admissions confirm the notice was served "within a few weeks" of Holt's complaint and that Defendants conducted no formal internal investigation and had no written documentation supporting a marijuana breach (Exhibit W).

50. Defendants' actions coerced, intimidated, threatened, and interfered with Plaintiffs' exercise and enjoyment of fair housing rights, in violation of 42 U.S.C. § 3617. See Wetzel v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 867 (7th Cir. 2018) (distinct adverse actions may constitute actionable coercion and interference under § 3617).

51. Plaintiffs suffered damages as described in paragraphs 44–46.

**COUNT II – Discrimination (Fair Housing Act, 42 U.S.C. § 3604(b))**

(Against BH Management, Amzak Waukegan, and Blair)

52. Defendants subjected Plaintiffs to discriminatory terms, conditions, and privileges of rental housing because of race and national origin.

53. Defendants knowingly continued using a towing vendor management acknowledged was racist, and Plaintiffs allege Defendants tolerated discriminatory towing practices that burdened Plaintiffs and made their tenancy less desirable (Exhibits C, D).

54. Defendants escalated enforcement against Plaintiffs by locking Plaintiffs out of RentCafe, entering the home without notice or consent, and serving the October 22, 2024 termination notice based on unsupported allegations, while Plaintiffs allege similarly situated white tenants were not treated the same (Exhibits M, E-1, U, W).

55. Defendants' conduct violated 42 U.S.C. § 3604(b). See Bloch v. Frischholz, 587 F.3d 771, 779 (7th Cir. 2009) (confirming § 3604(b) prohibits discriminatory conduct that makes residency significantly less desirable).

9

56. Plaintiffs suffered damages as described in paragraphs 44–46.

**COUNT III – Discrimination in Contracting (42 U.S.C. § 1981)**

(Against BH Management and Amzak Waukegan)

57. Plaintiffs had the right to make and enforce their lease contract on equal terms, including the right to perform lease obligations and receive equal contractual benefits.

58. Defendants interfered with Plaintiffs' lease relationship by disabling Plaintiffs' RentCafe access, creating late fees and ledger pressure through conditions Defendants caused, and then using fabricated or unsupported allegations as a pretext to terminate and evict (Exhibits M, E-1, W).

59. Plaintiffs plead that race was a but-for cause of the injury described above. See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009 (2020).

60. Plaintiffs suffered damages as described in paragraphs 44–46.

**COUNT IV – Property Rights Discrimination (42 U.S.C. § 1982)**

(Against BH Management and Amzak Waukegan)

61. Defendants intentionally impaired Plaintiffs' right to hold and enjoy their leasehold property on equal terms by discriminatory and retaliatory conduct, including portal lockout, unlawful entry, and eviction prosecution based on unsupported allegations and pretext (Exhibits M, E-1, W).

62. Plaintiffs suffered damages as described in paragraphs 44–46.

**COUNT V – Breach of Covenant of Quiet Enjoyment (Illinois Law)**

(Against BH Management and Amzak Waukegan)

63. Defendants substantially interfered with Plaintiffs' quiet enjoyment by locking Plaintiffs out of RentCafe and by unannounced entry/inspection without lawful notice or consent, followed by termination and eviction actions Plaintiffs allege were baseless and pretextual.

64. Plaintiffs suffered damages as described in paragraphs 44–46.

**COUNT VI – Intrusion Upon Seclusion and Trespass (Illinois Law)**

(Against BH Management and Miller)

65. Miller entered Plaintiffs' home without notice or consent on or about October 15, 2024 while Holt was showering, intruding upon Plaintiffs' seclusion in a manner highly offensive to a reasonable person.

66. Plaintiffs suffered damages as described in paragraphs 44–46.

**COUNT VII – Abuse of Process (Illinois Law)**

(Against BH Management and Amzak Waukegan)

67. Defendants used eviction process for an ulterior purpose—retaliation and coercion following protected complaints—rather than to resolve a bona fide lease dispute.

68. Defendants committed an improper act in the use of process by filing the 2024 eviction under "Amzak Meadows, LLC" (Exhibit V), prosecuting it for months, and dismissing it only after Plaintiffs prepared to litigate the merits (Exhibit E-2).

69. Plaintiffs suffered damages as described in paragraphs 44–46.

**COUNT VIII – Intentional Infliction of Emotional Distress (Illinois Law)**

(Against All Defendants)

70. Defendants engaged in extreme and outrageous conduct by knowingly maintaining a racist towing vendor relationship, locking Plaintiffs out of rent payment systems, entering the home without consent while Holt was showering, and pursuing termination and eviction based on unsupported drug allegations admitted to have no investigation and no documentation.

71. Defendants intended to cause distress or acted with reckless disregard of the probability of causing distress, and Plaintiffs suffered severe emotional distress and related harms as described in paragraphs 44–46.

## V. PUNITIVE DAMAGES

72. Plaintiffs allege Defendants acted willfully and with reckless indifference to Plaintiffs' federally protected rights, warranting punitive damages.

73. Plaintiffs will file a separate emergency motion for preliminary injunction to stay all proceedings in Lake County Case No. 2025EV00001817 pending resolution of this action.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award:

1. Compensatory damages in an amount to be proven at trial, which Plaintiffs believe exceeds $15,000,000;

2. Punitive damages in an amount sufficient to punish and deter, which Plaintiffs believe exceeds $45,000,000;

3. Declaratory relief declaring Defendants' conduct violated the Fair Housing Act and 42 U.S.C. §§ 1981–1982;

4. Preliminary and permanent injunctive relief, as permitted by law, prohibiting further retaliation or discrimination against Plaintiffs in connection with their tenancy and enforcement actions;

5. Costs and reasonable attorneys' fees as allowed by law, including under 42 U.S.C. § 1988 and 42 U.S.C. § 3613(c)(2); and

6. Such other relief as the Court deems just and proper.

**Dated:** 12/17/2025

Respectfully submitted,

/s/ Alfred Holt
 Alfred Holt, Pro Se
/s/ Marilia Coutinho Espinola
 Marilia Coutinho Espinola, Pro Se
805 Baldwin Ave., Apt. 303
Waukegan, IL 60085
(224) 518-8376
albizsmart@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on December 17, 2025, I filed the foregoing First Amended Complaint via the Court's CM/ECF system, which will send notice to all counsel of record. I also sent a courtesy copy by email to counsel for Defendants.

Dated: December 17, 2025
/s/ Alfred Holt
Alfred Holt, Pro Se
/s/ Marilia Coutinho Espinola
Marilia Coutinho Espinola, Pro Se