



FILED
12/17/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JKS

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

|  |  |  |
|---|---|---|
| Alfred Holt and Marilia Coutinho Espinola, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:25-cv-10936 |
| | ) | |
| vs. | ) | Judge LaShonda A. Hunt |
| | ) | |
| | ) | Magistrate Judge Keri L. Holleb Hotaling |
| BH Management Services, LLC, | ) | |
| Amzak Waukegan, LLC, | ) | |
| Katrina Blair, and | ) | Jury Trial Demanded |
| LaQuevia Miller, | ) | |
| | ) | |
| Defendants. | | |

## EXHIBIT INDEX

Plaintiffs respectfully identify the following exhibits referenced in the First Amended Complaint. Plaintiffs may supplement this index as appropriate.

**Exhibit A:** VA correspondence / emails (Dec 2024)

**Exhibit B:** VA proposal / project materials (Nov 2024)

**Exhibit B-2:** VA denial email (Dec 11, 2024)

**Exhibit C:** Transcript of recorded conversation with Property Manager Katrina Blair re: towing vendor racism and discriminatory practices (dated 09/25/2024)

**Exhibit D:** U.S. Bank fraud / improper towing determination letter and related materials (towing charge(s) found improper/fraudulent)

**Exhibit E-1:** 10-Day Termination Notice alleging marijuana presence / unauthorized pet (Oct 2024)

**Exhibit E-2:** State eviction dismissal order (July 23, 2025)

**Exhibit F:** Affidavit of Alfred Holt regarding October 15, 2024 entry/inspection

**Exhibit G:** Affidavit and/or records supporting Marilia Coutinho Espinola's distress, accidents,

and related harm

**Exhibit H:** Medical / mental health records (redacted) supporting anxiety/panic/ADHD treatment

**Exhibit J:** Income / wage loss documentation (RBT)

**Exhibit L:** Ledger / charge history showing late fees and charges during RentCafe portal lockout

**Exhibit M:** Screenshot(s) of RentCafe portal lockout ("You are not currently listed as a resident")

**Exhibit N:** Financial estimates / support for claimed lost contracting opportunities

**Exhibit T:** Summons and Verified Complaint for second eviction action filed during pendency of this federal case (**2025EV00001817**)

**Exhibit U:** Photographic evidence of selective parking enforcement / disparate treatment (comparators)

**Exhibit V:** Summons/filings showing 2024 eviction filed under "Amzak Meadows, LLC" (24EV1836)

**Exhibit W:** Defendants' sworn discovery responses / admissions (Amzak's Responses to Request to Admit Facts) re: timing of notice, no investigation, and no written documentation of marijuana breach (24EV1836)

# EXHIBIT A

VA Correspondence – Brimmer & Holloway Emails (Dec. 2024)

## Follow-up from IEX – End Veteran Suicide - InVirtCare

**Brimmer, Dave (he/him/his)** <David.Brimmer@va.gov>
To: Alfred Holt <alfred.holt@invirtcare.com>

Wed, Dec 11, 2024 at 2:05 PM

Hi Alfred,

That's not good news. I just read Section V of the BAA and it's very broad. Again, I'm not a part of the process but it may have been related to cost? I might suggest reaching out to the BAA email address to ask which specific parts of Section V you were deficient in before resubmitting (which I encourage you to do).

I still think it's a strong proposal with lots of merit. Hopefully, we can get you an opportunity to showcase your work for veterans. Please don't stop trying. If this doesn't pan out, there will be other opportunities for sure.

Keep your head up,
Dave

## Dave Brimmer, MS, MPA
*Pathfinder Tech Scout*
VHA Innovation Ecosystem

---

 **Aminah Holloway, MSW** (She/Her) · 1:13 am
Hi Alfred,

I hope this message finds you well. My name is Aminah Holloway and as a veteran and mental health professional, I am deeply inspired by InVirtCare's mission to close the gaps in veteran mental health support. I believe the veteran-to-veteran approach is incredibly impactful and aligns closely with my passion for serving those who served our country.

Recently, I came across the posting for the Veteran Crisis Responder position. With my background in crisis intervention, mental health, and peer support, I believe I could contribute meaningfully to InVirtCare's mission. I would love to learn more about your vision for this role and how I can best serve your organization and the veterans you support.

Thank you for the incredible work InVirtCare is doing. I hope to have the opportunity to connect and discuss how I might contribute to your mission.

Warm regards,
Aminah Holloway
MSW | Army Veteran

1 of 1

# EXHIBIT B

VA Proposal – "InVirtCare: On-Demand, Veteran-Led
In-Person Crisis Response for Suicide Prevention" (Nov. 20,
2024)

## Exhibit B: VA Proposal

November 20, 2024

**Subject**: Submission of Concept Paper: *InVirtCare: On-Demand, Veteran-Led In-Person Crisis Response for Suicide Prevention*

Dear VA BAA Review Team,

I am pleased to submit the attached concept paper, *InVirtCare: On-Demand, Veteran-Led In-Person Crisis Response for Suicide Prevention*, for your consideration under the VA's Broad Agency Announcement. This proposal outlines an innovative, veteran-centric solution designed to complement existing VA initiatives and significantly reduce veteran suicides through rapid, in-person crisis response.

**Key Project Details**:

- **Requested Budget**: $2 million for the initial setup phase and $4 million for the pilot phase.
- **Project Duration**: 7–12 months for the pilot phase.
- **Projected Impact**: Deliver 5,000 in-person crisis interventions, achieve a 15–20% reduction in suicide rates in targeted areas, and lay the foundation for national scalability.

InVirtCare's approach aligns with the VA's mission by providing trusted, veteran-to-veteran crisis intervention while integrating seamlessly with existing programs like the Veterans Crisis Line (VCL), VMET, and the firearm lockbox initiative. Our platform empowers the VA to offer a **scalable**, **cost-effective**, and **innovative solution** to meet the urgent needs of veterans in crisis.

I am confident that our proposal will demonstrate InVirtCare's potential to save lives and complement the VA's critical work. Should you have any questions or require further information, please do not hesitate to contact me directly at **(224) 518-8376** or **alfred.holt@invirtcare.com**.

Thank you for considering our submission. I look forward to the opportunity to collaborate in addressing this vital mission.

Sincerely,
**Alfred Holt**
Co-Founder/CEO
InVirtCare
www.invirtcare.com

**InVirtCare: On-Demand, Veteran-Led In-Person Crisis Response for Suicide Prevention**

**Overview of the Problem**

Veteran suicide remains a critical issue, with over 6,000 veteran lives lost annually and the Veterans Crisis Line (VCL) receiving over 1 million crisis calls each year. While programs like VMET (Veteran Mental Evaluation Teams) provide crisis response, they present significant challenges. Many veterans are reluctant to engage with law enforcement during mental health emergencies, and providers lack the ability to track VMET responders in real-time, adding to the uncertainty and complexity of managing care effectively.

This underscores the urgent need for a veteran-centered solution that not only builds trust but also ensures accountability and flexibility. InVirtCare addresses these gaps by offering rapid, veteran-to-veteran in-person response, complemented by the ability to escalate interventions seamlessly to a live virtual call with a licensed mental health professional. This dual-layered approach prioritizes dignity, trust, and comprehensive care.

**Proposed Solution: InVirtCare**

InVirtCare offers a groundbreaking, veteran-to-veteran, in-person response model designed to complement the VA's existing suicide prevention programs like the Crisis Line, Firearm Lockbox Program, and VMET by providing a decentralized, on-demand responder network. With a network of thousands of trained veterans, our responders are positioned to reach veterans in crisis within a 10-minute average response time in high-risk areas.

**Key Features:**

- **Veteran Responders**: Our responders share a lived understanding of military experiences, building immediate trust and rapport with veterans in crisis. (View video https://youtu.be/UQxHK0nqof4?feature=shared)
- **Rapid Response Time**: Aiming for a 10–15 minute arrival time, even in rural and high-risk areas.
- **In-Person Response**: Responders are equipped with tablets to connect to a VA mental health professional if needed.
- **Real-Time Tracking System:** A built-in sophisticated tracking tool to monitor responder availability and location to ensure optimal deployment and response times. (View demo https://invirtcare.v0.build/ )
- **Crisis Line Integration**: Enhancing the VCL's capabilities by providing staff access to the InVirtCare platform, enabling them to request responders and visually track their real-time location relative to the veteran in need.
- **Support for Firearm Lockbox Program**: Complementing the VA's firearm lockbox initiative, InVirtCare responders can assist in distributing lockboxes and securing firearms during interventions.
- **App Accessibility**: Providers, VCL staff, the veterans and their family can all access the InVirtCare platform and request an onsite visit.
- **AI-Powered Risk Assessment:** First of its kind, a built-in artificial intelligence calendar to analyze personal and historical data, identifying high-risk life events, allowing proactive outreach and intervention. (View demo https://invirtcare-ai.v0.build/ )

- **Comprehensive Resource Navigation:** Assisting veterans in accessing VA and non-VA resources for housing, healthcare, and long-term support, facilitating a seamless transition from crisis intervention to sustained care.
- **Scalable Model:** Designed to evolve from a pilot program to a nationwide initiative capable of delivering 1 million annual visits to match the crisis line's call volume.

---

## Scaling Vision

Following the pilot, InVirtCare aims to scale nationally over 3–4 years to address up to 1 million visits annually, aligning with the current volume of VCL calls. This expansion will ensure nationwide access to life-saving in-person care for veterans in crisis.

---

## Cost-Effectiveness

InVirtCare's model offers substantial cost savings and enhanced efficiency compared to existing programs like VMET (Veteran Mobile Emergency Teams) by:

- Reducing hospitalizations, emergency service utilization, and law enforcement involvement.
- Delivering scalable, decentralized care through a trusted contingent responder network.

Our approach prioritizes dignity, trust, and rapid response, providing a veteran-centered alternative that aligns with the unique needs of those we serve.

With a $4 million budget for the pilot phase, we will fund responder training, platform enhancements, and operational costs. This investment bridges critical gaps in the VA's current crisis response framework while complementing existing initiatives such as the firearm lockbox program, ensuring a holistic and innovative approach to veteran suicide prevention.

---

## Team Expertise

- **Alfred Holt, CEO**: Over 15 years in staffing and software development, with a proven track record of scaling large teams for companies like Uber and Meta.
- **Mitchell Fong, COO**: Former VP of Virtual Care at Renown Health, driving innovative telehealth programs for a $2 billion organization.
- **James Roxburgh, Strategic Advisor**: Former CEO of Telehealth for Banner Health, overseeing mental health programs at an $8 billion healthcare network.
- **Shoshana Johnson, Board Member**: The first Black female POW in U.S. history, is a Purple Heart recipient and an outspoken advocate for veterans' mental health. Her lived experiences and dedication bring invaluable insight to our mission of preventing veteran suicide.

## Budget

### Setup Phase: $2M

- Platform completion: $200,000
- Recruitment and training: $300,000
- Responder standby and response costs: $500,000

- Operational expenses: $1M

  **Pilot Phase:** $4M

- Expanded responder network: $1.5M
- Crisis intervention operations: $1.5M
- Data collection, analysis, software optimization, and reporting: $1M

**Long-Term Vision**: Scale nationally over 3–4 years to reach 1 million annual visits, requiring sustained funding and VA partnership.

### Pilot Program Goals

The 7–12 month pilot program will deploy 80 veteran responders in urban and rural regions with high suicide rates. Key objectives include:

- **Visits**: 5,000 in-person crisis interventions during the pilot period.
- **Impact**: A projected 15–20% reduction in suicide rates in target areas.
- **Evaluation**: Metrics will include response time, crisis resolution rates, and follow-up care effectiveness.

### Key Metrics for Success

1. **Veteran Interventions**: Deliver 5,000 in-person visits during the pilot; scale to 1 million annually post-expansion.
2. **Response Time**: Maintain a 10–15 minute average in pilot areas.
3. **Suicide Reduction**: Achieve a 15–20% reduction in veteran suicides in pilot regions, leading to significant cost savings by decreasing hospitalization and emergency services utilization.
4. **Satisfaction**: Secure an NPS of 50+ and ensure continuous quality improvement through veteran feedback.
5. **Conversion**: Transition at least 5% of veterans assisted into responder roles
6. **Lives Saved**: Measure and document the number of lives saved through pilot interventions, providing data to support broader implementation.

### Conclusion and Call to Action

InVirtCare is a transformative solution to the veteran suicide crisis. By leveraging trust, accountability, and innovation, we complement and enhance existing VA initiatives to create a measurable, life-saving impact. Together, we can set a new standard for suicide prevention. We invite the VA to partner with us to launch this pilot program and lead the charge in preventing veteran suicide.

### References

The effectiveness of suicide prevention programs varies by population and approach. Key examples include:

1. **Air Force Suicide Prevention Program (AFSPP)**: Implemented in 1996, AFSPP reduced suicide rates among Air Force personnel by approximately **21%**, with annual suicides dropping from 68 in 1994 to 20 in 1999 [1].
2. **Capital Region Suicide Prevention Program**: Launched in New York, this program targets underserved communities, aiming for a **10% reduction** in suicide attempts and deaths through data-driven strategies [2]

# EXHIBIT B-2

VA Denial Email (Dec. 11, 2024)

## Concept Paper: InVirtCare – Veteran Suicide Prevention

**VHA Suicide Prevention BAA** <VHASuicidePreventionBAA@va.gov>
To: Alfred Holt <alfred.holt@invirtcare.com>

Wed, Dec 11, 2024 at 12:59 PM

Good afternoon,

Thank you for submitting a Concept Paper to the Department of Veterans Affairs (VA), Veterans Health Administration (VHA) Innovation Ecosystem (VHAIE) Broad Agency Announcement (BAA) for Suicide Prevention (36C10X24R0053).

Your Concept Paper *On-Demand 24/7, Veteran-Led, In-Person Crisis Response for Suicide Prevention* was reviewed and evaluated. We regret to inform you that will not be invited to submit for a full proposal, based on the criteria in Section V of the BAA. We value your interest in being part of the solution for suicide prevention for Veterans.

Should you wish to submit additional Concept Papers to the Department of Veterans Affairs (VA), Veterans Health Administration (VHA)Innovation Ecosystem (VHAIE) Broad Agency Announcement (BAA) for Suicide Prevention (36C10X24R0053), please do so prior to August 15, 2025.

Thank you on behalf of The Suicide Prevention BAA Review Team

[Quoted text hidden]

1 of 1

# EXHIBIT C

Transcript of Audio Recording

Conversation with Property Manager Katrina Blair

*Date of Recording:* September 25, 2024

*Location: Waukegan, Illinois*

# TRANSCRIPT OF AUDIO RECORDING

| | |
|---|---|
| Case Reference: | _____ |
| File Name: | MP4 dis.mp3 / Discrimination Rec.mp3 |
| Date of Recording: | 09/25/2024 |
| Location: | Waukegan, IL |

**PARTICIPANTS:**

• AH: Alfred Holt (Tenant)

• KB: Katrina Blair (Property Manager)

[01:30] AH: ...you don't tow cars that are illegally parked, but you tow my car? You towed my car that's legally parked. It's like... it's discrimination, like we're being targeted. There is so much going on that it is... highly uncomfortable. I mean, even you told me the story yourself about them being racist...

[01:54] KB: Wait, are you blaming me at this point or are you blaming them?

[01:56] AH: I'm not... well... you did hire them.

[01:59] KB: Who hired... No... I did, but I don't do like... they're not... they're essentially like a vendor. And I don't know how you screen people for being racist. There's no screening process for me to do that. Especially when the guy that comes in to get the contract is African American. Why would I think that?

[02:18] AH: Yeah, I... I understand.

[02:19] KB: So, you can't...

[02:20] AH: But... but it would be a... so, I passed the bar, right? So it's a sign of gross negligence if you identify that they are racist... you told me this too... they told you they racist... and they still hold a contract.

[02:30] KB: They are. And I'm glad you passed the bar. Good. But as a property manager, I have to have a towing company. So until I can find another towing company to sign a contract with me... I have to have one. Whether I like them or not. And I'm already in a contract.

[02:46] AH: I... I understand that. But there's things, though. It's just that, it's not about whether you like them or not, it's whether they're breaking the law or not.

[02:52] KB: Correct. And I... like I said, the picture is kind of proof that there is definitely something weird about that. But as far as me... regards to still... I'm still in a contract. I have to be able to get out of it and have someone else be in contract with us.

[03:07] AH: Yeah, sure. I understand.

[03:08] KB: I mean, and obviously like, it's relatable. I've been through the same thing. We've had the same discussions with the same people. So I'm working on it, but it's not something that I can just kind of [snaps fingers] wiggle my nose and like, everything's fixed. Cause trust me, I don't want them either.

[03:23] AH: Right, right. I know.

[03:24] KB: Especially when my tenants are going down there and those are the conversations that are being had.

[03:28] AH: Right.

[03:29] KB: That... that conversation happens with me. Not a tenant.

[03:32] AH: Yes. Yes. So... well anyway, I don't want to take up your time. But I sent you that email and I'll send you the...

[03:36] KB: Perfect.

[03:37] AH: ...car information as well.

[03:38] KB: Thank you.

[03:38] AH: Okay. Thank you.

[03:39] KB: Alright.

**END OF TRANSCRIPT**

# EXHIBIT D

U.S. Bank refund documentation for tows, 2024



P.O. Box 6335
Fargo, ND 58125-6335

20744

Exhibit D

March 20, 2025

ᕫᶯᕫᶅᶅᕫᶅᶅᕫᶯᶯᶅᶅᕫᶯᶅᶯᕫᶅᶯᶯᕫᶯ

000036325 01  SP      106481275165342 P  N

MARILIA COUTINHO-ESPINOLA
805 BALDWIN AVE APT 303
WAUKEGAN, IL  60085-2359

D241212011715

Important information about your U.S. Bank Visa® Check Card account ending in 9153

Dear MARILIA COUTINHO-ESPINOLA,

Our research is completed, and a list of the transaction(s) has been included for your reference. Your claim has been approved, and the provisional credit we issued to your account is now final.

| Transaction Date | Merchant | Transaction Amount | Dispute Amount |
|---|---|---|---|
| 09/20/2024 | SQ *TNT RECOVERY SERVICES | $370.00 | $370.00 |

Thank you for your patience and cooperation throughout the process.

We are pleased to serve you and appreciate your business. If you have any questions, please reach out to us. You can contact us through the mobile app, online, or call us at 1-800-254-9874. We accept relay calls. Cardmember Service Representatives are available 24 hours a day, 7 days a week.

Sincerely,

Cardmember Service

Exhibit D

# EXHIBIT E-1

10-Day Notice of Termination of Tenancy, Oct. 22, 2024

## 10-DAY NOTICE OF TERMINATION OF TENANCY

**To:** **Alfred Holt / Marilia Coutinho Espinola** / All Other Occupants And Lessees
**805 Baldwin Avenue**
**Apartment No. 303**
**Waukegan, Illinois 60085**

You are hereby notified that your right of possession of the following described premises, to wit: 805 Baldwin Avenue, Apartment No. 303, Waukegan, Illinois 60085, together with all other accommodations used by you in connection therewith, will be terminated as follows:

(1) You have breached the terms of your lease for the above accommodations, as follows: **Violation of Lease Paragraph 20 ["Prohibited Conduct"]** – "You and your occupants or guests may not engage in the following activities:...disturbing or threatening the rights, comfort, health, safety, or convenience of others; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia..."; **Violation of Lease Paragraph 27 ["Animals"]** – "Unless otherwise provided under federal, state, or local law, no animals...are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing..."; **Violation of Lease Paragraph 32 ["Default by Resident"]** – "You will be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to:...(4) you...violate the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs...8) any illegal drugs, illegal weapons, or drug paraphernalia are found in your apartment...9) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 20..."; **Violation of Addendum Regarding Recreational and Medical Marijuana Use** – "...Possession, use, manufacture or sale of any illegal substance, including marijuana, or any use of marijuana by the tenant and/or guests will result in immediate termination..."; **Violation of Crime/Drug Free Housing Addendum** – "Resident...A. Shall not engage in any illegal or criminal activity on or about the premises...[including] the following...Violation of any federal drug laws governing the use, possession...of marijuana...Engaging in, or allowing, any behavior that is associated with drug activity...Any breach of the Lease Contract that otherwise jeopardizes the health, safety, and welfare of the Owner, Owner's agents, or other Residents..."; **Violation of Resident Handbook and Community Policies** – "Smoking...Your community follows and complies with federal law regarding marijuana and is, and will continue to be, a drug free community. Possession, use, manufacturing, or sale of any illegal substance, including marijuana, or marijuana concentrate..." The foregoing violations arise from the discovery of several lease violations after a unit inspection conducted by property management/staff on or about October 15, 2024, including but not limited to: 1) you allowing an unauthorized cat to reside in your unit; and 2) various drug paraphernalia found in your unit related to the alleged use of marijuana and/or tobacco.

The undersigned hereby elects to terminate your right of possession, and you are notified to quit and deliver up possession of the same within ten (10) days from the date of service hereof. Unless you promptly comply with the above, suit will be instituted for possession, together with costs.

Dated this 22nd day of October, 2024

Amzak Waukegan LLC /
Imperial Tower Apartments, Lessor

By: _____
Its Authorized Agent

# EXHIBIT E-2

Eviction dismissal order, July 23, 2025, Case No. 24 EV 1836

STATE OF ILLINOIS

Ex: E-2

SS

COUNTY OF L A K E

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

Amzak Waukegan LLC

vs.                                                    GEN. NO. 24 EV 1836

Alfred Holt
Marilia Coutinho Espinola
Unknown Occupants

**ORDER**

**THIS CAUSE COMING ON TO BE HEARD** for ~~trial~~ Status, proper notice having been given and
the Court being fully advised of the premises:

    **IT IS ORDERED, ADJUDGED AND DECREED** as follows:

1.    That upon the oral motion of the Plaintiff, this cause is voluntarily dismissed
    without prejudice.

2.    No court costs incurred by the Defendants as the fees were previously waived.

3.    Clerk of Court shall impound the file.

Dated at Waukegan, Illinois this                    ENTER:_____07/23/2025_____

23rd day of July 2025

                                   Judge_____

ORDER PREPARED BY:    Law Offices of David K. Barhydt
                             David K. Barhydt / Atty Code #6192456
                             2901 Butterfield Rd.
                             Oak Brook, IL 60523
                             (630) 218-4915
                             support@barhydtlaw.com

# EXHIBIT F

Affidavit of Alfred Holt, August 2025

## AFFIDAVIT OF ALFRED HOLT

STATE OF ILLINOIS   )
COUNTY OF LAKE     )

I, Alfred Holt, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. My name is Alfred Holt, and I am over the age of 18. I reside at 805 Baldwin Avenue, Apt. 303, Waukegan, Illinois 60085. I am a business owner developing AI-based suicide-prevention technology for the U.S. Department of Veterans Affairs (VA) and the spouse of Plaintiff Marilia Coutinho Espinola.

2. I have personal knowledge of the facts stated herein, and I am competent to testify to them if called as a witness.

3. I have resided at 805 Baldwin Avenue, Apt. 303, since 2019, maintaining good standing as a tenant alongside my wife, Marilia Coutinho Espinola, by curing any short payment delays each month, until retaliatory actions commenced in October 2024.

4. On September 25, 2024, I complained to property management about racial profiling, discriminatory lease enforcement, and the use of a towing vendor with a history of racist conduct. Within days, from September 26 to 30, 2024, Defendants disabled our RentCafe payment portal, preventing us from paying rent and displaying the message: "You are not currently listed as a resident. Please contact your property management company for more information."

5. On October 15, 2024, Assistant Property Manager LaQuevia Miller, accompanied by maintenance staff member Federico Avalos, entered our apartment without notice or consent, bypassing multiple locks. I was showering at the time and unaware of their

presence until later, which caused significant distress upon learning of the unauthorized entry.

6. On October 23, 2024, Defendants served a 10-day eviction notice alleging marijuana use and an unauthorized pet, claims I assert are fabricated and unsupported by evidence, testing, or inspection. This notice followed my protected complaint and disrupted my ability to focus on my work.

7. The ongoing issues, including unlawful vehicle tows on September 15 and November 10, 2024 (later refunded by U.S. Bank as fraudulent), and the portal lockout, interfered with my business operations. These actions disrupted my work on two VA suicide-prevention proposals with a combined ceiling of approximately $8.5 million, leading to the denial of the "InVirtCare" concept paper on December 11, 2024, and resulting in significant lost business opportunities.

8. On May 12, 2025, Defendants prematurely returned a critical business package, violating the lease's three-day return policy, which caused approximately $15,000 in losses due to missed deadlines and damaged materials.

9. The nine-month litigation from October 2024 to July 23, 2025, further strained my ability to meet VA project milestones, exacerbating the financial impact on my business.

10. The Defendants' actions including the unauthorized entry, baseless eviction notice, vehicle tows, and portal lockout substantially interfered with my ability to conduct business, causing financial and emotional harm.

11. I affirm that the statements made herein are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

DATED: September 8, 2025

_____
Alfred Holt

Subscribed and sworn to before me this 8 day of September, 2025.

# EXHIBIT G

Affidavit of Marilia Coutinho Espinola, August 2025

## AFFIDAVIT OF MARILIA COUTINHO ESPINOLA

STATE OF ILLINOIS     )
COUNTY OF LAKE        )

I, Marilia Coutinho Espinola, being first duly sworn on oath, depose and state as follows:

1. My name is Marilia Coutinho Espinola, and I am over the age of 18. I reside at 805 Baldwin Avenue, Apt. 303, Waukegan, Illinois 60085. I am a Registered Behavior Technician (RBT) and the spouse of Plaintiff Alfred Holt.

2. I have personal knowledge of the facts stated herein, and I am competent to testify to them if called as a witness.

3. I have resided at 805 Baldwin Avenue, Apt. 303, since 2019, maintaining good standing as a tenant alongside my husband, Alfred Holt, until retaliatory actions commenced in October 2024.

4. On September 25, 2024, my husband complained to property management about racial profiling, discriminatory lease enforcement, and the use of a towing vendor with a history of racist conduct.

5. Within days, from September 26 to 30, 2024, Defendants disabled our RentCafe payment portal, preventing us from paying rent and displaying the message: "You are not currently listed as a resident. Please contact your property management company for more information."

6. On September 30, 2024, I emailed Property Manager Katrina Blair to report the portal block and request the exact balance due. Access remained blocked until August 2025, forcing us to seek ad-hoc payment options that did not restore our resident status.

7. On October 15, 2024, Assistant Property Manager LaQuevia Miller, accompanied by maintenance staff member Federico Avalos, entered our apartment without notice or consent, bypassing multiple locks. I was not present at the time, and my husband was unaware of their entry as he was showering. This caused me significant distress and made me feel unsafe in my own home.

8. On October 23, 2024, Defendants served a 10-day eviction notice alleging marijuana use and an unauthorized pet, claims I assert are fabricated and unsupported by evidence, testing, or inspection. This notice followed my husband's complaint and further worsened my stress and fear of losing our home.

9. The ongoing harassment, including unlawful vehicle tows on September 15 and November 10, 2024, and the portal lockout, contributed to severe emotional distress. As a result, I developed new diagnoses of ADHD and anxiety in late 2024, requiring treatment with fluoxetine and Adderall, as documented by my psychiatrist (see Exhibit H).

10. My emotional distress manifested in panic attacks that directly impacted my ability to drive safely. Specifically:

   a. On December 10, 2024, during a panic attack, I struck a median, causing damage to the driver's side door of my vehicle (Exhibit G-2). No citation was issued.

   b. On January 22, 2025, after another panic attack, I failed to yield and received a citation (Exhibit G-3.1).

   c. On January 29, 2025, following a panic attack, I was involved in a three-vehicle accident, failed to yield, and received a citation (Exhibit G-3.2), with related claims and invoices (Exhibits G-4, G-5, G-6, G-7, G-8).

11. Since January 2025, I have been unable to drive due to the trauma from these incidents. Losing the ability to drive has disrupted my independence, daily life, and ability to work as an RBT, resulting in a loss of approximately $60,000 in income, supported by payroll records (Exhibits J, J-1, J-2).

12. These experiences have left me with persistent anxiety, difficulty sleeping, and ongoing fear of retaliation from management. I no longer feel safe in my own home, and the stress has affected my physical health, professional career, and overall quality of life.

13. I affirm that the statements made herein are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

DATED: September 8, 2025

*Marilia Coutinho Espinola*

Marilia Coutinho Espinola

Subscribed and sworn to before me this 8 day of September, 2025.

# EXHIBIT G-1

Photograph related to the January 22, 2025 accident in which Marilia, after experiencing a panic attack while driving, failed to yield and collided with another vehicle, causing damage to the backend of that car.



# EXHIBIT G-2

Documentation and photographs related to the December 10, 2024 accident in which Marilia, after experiencing a panic attack while driving, failed to yield; no police report was filed and no citations issued

Ex. G-2



# EXHIBIT G-3.1

Records of the January 22, 2025 accident in which Marilia,
after experiencing a panic attack while driving, failed to yield
and received a citation; includes related medical and incident
documentation

**ILLINOIS CITATION AND COMPLAINT**

Ex: G-3.1

**COMPLAINT**

**WAUKEGAN POLICE DEPARTMENT**

| CASE NO. | Code 921 | ISP DIST. OCC. | | |

COUNTY OF **LAKE** 1/3    TOWNSHIP OF    ☐ TWP. RD.

PEOPLE STATE OF ILLINOIS VS.    CITY/VILLAGE OF MUNICIPAL CORPORATION PLAINTIFF **WAUKEGAN, ILLINOIS**    VS.

**DEFENDANT**

NAME (Last) COUTINHO (First) MAR (M.I.) A   SID #

ADDRESS (Street) BALDWIN AVE #3   (Age)

CITY STATE ZIP WAUKEGAN IL 60085   EYES BLD   GENDER

DR. LIC. C532540788612 STATE IL CDL ☐   EXPIR. DATE 11/12/28   HAIR BR HEIGHT 504 WEIGHT 141   DATE OF BIRTH 12-88

The Undersigned states that on 12/1/25 at 9:00 A.M. P.M. Defendant did unlawfully operate:

**VEHICLE**

REGISTR. NO. 0A77003   STATE IL   YEAR 2025   US DOT #

MAKE VOLKSWAGON   YEAR 2013   COLOR Blue

055 ☐ PEDESTRIAN   061 ☐ TRAIL/SEMI-TRAIL.   062 ☑ PASSENGER CAR   084 ☐ TRUCK   ☐ COMMERCIAL MOTOR VEHICLE: YES ☐ NO ☐
009 ☐ BUS   086 ☐ TRUCK TRACTOR   060 ☐ RECREATIONAL VEH.   PLACARDED HAZ. MATERIAL: YES ☐ NO ☐
040 ☐ MOTORCYCLE   ☐ OTHER CODE(S)   16 OR MORE PASS. VEHICLE: YES ☐ NO ☐

Upon a Public Highway, or other Location, Specifically W/B Belvidere R

on Plane

Located in the County and State Aforesaid and Did Then and There Commit the Following Offense   ☐ URBAN DISTRICT

**VIOLATION**

**I.V.C. 625 ILCS 5/ :**

| | | |
|---|---|---|
| ☐ 3-707 OPERATING UNINSURED VEHICLE | ☐ 11-502 (___) ILLEGAL TRANSPORTATION ALCOHOL | |
| ☐ 6-101 NO VALID DRIVER'S LICENSE | ☑ 11-601(b) FAILURE TO REDUCE SPEED/ACCIDENT | |
| ☐ 6-303 (___) DRIVING WHILE LICENSE SUSPENDED/REVOKED | ☐ 11-601(b) SPEEDING _____ MPH IN A _____ MPH ZONE | |
| ☐ 11-305 DISOBEYING TRAFFIC CONTROL DEVICE | ☐ 11-709 (___) IMPROPER LANE USAGE | |
| ☐ 11-501(a) (___) DRIVING UNDER INFLUENCE | ☐ 12-603.1 FAILURE TO WEAR SEAT BELT (___) D (___) P | |
| ☐ ILCS ☐ LOCAL ORDINANCE | CH._____ ACT_____ SEC._____ | |

NATURE OF OFFENSE

**INCIDENT**

CRASH TYPE: ☐ DRIVER INJURY ONLY   ☐ PROPERTY DAMAGE   ☐ PERSONAL INJURY   ☐ FATAL   RFR NO.

ROAD CONDITIONS: ☐ WET   ☐ DRY   ☐ SNOW   ☐ ICE

VISIBILITY: ☐ DAY   ☐ NIGHT   ☐ RAIN   ☐ SNOW   ☐ FOG   ☐ CLEAR

METHOD: 0. ☐ H.H.RADAR   1. ☐ PLAIN CAR   2. ☐ RADAR   3. ☐ A.CRAFT   4. ☐ MARKED   5. ☐ VASCAR

6. ☐ C. SIGNED   7. ☐ ASSIST   8. ☐ ACCIDENT   9. ☐ OTHER   10. ☐ LIDAR

NOTATIONS:

**NOTICE TO APPEAR**

**METHOD OF RELEASE** (see middle portion, back side of Gold copy)

☐ **PRE-TRIAL RELEASE: DETAINED**   Location: _____

☑ **COURT APPEARANCE REQUIRED**
You are required to come to court on the date, time and place noted below. If you intend to plead "NOT GUILTY", follow the instructions on the form entitled "Avoid Multiple Court Appearances" prior to your court date.

☐ **NO COURT APPEARANCE REQUIRED**
If you intend to plead "GUILTY" and avoid coming to court, follow the instructions to plead GUILTY and waive your court appearance. If you intend to plead "NOT GUILTY", follow the instructions on the form entitled "Avoid Multiple Court Appearances" prior to your court date and come to court on the date, time and place noted below.

**CIRCUIT COURT LOCATION AND DATE**

ADDRESS / COURTHOUSE ☒ 301 S. Greenleaf St., Park City, Courtroom - A   ☐ 18 N. County, Courtroom

CITY **WAUKEGAN**   ZIP 60085   IL   ON 2/24/25   AT 10:00 A.M. P.M.

Under penalties as provided by law for false certification pursuant to Section 1-109 of the Code of Civil Procedure and perjury pursuant to Section 32-2 of the Criminal Code of 2012, the undersigned certifies that the statements set forth in this instrument are true and correct.

12 1 25    MONTH DAY YEAR    OFFICER'S SIGNATURE 109    I.D. NO.

# EXHIBIT G-3.2

Records of the January 29, 2025 three-vehicle accident in which Marilia, after experiencing a panic attack while driving, failed to yield and received a citation; includes related documentation

**ILLINOIS CITATION AND COMPLAINT**

G-3.2

55

**WAUKEGAN POLICE DEPART**

**COMPLAINT**

CASE NO.    **Code 921**    OCC.    **VIOLATOR**

COUNTY OF **LAKE**    TOWNSHIP OF    ☐ TWP. ☐ RD.

PEOPLE STATE OF ILLINOIS VS. ☑    CITY/VILLAGE OF ☐ MUNICIPAL CORPORATION PLAINTIFF **WAUKEGAN, ILLINOIS**    VS.

**DEFENDANT**

NAME (First) Coutinho-Espinola (M.I.) Ma. Via    SID #

ADDRESS (Street) 805 Baldwin (Apt.) 303

CITY STATE ZIP Waukegan IL 60085

EYES BLK   GENDER

HAIR   HEIGHT 504   WEIGHT 145

DR. LIC. C352 5408 8612   STATE IL   ☐ CDL   EXPIR. DATE 1-2-29   DATE OF BIRTH 1-12-88

The Undersigned states that on 1 29 25 at 835 A.M. P.M. Defendant did unlawfully operate:

**VEHICLE**

REGISTR. NO. DA 77008   STATE IL   YEAR 25   US DOT #

MAKE Volkswagen   YEAR 13   COLOR Blue

052 ☐ PEDESTRIAN   081 ☐ TRAIL/SEMI-TRAIL.   052 ☑ PASSENGER CAR   084 ☐ TRUCK
009 ☐ BUS   086 ☐ TRUCK TRACTOR   060 ☐ RECREATIONAL VEH.
043 ☐ MOTORCYCLE   ☐ OTHER CODE(S)

COMMERCIAL MOTOR VEHICLE: YES ☐ NO. ☑
PLACARDED HAZ. MATERIAL: YES ☐ NO ☑
16 OR MORE PASS. VEHICLE: YES ☐ NO ☑

Upon a Public Highway, or other Location, Specifically Grand / Ash

Located in the County and State Aforesaid and Did Then and There Commit the Following Offense    ☐ URBAN DISTRICT

**VIOLATION**

I.V.C. 625 ILCS 5/ :

☐ 3-707 OPERATING UNINSURED VEHICLE
☐ 6-101 NO VALID DRIVER'S LICENSE
☐ 6-303 (___) DRIVING WHILE LICENSE SUSPENDED/REVOKED
☐ 11-305 DISOBEYING TRAFFIC CONTROL DEVICE
☐ 11-501(a) (___) DRIVING UNDER INFLUENCE
☐ ILCS ☐ LOCAL ORDINANCE   CH._____ ACT _____ SEC _____

☐ 11-502 (___) ILLEGAL TRANSPORTATION ALCOHOL
☑ 11-601(a) FAILURE TO REDUCE SPEED/ACCIDENT
☐ 11-601(b) SPEEDING ____ MPH IN A ____ MPH ZONE
☐ 11-709 (___) IMPROPER LANE USAGE
☐ 12-603.1 FAILURE TO WEAR SEAT BELT (___) D (___) P

NATURE OF OFFENSE

**INCIDENT**

CRASH TYPE: ☐ DRIVER INJURY ONLY ☐ PROPERTY DAMAGE ☑ PERSONAL INJURY ☐ FATAL   REF NO. 25-3926
ROAD CONDITIONS: ☐ WET ☑ DRY ☐ SNOW ☐ ICE
VISIBILITY: ☐ DAY ☑ NIGHT ☐ RAIN ☐ SNOW ☐ FOG ☐ CLEAR
METHOD: 0. ☐ ILL/R.RADAR 1. ☐ PLAIN CAR 2. ☐ RADAR 3. ☐ A.CRAFT 4. ☐ MARKED 5. ☐ VASCAR
6. ☐ C. SIGNED 7. ☐ ASSIST 8. ☑ ACCIDENT 9. ☐ OTHER 10. ☐ LIDAR
NOTATIONS:

**METHOD OF RELEASE** (see middle portion, back side of Gold copy)

☐ PRE-TRIAL RELEASE: DETAINED   Location:

☐ **COURT APPEARANCE REQUIRED**
You are required to come to court on the date, time and place noted below. If you intend to plead "NOT GUILTY", follow the instructions on the form entitled "Avoid Multiple Court Appearances" prior to your court date.

☑ **NO COURT APPEARANCE REQUIRED**
If you intend to plead "GUILTY" and avoid coming to court, follow the instructions to plead GUILTY and waive your court appearance. If you intend to plead "NOT GUILTY", follow the instructions on the form entitled "Avoid Multiple Court Appearances" prior to your court date and come to court on the date, time and place noted below.

CIRCUIT COURT LOCATION AND DATE

ADDRESS / COURTHOUSE ☑ 301 S. Greenleaf St., Park City, Courtroom - A   ☐ 18 N. County, Courtroom

CITY **WAUKEGAN**   ZIP 60085   IL   ON 3-3-25 AT 300 A.M. P.M.

Under penalties as provided by law for false certification pursuant to Section 1-109 of the Code of Civil Procedure and perjury pursuant to Section 32-2 of the Criminal Code of 2012, the undersigned certifies that the statements set forth in this instrument are true and correct.

1 29 25
MONTH DAY YEAR   OFFICER'S SIGNATURE   757   I.D. NO.

# EXHIBIT G-4

Progressive subrogation, $7,814.56

**C C S / C O M** ESTABLISHED 1996

*Ex: G-4*

# CREDIT COLLECTION SERVICE

C O M M E R C I A L

725 Canton Street, Norwood, MA 02062
Self-service: www.ccscommercial.com
Monday - Friday: 8:00AM-8:00PM, ET

**CALL CENTER: (617) 581-1077**

04232 1 MB 0.617 T 7
MARILIA COUTINHO-ESPINOLA
805 BALDWIN AVE APT 303
WAUKEGAN IL 60085-2359

Date: 05/07/25
File Number: 01 0066 36347
Pin Number: 12195
25966568851
LOSS DATE: 01/29/2025
SUBROGATION CLAIM

| REGARDING: PROGRESSIVE NORTHERN INSURANCE COMPANY | AMOUNT OF THE CLAIM: $7,814.56 |
|---|---|

Thank you for your attention at this time. As of 05/07/25, the above referenced subrogation claim remains unpaid. Our client is requesting evidence of valid insurance coverage that may have existed on the date of the incident.

Please promptly provide your insurance information to this office and we will immediately redirect our recovery efforts to your insurance carrier for payment.

In the event you were uninsured on the date of the incident, you can remit payment by mail (together with the payment stub portion of this notice) or by visiting our self-service website @ **www.ccscommercial.com**. Please call **(800) 345-7501** to provide your insurance information or to discuss suitable payment terms with a Customer Service Agent. Thank you.



**VALID INSURANCE COVERAGE:** If you provide this office with proof of valid insurance coverage, we will suspend recovery efforts against you personally (unless your insurance carrier declines coverage). Please provide the name and telephone number of your insurance company, policy number, and claim number (if available). Please be aware, some policies have limited coverage and you may be responsible for damages that are not covered by your carrier.



**CALL CENTER:** You can receive personal attention from a Customer Service Agent during the hours referenced at the top of this notice: (617) 581-1077.



**MAIL PAYMENT:** You can mail your check together with the payment stub portion of this notice. You can make your check payable to: PROGRESSIVE NORTHERN INSURANCE COMPANY.



**MAIL OR FAX CORRESPONDENCE:** You can mail correspondence to: CCSC P.O. Box 7249, Portsmouth, NH 03802-7249 or fax to: (617) 762-3351. You can include a copy of this notice to avoid processing delays.

0059 - IL

**ATTENTION:** Please be advised, failure to respond to this notice could result in a lawsuit being filed against you and/or suspension of your driver's license (contingent upon applicable state law).

| File Number: 01 0066 36347 Pin Number: 12195 MARILIA COUTINHO-ESPINOLA | PLEASE PAY THIS AMOUNT: $7,814.56 |
|---|---|

**Go Green**

We offer secure email messaging, as well as the ability to pay or send correspondence online. It's quick, easy, and helps protect the environment. Please consider visiting our self-service website at: **www.ccscommercial.com**.

Do not mail post-dated checks. You can call (800) 345-7501 for personal attention. CCSC may process payment as a one-time electronic funds withdrawal using information from your check.

CCSC
PAYMENT PROCESSING CENTER
P.O. BOX 55156
BOSTON, MA 02205-5156

# EXHIBIT G-5

GEICO subrogation, $16,103.25

# Thomas George Assoc

 Ex: G-5

Post Office Box 30 - East Northport NY 11731-0030
(800) 443-8338
www.tgaltd.com

July 29, 2024

MARILIA ESPINOLA                    1439 /4
805 BALDWIN AVE APT 303
WAUKEGAN IL 60085-2359

||·|··|||||||·····||||||·|·||·|||||·····|·|·|·|||||||·|||·||·|·|||·

Re:   GEICO
      OUR FILE NUMBER: 1181783-026
      Amount of Claim: $16,103.25
      Claim Number: 8668197550000001

This firm has made a concerted effort to make arrangements for you
to resolve the above captioned claim that is due our client.

As of this date no amicable resolution has arisen.

Unless you, within thirty (30) days after receipt of this notice,
dispute the validity of this claim, or any portion thereof, the claim
will be assumed to be valid by the subrogation representative.

If you notify this office in writing within 30 days from receiving this
notice that you dispute the validity of this claim, or any portion
thereof, this office will obtain verification of the claim or obtain a
copy of a judgement and mail you a copy of such judgment or
verification. If you request of this office in writing within 30 days
after receiving this notice this office will provide you with the name
and address of the original creditor, if different from the current
creditor.

This communication is from a subrogation representative and is an
attempt to recover a claim, any information obtained will be used for
that purpose.

Contact the undersigned at 631-261-8800 between 9-5 Eastern Standard
time, so that some financial arrangements can be agreed upon.

Very truly yours,

Fred Fuller

# EXHIBIT G-6

Waukegan FD invoice, $494.00

 Fire Recovery USA
Fire Billing Solutions

Ex: G-6

Fire Recovery USA, LLC.
2271 Lava Ridge Court
Suite 120
Roseville, CA  95661-3065
(888) 640-7222

**Waukegan Fire Department, IL**
**Invoice #1864494**

Date: 03/06/2025
Incident Date: 01/29/2025
Tax ID: 26-2305306

| Bill To | Insured |
|---|---|
| The General | Marilia Coutinho - Espinola |
| | Claim #: 01008530427 |
| | Policy #: 1BIL7975818 |
| | Incident Location: Grand Ave @ N Ash St, Waukegan Waukegan, Il 60085 |

| Item | Description | Rate | Qty | Units | Total |
|---|---|---|---|---|---|
| Scene Assessment and Stabilization | Waukegan Fire Department responded to a motor vehicle incident at Grand Ave @ N Ash St, Waukegan Waukegan, Il 60085 on 01/29/2025 and performed scene assessment and stabilization as well as a hazardous materials clearance check.  Restored the scene to a non-hazardous condition. | $ 494.00 | 1 | | $ 494.00 |
| | | | | Total Due: | **$ 494.00** |

# EXHIBIT G-7

Photos of debris, damage, recovery

**Exhibit G-7:   Photo 3 (Car 3 Total Loss)**



**Exhibit G-7:   Photo 2 (Car 2 Crushed Frontend)**



**Exhibit G-7: Photo 1 (Car 1 Crushed Frontend)**



# EXHIBIT G-8

Car lender demand, $7,008.47

**Exhibit G-8: Creditor Demand Letter for Total Loss**

## Law Offices of Gabriel B. Antman, P.C.
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
(312) 782-5520
(312) 977-0922 fax

June 12, 2025

Marilia Coutinho Espinola
805 Baldwin Ave., Apt. 303
Waukegan, IL 60085

| Re: | Original Creditor: | **CHICAGO ACCEPTANCE, LLC** |
|-----|--------------------|------------------------------|
| | Origin of Debt: | **Retail Installment Contract and Security Agreement** |
| | Creditor Account No.: | 202320 |
| | Security Interest: | 2013 Volkswagen Tiguan |
| | VIN: | WVGBV3AX9DW562680 |
| | Amount Due: | $7,008.47 |
| | Date of Default: | April 15, 2025 |

Chicago Acceptance, LLC ("Original Creditor") has engaged our law firm, as a debt collector, to collect from you the indebtedness in the amount shown above. On behalf of Original Creditor, demand is hereby made for payment of said indebtedness, or, in the alternative, voluntary surrender of the above referenced vehicle.

| | |
|---|---|
| As of April 15, 2025, you owed the principal amount of: | $7,008.47 |
| Between April 15, 2025 and June 12, 2025: | $0.00 |
| You were charged this amount in interest: | $0.00 |
| You were charged this amount in late fees and/or other fees: | $0.00 |
| You were credited this amount: | $7,008.47 |
| **Total Amount Due:** | |

To dispute the debt, or any part of the debt, notify our law firm on or before **30 DAYS FROM TODAY'S DATE**. If you do not, we will assume that our information is correct.

If you notify our law firm on or before **30 DAYS FROM TODAY'S DATE,** that you dispute the debt, or any part of the debt, we must stop collection on any amount you dispute until we send you verification of the debt including the name and address of the original creditor, if different from the current creditor. You may use the enclosed form or write to us without the form.

**You may also go to www.cfpb.gov/det-collection** to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.

Very truly yours,

LAW OFFICES OF GABRIEL B. ANTMAN, P.C.

Gabriel B. Antman

GBA/ns

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# EXHIBIT H

Psychiatrist clinical notes, fluoxetine, Adderall;
anxiety/ADHD

**Exhibit H – Psychiatric Clinical Notes (Redacted and Formatted for Court Use)**

**Provider:** Silu Lohani, MD – Rosalind Franklin University Health
**Date of Service:** August 19, 2025
**Format:** Telehealth visit, 18 minutes, psychotherapy + medication management

**Chief Complaint:** "I am good, nothing changed, but a lot going on."

**History:**

- Patient is a 37-year-old female (Marilia Coutinho Espinola), treated for anxiety and ADHD.

- Reports heightened stress related to ongoing housing disputes and eviction proceedings for 9 months.

- States that stress and anxiety were exacerbated after blocked access to rent portal and receipt of an October 2024 eviction notice.

- Reports three motor vehicle accidents during December 2024 – January 2025, coinciding with peak stress.

- Describes ongoing financial strain and job limitations due to ongoing stress, trauma, and inability to drive.

**Medications:**

- Fluoxetine – prescribed for anxiety.

- Adderall – prescribed for ADHD.

**Assessment:**

- Patient reports improvement in anxiety compared to initial crisis but remains under significant stress related to housing dispute.

- ADHD symptoms managed with medication.

- Anxiety heightened during 9 months of housing litigation, directly linked to stressors from the eviction process and blocked rent portal.

1

Ex: H

**Exhibit H — Psychiatric Clinical Notes (Redacted and Formatted for Court Use)**

**Plan:**

- Continue fluoxetine and Adderall.

- Ongoing monitoring of anxiety and ADHD symptoms.

- Encourage coping strategies and stress management.

**Certification:**

This excerpt is a true and accurate copy of relevant portions of the treatment notes of Dr. Silu Lohani, MD, Rosalind Franklin University Health, dated August 19, 2025, reformatted and redacted for clarity and relevance.

# EXHIBIT H-1

Psychiatrist Review / Letter
Additional mental-health corroboration

*(Previously labeled as Exhibit T in older exhibit set)*





3471 N Green Bay Rd
NORTH CHICAGO, IL 60064-3095
Phone: (847) 473-4357 Fax: (847) 247-6950

Re: Marilia Coutinho Espinola

To whom it may concern,

I am writing this letter on behalf of Ms Marilia Coutinho Espionala who has been a patient under my care since 10/11/2024. Mr. Espionola has been diagnosed with Anxiety disorder, Depression and Attention deficit hyperactivity disorder. In addition to undergoing pharmacological treatment with this provider, she also follows up with Dr. Matyja for additional psychotherapy. She is currently being prescribed medications to help her better manage her symptoms from the above conditions. Her mood and overall symptoms are fairly well controlled at this time on the current medication regimen which she has been tolerating well.However, significant psychosocial stressors or environmental factors including stressful life events and living situation can increase the risk of worsening of symptoms making her susceptible to a flare up of the symptoms related to above conditions.

Sincerely,
Silu Lohani MD
Rosalind Franklin University Health Clinics
Assistant Professor of Psychiatry
3471 Green Bay Road
North Chicago, IL 60064
847-473-4357

Electronically Signed by: SILU LOHANI, MD

Silu Lohani, MD
08/28/2025

# EXHIBIT J

RBT income evidence

# EXHIBIT J-1

Paystub, July 15, 2025

Ste 105
Des Plaines, IL 60016

**Exhibit J – Marilia Espinola Paystub (North Shore Pediatric Therapy)**

**Check Date**
July 25, 2025

DIRECT DEPOSIT VOUCHER

151712   NSPT-VH-ABA
**Marilia Coutinho Espin**
805 Baldwin avenue
303
Waukegan, IL  60085-2359

| | Type | Account | Amount |
|---|---|---|---|
| Direct Deposits | | | |
| Evolve Bank And Trus | C | ***2617 | 1,397.13 |
| Jp Morgan Chase Bank | C | ***8376 | 0.00 |
| Us Bank NA | C | ***3590 | 0.00 |
| Other | | | 0.00 |
| **Total Direct Deposits** | | | **1,397.13** |

## Non Negotiable - This is not a check - Non Negotiable

### North Shore Pediatric Therapy

**Marilia Coutinho Espinola**                                     **Earnings Statement**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Employee ID | **8006363** | Fed Taxable Income | **1,587.59** | Check Date | **July 25, 2025** | Voucher Number | **24955** |
| Location | **NSPT-VH-ABA** | Fed Filing Status | **M** | Period Beginning | **July 6, 2025** | Net Pay | **1,397.13** |
| Hourly | **$22.50** | State Filing Status | **M-2** | Period Ending | **July 19, 2025** | Total Hours Worked | **0.00** |

| Earnings | Rate | Hours | Amount | | YTD |
|---|---|---|---|---|---|
| Billable H | 22.50 | 63.25 | 1,423.13 | | 21,431.28 |
| Client Nap | 18.00 | 5.00 | 90.00 | | 913.50 |
| Holiday | | | | | 840.00 |
| Late Cance | | | | | 400.50 |
| Non-Billab | 15.00 | 1.75 | 26.25 | | 408.75 |
| Overtime | | | | | 101.25 |
| Personal D | | | | | 336.00 |
| PTO | 21.00 | 4.00 | 84.00 | | 1,344.00 |
| retro pay | 18.00 | 2.25 | 40.50 | | 382.50 |
| **Gross Earnings** | | **76.25** | **1,663.88** | | **26,157.78** |

| Taxes | | | | Amount | YTD |
|---|---|---|---|---|---|
| FITW | | | | 0.00 | 5.64 |
| IL | | | | 67.73 | 1,075.68 |
| MED | | | | 23.02 | 362.70 |
| SS | | | | 98.43 | 1,550.83 |
| **Taxes** | | | | **189.18** | **2,994.85** |

| Deductions | Amount | YTD |
|---|---|---|
| Dental Ins | 18.85 | 282.75 |
| Medical Insurance | 57.44 | 861.60 |
| Vol Life Spouse | 0.64 | 9.60 |
| Voluntary Life Ins | 0.64 | 9.60 |
| **Deductions** | **77.57** | **1,163.55** |

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| Jp Morgan Chase Bank | C | ***8376 | 0.00 |
| Us Bank NA | C | ***3590 | 0.00 |
| Evolve Bank And Trust | C | ***2617 | 1,397.13 |
| Other | | | 0.00 |
| **Total Direct Deposits** | | | **1,397.13** |

| | Available Plan Year | |
|---|---|---|
| Time Off | to Use | Used |
| Personal | 0.00 | 16.00 |
| PTO | 4.00 | 60.00 |
| Regular | | |

# EXHIBIT J-2

Time-off & coverage disruptions, PTO request + July 15
coverage text

Ex: J-2

## Exhibit J-2 – Employment Time-Off & Coverage Disruptions (Dec. 2024 – July 2025)

This exhibit provides documentation of disruptions to Marilia Coutinho Espinola's employment schedule caused by litigation stress and related incidents. The evidence demonstrates both formal payroll records of time-off taken and direct contemporaneous communications showing her efforts to arrange work coverage due to mandatory court appearances.

### J-2(a) – July 15, 2025 Coverage Request (Internal Work Message)

Attached is a contemporaneous internal message from Marilia requesting coverage from coworkers for her client session on July 15, 2025, due to a scheduled 3:00 p.m. court appearance.

This communication illustrates the real-time disruption to her work schedule and the emotional/mental toll of balancing litigation with professional obligations.

### J-2(b) – Paylocity PTO Records (Dec. 2024 – July 2025)

Attached are Paylocity payroll records reflecting time-off entries connected to court appearances and related stress events.

- December 2024 – PTO hours used surrounding eviction litigation.

- January 2025 – PTO hours used during accident period and court requirements.

- July 2025 – PTO hours used around court hearings.

These records confirm verifiable, employer-tracked absences that reduced her available work hours and earnings.

Summary:
Together, these documents provide both official payroll verification and direct communications establishing that the eviction litigation caused repeated, measurable interference with Marilia's employment.

1

Ex: J-2

**J-2(a) – July 15, 2025 Coverage Request (Internal Work Messages)**

01:52 👤                    ·· 🛜 🔋

‹ 1  A ᴀ  **VH Session Coverage** ›  📞  📹
              Muted

monday or tuesday

> Hi Team,
> On July 15, next Tuesday, I will
> have court appointment at 3 pm.,
> so I'm trying to arrange coverage
> for that afternoon; Since my friend
> @claire, already agreed to take
> my session with RB from 3-4:30
> pm,
>
> Can someone stay with her
> CLIENT AP from 3-4:30 , please ?
> ( July 15 Tuesday)

Lindsy Arizmendi

LA ⊕    Marilia C.
        Hi Team, On July 15, next Tuesday,
        I will have court appointment at 3
        pm., so I'm trying to arrange
        coverage for that afternoon; Since
        my friend @claire, already agreed
        to take my session with RB...

        I'm available 3:30-4:30 so I can
        take for that time

> Thank youuuu Lindsyyyy,  this will
> help !
>
> That's okay              with
> Clairee taking my session with RB
> from 3-4:30, next Tuesday ? JULY

➕  Type a message      ☺  📷  🎤

---

01:49 👤                    ·· 🛜 🔋

‹ 1  AG  **Abigail Gordon** ›  📞  📹
         Last seen yesterday

> Thank you so much dear

April 9, 14:36

I forgot to ask! Could you end
your session plz?

> I'm só sorry

> I was out of my mind worry about
> my court

April 9, 15:58

No worries!

April 25, 13:18

> I have Java communication log

Perf! Can you leave it in his room?
He's napping rn!

⟨ ♀♂ ⟩  ⚙

June 5, 11:51

I have AP for nap! If you could
bring him to the nap room at the
end of your session it'd be a big
help!!

June 12, 11:51

➕  Type a message      ☺  📷  🎤

---

**J-2(b) – Paylocity PTO Records (Dec. 2024 – July 2025)**

Ex: J-2



**North Shore Pediatric Therapy [151712]**

≡ **HR & Payroll**   Employees   HR   Payroll   User Access

| Personal | Work | Employment | Pay | Benefits | Performance | Training | **Time Off** |

Balances   Time Off History   Leave Tracking   Requests   Time Off Documents

## Time Off History

| Transaction Date From | 1/1/2025 | | Time Off Type | -- All -- |
| Transaction Date To | 8/28/2025 | | Transaction Type | -- All -- |
| Begin Date From | 1/1/2025 | | ◯ Show Totals? |
| Begin Date To | 8/28/2025 | | Transaction Subtype | -- All -- |

[Search] [Show All] [Reset]                    Save Sea

| Trans Date / | Begin Date | Type | Trans Type | Subtype | Hours/Days | Avail Hours/Days | $ |
|---|---|---|---|---|---|---|---|
| 08/22/2025 | 08/11/2025 | PTOR | Used | | 8.00 Hours | 0.00 Hours | |
| 07/25/2025 | 07/15/2025 | PTOR | Used | | 4.00 Hours | 0.00 Hours | |
| 07/11/2025 | 06/23/2025 | PTOR | Used | | 5.50 Hours | 4.00 Hours | |
| 06/27/2025 | 06/09/2025 | PTOR | Used | | 7.50 Hours | 1.50 Hours | |
| 05/30/2025 | 05/14/2025 | PTOR | Used | | 2.75 Hours | 9.00 Hours | |
| 05/30/2025 | 05/15/2025 | PTOR | Used | | 2.75 Hours | 6.25 Hours | |
| 05/30/2025 | 05/19/2025 | PTOR | Used | | 5.25 Hours | 1.00 Hours | |
| 05/16/2025 | 04/28/2025 | PTOR | Used | | 2.00 Hours | 10.50 Hours | |
| 05/16/2025 | 05/08/2025 | PTOR | Used | | 2.75 Hours | 7.75 Hours | |
| 05/02/2025 | 04/16/2025 | PTOR | Used | | 2.00 Hours | 10.50 Hours | |
| 05/02/2025 | 04/17/2025 | PTOR | Used | | 2.00 Hours | 8.50 Hours | |
| 04/18/2025 | 04/01/2025 | PTOR | Used | | 4.00 Hours | 10.50 Hours | |
| 04/18/2025 | 04/09/2025 | PTOR | Used | | 2.00 Hours | 8.50 Hours | |
| 03/21/2025 | 03/03/2025 | PTOR | Used | | 8.00 Hours | 6.50 Hours | |
| 03/07/2025 | 02/24/2025 | PERS | Used | | 0.75 Hours | 0.00 Hours | |
| 03/07/2025 | 02/20/2025 | PTOR | Used | | 2.75 Hours | 13.25 Hours | |
| 03/07/2025 | 02/21/2025 | PTOR | Used | | 2.75 Hours | 10.50 Hours | |
| 02/21/2025 | 02/11/2025 | PERS | Used | | 2.75 Hours | 0.75 Hours | |
| 02/07/2025 | 01/22/2025 | PERS | Used | | 4.50 Hours | 3.50 Hours | |
| 02/07/2025 | 01/30/2025 | PTOR | Used | | 4.00 Hours | 8.00 Hours | |
| 01/24/2025 | 01/15/2025 | PERS | Used | | 4.00 Hours | 12.00 Hours | |
| 01/24/2025 | 01/16/2025 | PERS | Used | | 4.00 Hours | 8.00 Hours | |

3

Ex: J-2

## J-2(b) – Paylocity PTO Records (Dec. 2024 – July 2025)

North Shore Pediatric Therapy [151712]

≡   **HR & Payroll**         Employees      HR      Payroll      User Access

Help

Personal    Work    Employment    Pay    Benefits    Performance    Training    **Time Off**

Balances    Time Off History    Leave Tracking    Requests    Time Off Documents

**Time Off History**

| Transaction Date From | 1/1/2024 | | Time Off Type | -- All -- | |
| Transaction Date To | 12/31/2024 | | Transaction Type | -- All -- | |
| Begin Date From | 1/1/2024 | | Show Totals? | | |
| Begin Date To | 12/31/2024 | | Transaction Subtype | -- All -- | |

Search   Show All   Reset                                                                              Save Sea

| Trans Date / | Begin Date | Type | Trans Type | Subtype | Hours/Days | Avail Hours/Days | $ |
|---|---|---|---|---|---|---|---|
| 12/13/2024 | 12/03/2024 | PTOR | Used | | 2.00 Hours | 2.00 Hours | |
| 12/13/2024 | 12/04/2024 | PTOR | Used | | 2.00 Hours | 0.00 Hours | |
| 11/29/2024 | 11/11/2024 | PTOR | Used | | 6.00 Hours | 4.00 Hours | |
| 11/29/2024 | 11/14/2024 | PTOR | Used | | 4.00 Hours | 0.00 Hours | |
| 11/15/2024 | 11/04/2024 | PTOR | Used | | 9.00 Hours | 33.00 Hours | |
| 11/15/2024 | 11/05/2024 | PTOR | Used | | 9.00 Hours | 24.00 Hours | |
| 11/15/2024 | 11/06/2024 | PTOR | Used | | 9.00 Hours | 15.00 Hours | |
| 11/15/2024 | 11/07/2024 | PTOR | Used | | 9.00 Hours | 6.00 Hours | |

4

# Exhibit L

30-Day Notice of Termination, August 2025 & Ledger of Late Fees This record shows
Defendants' excessive retaliation. After blocking Plaintiffs from paying rent through the
portal for nearly a year, Defendants voluntarily dismissed the eviction case. Despite
that dismissal, they then attempted to charge Plaintiffs retroactive rent and late fees
arising from the portal block they themselves caused. This demonstrates ongoing
retaliatory intent and excessive penalties.

## NOTICE OF TERMINATION OF TENANCY
## [30-DAY NOTICE]

**To: Alfred Holt and Marilia Coutinho Espinola_____/ and all other occupants and lessees**
**805 Baldwin Ave Apt 303_____**
**Waukegan, IL 60085**

You are hereby notified that your right of possession of the following described premises, to wit:
805 Baldwin Ave Apt 303, Waukegan, IL 60085;

Together with all other accommodations used by you in connection therewith, will be terminated as follows:

**X**      There is due to the undersigned for accrued and past-due rental for said accommodations aforesaid the sum of **$ 16,847.67. PLUS any rent or additional rent that comes due prior to the expiration of the 30 day notice pursuant to the terms of the Lease,** for which demand is herewith made, and unless payment is made <u>IN CERTIFIED FUNDS</u> within thirty (30) days from the date of service hereof, your right of possession is terminated.

Only **FULL PAYMENT** of the rent demand in the notice **PLUS any rent or additional rent that comes due prior to the expiration of the 30-day notice** pursuant to the terms of the Lease will waive the landlord's right to terminate your right of possession under the lease, unless the landlord agrees in writing to continue your right of possession in exchange for receiving partial payment. Upon filing for eviction any renewal offers previously made to you are hereby withdrawn. Unless you promptly comply with the above, suit will be instituted for possession, and for rental due, together with the costs of such proceeding.

Dated this _15th____ day of ____August_____, 2025     Imperial Tower Apartments

Lessor
By: _____

Its Authorized Agent

### PROOF OF SERVICE

STATE OF ILLINOIS                      )
                                    ) SS
County of LAKE                         )

Katrina Blair_____, certifies and says that he/she served the forgoing "Notice of Termination of Tenancy" on the _15th_____ day of August_____, 2025, as follows:

     __ By delivering a true copy thereof to the within-named tenant _____

     __ By leaving a true copy thereof with _____, a person above the age of thirteen years, residing on or in possession of the premises.

     _X_ By sending a true copy thereof with _United States Postal Service_____, via certified mail, return receipt requested.

     _ By posting a true copy to the door and sliding a true copy thereof under the lessee's door to the premises, no one having answered after knocking, pursuant to Paragraph 31 of the Lease.

Under penalties as provided by law pursuant to Section 1 – 109 of the Code of Civil Procedure, the undersigned certificates that the statements set forth in the Affidavit of Service are true and correct.

_____

 Menu

Logged in as: Alfred Holt

# PAYMENTS

Auto-pay Setup

Recent Activity    Payment Accounts

## CURRENT BALANCE: $18,569.93

as of 9/9/2025

Rent (11/2024)

$589.67

11/1/2024

1-25

BH Liability (11/2024)

$14.00

11/1/2024

Pest Control Fee (11/2024)

$3.00

11/1/2024

Storage Space (11/2024)

$15.00

11/1/2024

Allocated Trash - 09/01/24-09/30/24

$18.75

11/1/2024

Service Fee - 11/01/24-11/30/24

$5.50

11/1/2024

Water and Sewer - 09/01/24-09/30/24

$50.94

11/1/2024

Late Charge, 10% of $1400.00

$140.00

11/4/2024

Monthly Pet Fees & Charges (12/2024)

$30.00

12/1/2024

Rent (12/2024)

$1,400.00

12/1/2024

Parking Space (12/2024)

$25.00

12/1/2024

BH Liability (12/2024)

$14.00

12/1/2024

Pest Control Fee (12/2024)

$3.00

12/1/2024

Storage Space (12/2024)

$15.00

12/1/2024

Allocated Trash - 10/01/24-10/31/24

12/1/2024

Common Area Electricity - 10/01/24-10/31/24

$6.83

12/1/2024

Gas - 10/01/24-10/31/24

$16.64

12/1/2024

Service Fee - 12/01/24-12/31/24

$5.50

12/1/2024

Water and Sewer - 10/01/24-10/31/24

$51.75

12/1/2024

Late Charge, 10% of $1400.00

$140.00

12/4/2024

Storage Space (01/2025)

$15.00

1/1/2025

BH Liability (01/2025)

$14.00

1/1/2025

Pest Control Fee (01/2025)

$3.00

1/1/2025

Parking Space (01/2025)

$25.00

1/1/2025

Rent (01/2025)

$1,400.00

1/1/2025

Monthly Pet Fees & Charges (01/2025)

$30.00

1/1/2025

Allocated Trash - 11/01/24-11/30/24

$21.25

1/1/2025

Common Area Electricity - 11/01/24-11/30/24

$7.07

1/1/2025

Gas - 11/01/24-11/30/24

$33.92

1/1/2025

Service Fee - 01/01/25-01/31/25

$5.50

1/1/2025

Water and Sewer - 11/01/24-11/30/24

$54.23

1/1/2025

Late Charge, 10% of $1400.00

$140.00

1/4/2025

Monthly Pet Fees & Charges (02/2025)

$30.00

2/1/2025

Rent (02/2025)

$1,400.00

2/1/2025

Parking Space (02/2025)

$25.00

2/1/2025

BH Liability (02/2025)

$14.00

2/1/2025

Pest Control Fee (02/2025)

$3.00

2/1/2025

Storage Space (02/2025)

$15.00

2/1/2025

Allocated Trash - 12/01/24-12/31/24

$13.76

2/1/2025

Common Area Electricity - 12/01/24-12/31/24

$6.73

2/1/2025

Gas - 12/01/24-12/31/24

$71.36

2/1/2025

Service Fee - 02/01/25-02/28/25

$5.50

2/1/2025

Water and Sewer - 12/01/24-12/31/24

$48.92

2/1/2025

Late Charge, 10% of $1400.00

$140.00

2/4/2025

Allocated Trash - 01/01/25-01/31/25

$14.54

3/1/2025

Common Area Electricity - 01/01/25-01/31/25

$7.70

3/1/2025

Gas - 01/01/25-01/31/25

$94.92

3/1/2025

Service Fee - 03/01/25-03/31/25

$5.50

3/1/2025

Water and Sewer - 01/01/25-01/31/25

$47.76

3/1/2025

Monthly Pet Fees & Charges (03/2025)

$30.00

3/1/2025

Rent (03/2025)

$1,400.00

3/1/2025

Parking Space (03/2025)

$25.00

3/1/2025

BH Liability (03/2025)

$14.00

3/1/2025

Pest Control Fee (03/2025)

$3.00

3/1/2025

Storage Space (03/2025)

3/1/2025

Late Charge, 10% of $1400.00

$140.00

3/4/2025

Monthly Pet Fees & Charges (04/2025)

$30.00

4/1/2025

Rent (04/2025)

$1,400.00

4/1/2025

Parking Space (04/2025)

$25.00

4/1/2025

BH Liability (04/2025)

$14.00

4/1/2025

Pest Control Fee (04/2025)

$3.00

4/1/2025

Storage Space (04/2025)

$15.00

4/1/2025

Allocated Trash - 02/01/25-02/28/25

$16.62

4/1/2025

Common Area Electricity - 02/01/25-02/28/25

$8.64

4/1/2025

Gas - 02/01/25-02/28/25

$95.01

4/1/2025

Service Fee - 04/01/25-04/30/25

$5.50

4/1/2025

Water and Sewer - 02/01/25-02/28/25

$49.00

4/1/2025

Late Charge, 10% of $1400.00

$140.00

4/4/2025

Monthly Pet Fees & Charges (05/2025)

$30.00

5/1/2025

Rent (05/2025)

$1,400.00

5/1/2025

Parking Space (05/2025)

$25.00

5/1/2025

BH Liability (05/2025)

$14.00

5/1/2025

Pest Control Fee (05/2025)

$3.00

5/1/2025

Storage Space (05/2025)

$15.00

5/1/2025

Allocated Trash - 03/01/25-03/31/25

$15.28

5/1/2025

Common Area Electricity - 03/01/25-03/31/25

$8.63

5/1/2025

Gas - 03/01/25-03/31/25

$95.34

5/1/2025

Service Fee - 05/01/25-05/31/25

$5.50

5/1/2025

Water and Sewer - 03/01/25-03/31/25

$83.17

5/1/2025

Late Charge, 10% of $1400.00

$140.00

5/4/2025

Monthly Pet Fees & Charges (06/2025)

$30.00

6/1/2025

Rent (06/2025)

$1,400.00

6/1/2025

Parking Space (06/2025)

$25.00

6/1/2025

BH Liability (06/2025)

$14.00

6/1/2025

Pest Control Fee (06/2025)

$3.00

6/1/2025

Storage Space (06/2025)

$15.00

6/1/2025

Allocated Trash - 04/01/25-04/30/25

$13.31

6/1/2025

Common Area Electricity - 04/01/25-04/30/25

$8.77

6/1/2025

Gas - 04/01/25-04/30/25

$78.35

6/1/2025

Service Fee - 06/01/25-06/30/25

$5.50

6/1/2025

Water and Sewer - 04/01/25-04/30/25

$87.38

6/1/2025

Late Charge, 10% of $1400.00

$140.00

6/4/2025

Monthly Pet Fees & Charges (07/2025)

$30.00

7/1/2025

Rent (07/2025)

$1,400.00

7/1/2025

Parking Space (07/2025)

7/1/2025

BH Liability (07/2025)

$14.00

7/1/2025

Pest Control Fee (07/2025)

$3.00

7/1/2025

Storage Space (07/2025)

$15.00

7/1/2025

Allocated Trash - 05/01/25-05/31/25

$12.15

7/1/2025

Common Area Electricity - 05/01/25-05/31/25

$7.68

7/1/2025

Gas - 05/01/25-05/31/25

$62.41

7/1/2025

Service Fee - 07/01/25-07/31/25

$5.50

7/1/2025

Water and Sewer - 05/01/25-05/31/25

$57.93

7/1/2025

Late Charge, 10% of $1400.00

$140.00

7/4/2025

Monthly Pet Fees & Charges (08/2025)

$30.00

8/1/2025

Rent (08/2025)

$1,400.00

# EXHIBIT M

RentCafe screenshot, September 2024: "You are not currently listed as a resident"

Ex: M

**Exhibit M – RentCafe screenshot, September 2024" You are not currently listed as a resident"**



# EXHIBIT N

Financial estimates of lost federal contracting opportunities,
~$8.5M

## Exhibit N – Financial Estimates of Lost Federal Contracting Opportunities

Prepared by: Alfred Holt
Date: August 27, 2025

### Background

Between 2023 and 2024, I was actively engaged in communications with the U.S. Department of Veterans Affairs (VA) regarding technology proposals, including the InVirtCare suicide-prevention platform (see Exhibits B & B-2). These proposals were developed in response to official VA innovation calls and were designed to address urgent needs, including veteran suicide prevention.

The total estimated value of these opportunities was approximately $8,500,000 across multiple VA contracting avenues.

Impact of Eviction Litigation
From October 2024 through July 2025, I was forced to devote nearly all of my time and resources to defending an unlawful eviction case (Case No. 24 EV 1836). This nine-month litigation period:

Prevented me from finalizing and refining submissions to the VA.

Blocked travel and networking opportunities tied to the proposals.

Caused reputational damage by creating instability in my business operations.

Although the eviction case was dismissed on July 23, 2025, by that time the VA contracting windows had closed, resulting in lost contracts.

### Financial Estimate

Direct Contract Value: $8,500,000

Proposal A (InVirtCare Concept Paper, Topic Area 0003): $5,000,000

Proposal B (Secondary VA Program Support): $3,500,000

Projected Growth Multiplier: Based on VA adoption rates and referrals, successful execution could reasonably have scaled to $50,000,000–$100,000,000 over five years.

For the purposes of this case, the conservative loss estimate is $8,500,000.

## Exhibit N – Financial Estimates of Lost Federal Contracting Opportunities

Conclusion

The retaliatory eviction litigation and associated stressors directly prevented my ability to compete for and secure these VA contracts. As a result, I suffered quantifiable economic damages of not less than $8,500,000, with significantly higher long-term opportunity costs.

Submitted as Exhibit N
/s/ Alfred Holt
Pro Se Plaintiff

# EXHIBIT T

## Second Eviction Filing – Verified Complaint for Eviction

Amzak Waukegan, LLC v. Alfred Holt, Marilia Coutinho Espinola, et al. (Lake County, Illinois),
Case No. 2025EV00001817 (file stamp 11/13/2025).

FILED
11/13/2025 8:58 AM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

IN THE CIRCUIT COURT FOR THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| AMZAK WAUKEGAN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  2025EV00001817 |
| | ) | |
| v. | ) | Amount Claimed: $21,056.77 plus attorneys' |
| | ) | fees and costs and additional rent and charges |
| ALFRED HOLT, MARILIA COUTINHO | ) | |
| ESPINOLA, and All Known and Unknown | ) | |
| Occupants, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR EVICTION

NOW COMES the Plaintiff, AMZAK WAUKEGAN, LLC, an Illinois limited liability company by and through its attorneys, RATHJE WOODWARD LLC, and as and for its Verified Complaint for Eviction ("Complaint") against Defendants ALFRED HOLT, MARILIA COUTINHO ESPINOLA ("Tenants"), and All Known and Unknown Occupants (collectively referred to as "Defendants"), alleges as follows:

1.    Plaintiff, Amzak Waukegan, LLC, brings this Complaint to evict Defendants from and obtain possession of the premises occupied by Tenants at the property located at 805 Baldwin Avenue, Waukegan, Illinois 60085 (the "Property").

2.    Plaintiff is the record title holder of the Property, which is a residential rental community.

3.    Tenants are individuals residing at the Property in Unit No. 303 (the "Leased Premises").

4.    BH Management Services, LLC at all relevant times alleged herein, was and is the property manager for Plaintiff and, as such, is the authorized agent for Plaintiff in the management of the Property, which includes acting as Plaintiff's agent in the enforcement of leases for units

# EXHIBIT U

Photographic evidence of selective parking enforcement,
September 2024

 Gmail

Alfred Holt <alfred.holt@invirtcare.com>

## (no subject)

**Alfred Holt** <alfred.holt@invirtcare.com>
To: trina.blair@livebh.com, imperialtower@livebh.com

Sat, Nov 23, 2024 at 1:53 PM

This was last night after my car was towed.  As you can see this person is completely in our parking space, but yet the decision was to tow my car...





[Quoted text hidden]
[Quoted text hidden]

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
Forms are free at ilcourts.info/forms.

| STATE OF ILLINOIS, CIRCUIT COURT | | **EVICTION SUMMONS** | For Court Use Only |
|---|---|---|---|
| Lake | COUNTY | | |

| Instructions ▼ | |
|---|---|
| Directly above, enter the name of county where you will file the case. | **Plaintiff** *(For example, the landlord or owner)*:<br>Amzak Meadows, LLC |
| Enter your name as Plaintiff. | |
| Below "Defendants," enter the names of all the people you are trying to evict. | v.<br><br>**Defendants** *(First, middle, last name)*:<br>Alfred Holt |
| The sheriff will only evict unknown occupants if the "Unknown Occupants" box is checked. | Marilia Coutinho Espinola<br>Unknown Occupants<br><br>☒ **Unknown Occupants** *(Unknown Occupants are people living in the property whose names you do not know.)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

For Court Use Only:

**2024EV00001836**
**Case Number**

# IMPORTANT: You have been sued.

- Read all documents attached to this *Summons*.

- You MUST attend court on the date in this *Summons*. If you do not, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- You do not have to file a document called an *Answer/Response* in an eviction case unless ordered to by the judge. You may have to file a document called an *Appearance*. If you do not file required court documents on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an Application for Waiver of Court Fees.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

| **Plaintiff:** | **If you are suing more than 1 Defendant, fill out an *Eviction Summons* form for each Defendant, including 1 *Eviction Summons* for all Unknown Occupants, if checked. To serve this *Summons*, see *How to Serve a Summons* at ilcourts.info/forms.** |
|---|---|

# EXHIBIT W

## Defendants' Verified Responses to Request to Admit Facts

Document: Amzak Waukegan, LLC's Responses to Defendant's Request to Admit Facts

State Case: 24 EV 1836 (Lake County, Illinois)

Filed/Verified: May 2, 2025 (per document)

*Filed in support of Plaintiffs' First Amended Complaint (Federal Case No. 1:25-cv-10936)*

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

Amzak Waukegan LLC,                              )
                                                )
                              Plaintiffs,        )        Case No. 24 EV 1836
                                                )
        v.                                       )
                                                )
Alfred Holt and Marilia Coutinho Espinola,      )
                                                )
                              Defendants.        )

**PLAINTIFF'S RESPONSES TO DEFENDANT'S REQUEST TO ADMIT FACTS**

Plaintiff, Amzak Waukegan LLC, by and through its attorneys, the Law Offices of
David K. Barhydt, for its Responses to Defendant's Request to Admit Facts, states as
follows:

**REQUESTS TO ADMIT**

1.      Admit that on or about October 24, 2024, Property Manager Katrina Blair
informed Defendant Alfred Holt that the violation referenced in the 10-Day Notice was
not intended for him, but for another tenant deemed to be a nuisance, and the property
manager agreed to attempt to dismiss the violation.

**RESPONSE:** Denied.

2.      Admit that prior to the issuance of the 10-Day Notice, Defendant
made verbal complaints to on-site management staff about his treatment or concerns
related to how he was being handled by property management.

**RESPONSE:** The Plaintiff admits that prior to the issuance of the 10-Day
Notice, Defendant Alfred Holt made a verbal complaint to the on-site management staff
regarding his wife's vehicle being towed from the parking lot. The Plaintiff denies the
remaining allegations.

1

3.      Admit that the 10-Day Notice was issued within a few weeks after Defendant made a verbal complaint to property staff.

**RESPONSE:** Admit.

4.      Admit that Plaintiff conducted no formal internal investigation regarding Defendant's verbal complaint prior to issuing the 10-Day Notice.

**RESPONSE:** Admit.  Answering further, there was no need to investigate the towing of his wife's vehicle as Mr. Holt admitted that the sticker on his wife's vehicle was expired.

5.      Admit that Plaintiff possesses no written documentation showing that Defendant's verbal complaint was investigated, reviewed, or responded to before the 10-Day Notice was issued.

**RESPONSE:** Admit.

6.      Admit that Property Manager Katrina Blair acknowledged to Defendant that the violation stated in the 10-Day Notice had been mistakenly issued against the wrong tenant, and that Defendant was not deemed to be the source of the nuisance.

**RESPONSE:** Deny.

7.      Admit that Plaintiff took no corrective action to withdraw, cancel, or amend the 10-Day Notice after being made aware that it may have been issued in error.

**RESPONSE:** The Plaintiff admits that it took no action to withdraw, cancel, or amend the 10-Day Notice because it was a valid 10-Day Notice based on specific violations of the Lease Agreement between Plaintiff and Defendants.  Answering further, Katrina Blair did contact Michelle Palermo via telephone. Michelle wanted to confirm that the property had photographic evidence of the drug paraphernalia and marijuana in

2

Defendants' apartment. Katrina confirmed that they did and was instructed to proceed with enforcing the 10-Day Notice. Answering further, the Plaintiff denies that the 10-Day Notice was issued in error.

Respectfully submitted,

AMZAK WAUKEGAN LLC


By: /s/ Jeremy J. Krame
    One of Its Attorneys

Law Offices of David K. Barhydt
Counsel for Plaintiff
2901 Butterfield Road
Oak Brook, IL 60523
630-218-4915
kramer@barhydtlaw.com
Attorney No. 6192456

## **VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certify that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certify as aforesaid that he/she verily believes the same to be true.

Dated: May 2, 2025

AMZAK WAUKEGAN LLC

By: _____

Its Authorized Agent

4

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing Plaintiff's Responses to Defendant's Request to Admit Facts was served upon Defendants by forwarding a copy of same to the address listed below via email, in accordance with the Illinois Code of Civil Procedure and the Illinois Supreme Court Rules on this 5th day of May, 2025:

> Alfred Holt
> Marilia Coutinho Espinola
> 805 Baldwin Ave., Apt. 303
> Waukegan, IL 60085
> albizsmart@gmail.com

/s/ Jeremy J. Kramer

5