**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALFRED HOLT and MARILIA COUTINHO ESPINOLA, | ) ) ) | |
| Plaintiffs, | ) ) | Case No: 1:25-cv-10936 |
| v. | ) ) | Judge LaShonda A. Hunt |
| BH MANAGEMENT SERVICES, LLC, AMZAK MEADOWS, LLC, AMZAK WAUKEGAN, LLC, KATRINA BLAIR, and LAQUEVIA MILLER, | ) ) ) ) ) | Magistrate Judge Keri L. Holleb Hotaling<br><br>Jury Trial Demanded |
| Defendants. | ) ) | |

**DEFENDANTS BH MANAGEMENT SERVICES, LLC,
AMZAK WAUKEGAN, LLC, KATRINA BLAIR, AND
LAQUEVIA MILLER'S MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)**

Defendants, BH MANAGEMENT SERVICES, LLC ("BH"), AMZAK WAUKEGAN, LLC ("AMZAK"), KATRINA BLAIR ("BLAIR"), and LAQUEVIA MILLER ("MILLER") (collectively, "Defendants"), by and through their attorneys, Phillip G. Litchfield, Zachary G. Stillman, and Litchfield Cavo LLP, respectfully move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), to dismiss Plaintiffs' First Amended Complaint in its entirety. In support of this Motion, Defendants state as follows:

## **Table of Contents**

INTRODUCTION ......................................................................................................... 1

PROPOSED AGREED BRIEFING SCHEDULE ........................................................ 3

LEGAL STANDARD ................................................................................................... 3

   I.   12(b)(1) ............................................................................................................. 3

   II.   12(b)(6) ............................................................................................................ 4

ARGUMENT ................................................................................................................ 5

I.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) ....................... 5

II.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ...................... 6

    A.   Shotgun Pleading ............................................................................................. 6

    B.   Fair Housing Act Retaliation (Count I) .......................................................... 7

    C.   Fair Housing Act Discrimination (Count II) .................................................. 9

    D.   Sections 1981 and 1982 (Counts III and IV) .................................................. 10

    E.   Breach of Covenant of Quiet Enjoyment (Count V) ...................................... 12

    F.   Trespass and Intrusion Upon Seclusion (Count VI) ....................................... 13

    G.   Abuse of Process (Count VII) ........................................................................ 15

    H.   Intentional Infliction of Emotional Distress (Count VIII) ............................. 16

CONCLUSION .......................................................................................................................... 17

## Table of Authorities

**Cases**                                                                                 Page(s)

*Allen v. Wright,*
   468 U.S. 737 (1984) ........................................................................................ 2, 6

*Apex Digital, Inc. v. Sears, Roebuck & Co.,*
   572 F.3d 440 (7th Cir. 2009) ........................................................................... 3, 4, 5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................ 4, 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 4

*Benno v. Cent. Lake Cnty. Joint Action Water Agency,*
   242 Ill. App. 3d 306 (2d Dist. 1993) ............................................................... 14

*Bloch v. Frischholz,*
   587 F.3d 771 (7th Cir. 2009) ........................................................................... 9

*Blue Cross Ass'n v. 666 N. Lake Shore Dr. Assocs.,*
   100 Ill. App. 3d 647 (1st Dist. 1981) ............................................................... 12

*Bonney v. King,*
   201 Ill. 47 (1903) ............................................................................................ 15

*Brown v. Lober,*
   75 Ill. 2d 547 (1979) ....................................................................................... 12

*Busse v. Motorola, Inc.,*
   351 Ill. App. 3d 67 (2004) ............................................................................... 13

*Chicago Title Land Tr. Co. v. JS II, LLC,*
   2012 IL App (1st) 063420 ............................................................................... 15

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ........................................................................................ 6

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media,*
   589 U.S. 327 (2020) ........................................................................................ 11, 12

*CustomGuide v. CareerBuilder, LLC*,
   813 F. Supp. 2d 990 (N.D. Ill. 2011)........................................................................... 7

*Dell'Armi Builders, Inc. v. Johnston*,
   172 Ill. App. 3d 144 (2d Dist. 1988) ....................................................................... 12

*Evers v. Astrue*,
   536 F.3d 651 (7th Cir. 2008) ..................................................................................... 3

*Feltmeier v. Feltmeier*,
   207 Ill. 2d 263 (2003) ............................................................................................. 16

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
   458 U.S. 375 (1982) ................................................................................................ 11

*Graham v. Commonwealth Edison Co.*,
   318 Ill. App. 3d 736 (1st Dist. 2000) ...................................................................... 16

*Henson v. CSC Credit Servs.*,
   29 F.3d 280 (7th Cir. 1994) ....................................................................................... 9

*Hobbs v. Goncharko*,
   No. 25-cv-3398, 2025 WL 2532561 (N.D. June 6, 2025).................................. 8, 9, 10

*Holiday Magic, Inc. v. Scott*,
   4 Ill. App. 3d 962 (1st Dist. 1972) .......................................................................... 15

*Horton v. Marovich*,
   925 F. Supp. 540 (N.D. Ill. 1996) ............................................................................. 4

*Johnson v. Flannery*,
   Case No. 3:21-cv-50421, 2022 WL 103710 (N.D. Ill. Jan. 11, 2022) ...................... 8

*Johnson v. Kmart Corp.*,
   311 Ill. App. 3d 573 (1st Dist. 2000) ...................................................................... 14

*Johnson v. Prentice*,
   29 F.4th 895 (7th Cir. 2021) ..................................................................................... 4

*Jones v. Alfred H. Mayer Co.*,
   392 U.S. 409 (1968) ................................................................................................ 11

*Kolegas v. Heftel Broad. Corp.*,
   154 Ill. 2d 1 (1992) ................................................................................................. 16

*Kumar v. Bornstein*,
   354 Ill. App. 3d 159 (1st Dist. 2004) ...................................................................... 15

*Lawrence v. Dunbar*,
   919 F.2d 1525 (11th Cir. 1990) ................................................................................ 3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 3, 5

*Maras v. Milestone, Inc.*,
   348 Ill. App. 3d 1004 (3d Dist. 2004) ............................................................... 14, 17

*Marshall-Mosby v. Corp. Receivables, Inc.*,
   205 F.3d 323 (7th Cir. 2000) ..................................................................................... 4

*McGrath v. Fahey*,
   126 Ill. 2d 78 (1988) ............................................................................................... 16

*Morris v. Office Max, Inc.*,
   89 F.3d 411 (7th Cir. 1996) ................................................................................ 10, 11

*Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr. Co.*,
   2025 WL 975967 (N.D. Ill. Mar. 31, 2025) ............................................................ 10

*Pavlik v. Kornhaber*,
   326 Ill. App. 3d 731 (1st Dist. 2001) ...................................................... 17

*Perry v. Vill. of Arlington Heights*,
   186 F.3d 826 (7th Cir. 1999) ............................................................... 3

*PharMerica Chi., Inc. v. Meisels*,
   772 F. Supp. 2d 938 (N.D. Ill. 2011) .................................................. 9

*Public Fin. Corp. v. Davis*,
   66 Ill. 2d 85 (1976) ......................................................................... 16

*Schweihs v. Chase Home Fin., LLC*,
   2021 IL App (1st) 191779 ................................................................. 14

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) .......................................................................... 5

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..................................................................... 2, 5

*St. John's United Church of Christ v. City of Chicago*,
   502 F.3d 616 (7th Cir. 2007) ............................................................ 3

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ......................................................... 11

*Tobey v. Chibucos*,
   890 F.3d 634 (7th Cir. 2018) ............................................................ 9

*U.S. SEC v. Winemaster*,
   529 F. Supp. 3d 880 (N.D. Ill. 2021) ................................................ 7

*U.S. v. Hassebrock*,
   21 F.4th 494 (7th Cir. 2021) ............................................................. 4

*U.S. v. Sutton*,
   962 F.3d 979 (7th Cir. 2020) ............................................................ 4

*Vega v. Chi. Park Dist.*,
   958 F. Supp. 2d 943 (N.D. Ill. 2013) ................................................ 13

*Wetzel v. Glen St. Andrew Living Cmty., LLC*,
   901 F.3d 856 (7th Cir. 2018) ......................................................... 7, 9

**Statutes**

42 U.S.C. § 1982 .......................................................................... 2, 11, 12

42 U.S.C. § 3604(b) ........................................................................ 2, 9, 10

42 U.S.C. § 3617 ........................................................................... 1, 7, 8, 9

42 U.S.C. §§ 1981 and 1982 ............................................................ Passim

## INTRODUCTION

Plaintiffs Alfred Holt ("Holt") and Marilia Coutinho Espinola ("Espinola") (collectively, "Plaintiffs") initiated this action on September 25, 2025, after being granted leave to proceed in forma pauperis, by filing a sprawling 136-page Complaint asserting fourteen overlapping federal and state causes of action against multiple defendants. ECF Nos. 7, 12, 14. Defendants BH Management Services, LLC, AMZAK Waukegan, LLC, Katrina Blair, and LaQuevia Miller moved to dismiss the original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), with Defendant AMZAK Meadows, LLC also moving for dismissal under Rule 12(b)(6).

Rather than respond on the merits, Plaintiffs exercised their right under Rule 15(a)(1)(B) to amend and, on December 17, 2025, served upon Defendants their First Amended Complaint. (ECF No. 30). In doing so, Plaintiffs abandoned numerous claims asserted in the original pleading and dropped AMZAK Meadows, LLC as a defendant. While the First Amended Complaint ("FAC") is shorter and narrows the theories asserted, it continues to rely on the same core factual allegations and suffers from the same fundamental legal defects that warranted dismissal of the original Complaint.

As relevant here, Plaintiffs' original pleading asserted fourteen causes of action, including alleged violations of the Fair Housing Act, the CARES Act, 42 U.S.C. §§ 1981 and 1982, and a host of Illinois statutory and common-law claims. The FAC pares those claims down but continues to advance conclusory allegations, group pleading, and recitations of statutory elements untethered to facts showing actionable misconduct by any Defendant.

The FAC now asserts the following claims against the noted Defendants:

- Count I – Fair Housing Act Retaliation (42 U.S.C. § 3617) against BH and Blair

1

- Count II – Fair Housing Act Discrimination (42 U.S.C. § 3604(b)) against BH, AMZAK, and Blair
- Count III – Race Discrimination in Contracting (42 U.S.C. § 1981) against BH and AMZAK
- Count IV – Property Rights Discrimination (42 U.S.C. § 1982) against BH and AMZAK
- Count V – Breach of Covenant of Quiet Enjoyment (Illinois Law) against BH and AMZAK
- Count VI – Intrusion Upon Seclusion and Trespass (Illinois Law) against BH and Miller
- Count VII – Abuse of Process (Illinois Law) against BH and AMZAK
- Count VIII – Intentional Infliction of Emotional Distress (Illinois Law) against all Defendants

Although Plaintiffs have narrowed the number of claims and defendants, and despite their effort to streamline the case, the FAC still fails to allege facts sufficient to establish Article III standing or to state a plausible claim for relief. Plaintiffs' claimed harms—including speculative economic losses, alleged development or exacerbation of ADHD, panic attacks, and automobile accidents—are not concrete, particularized, or fairly traceable to any conduct actionable under the federal statutes invoked. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016); *Allen v. Wright*, 468 U.S. 737, 757 (1984). Even assuming *arguendo* that such conditions could constitute cognizable injuries under Article III, Plaintiffs fail to allege facts plausibly showing that any such injuries are fairly traceable to Defendants' conduct. Dismissal is therefore warranted under Rule 12(b)(1).

Independently, dismissal is required under Rule 12(b)(6). The FAC continues to rely on improper group pleading, characterizes facially neutral property-management actions as civil-rights violations, and substitutes conclusory assertions for well-pleaded facts. As set forth below, each remaining count independently fails to state a claim as a matter of law. For the same reasons, Plaintiffs' demand for punitive damages—premised solely on conclusory allegations of "willful" or "reckless" conduct—fails and should be dismissed.

2

Accordingly, Defendants respectfully request that the FAC be dismissed in its entirety, or, at a minimum, that the legally deficient counts be dismissed with prejudice.

## PROPOSED AGREED BRIEFING SCHEDULE

Pursuant to this Court's January 9, 2026, Order (ECF No. 39), granting Defendants' motion for leave to exceed page limit and advising of the need to include a proposed agreed briefing schedule herein, Defendants include the following proposed agreed briefing schedule discussed with Plaintiffs via email: Plaintiffs' response due **February 11, 2026**, and Defendants' reply due **March 4, 2026**.

## LEGAL STANDARD

I. **12(b)(1)**

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Standing is an essential component of subject matter jurisdiction, and the plaintiff bears the burden of establishing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999).

A Rule 12(b)(1) motion may present either a facial or a factual attack on jurisdiction. *Apex Digital*, 572 F.3d at 443–44. A facial attack argues that the complaint itself fails to allege a basis for jurisdiction; in that case, the Court accepts all well-pleaded allegations as true and considers only the pleadings. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). By contrast, a factual attack asserts that, although the complaint is formally sufficient, the facts in reality do not support jurisdiction. In that circumstance, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted to determine whether subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)).

If the plaintiff fails to meet either burden, dismissal under Rule 12(b)(1) is proper. *Apex Digital*, 572 F.3d at 445–46.

## II.    12(b)(6)

A Complaint is subject to dismissal under Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In reviewing such a motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Horton v. Marovich*, 925 F. Supp. 540, 542–43 (N.D. Ill. 1996). However, legal conclusions and conclusory statements are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.

Dismissal is therefore appropriate where, even accepting all well-pleaded facts as true, the complaint fails to allege a set of facts entitling the plaintiff to relief. *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

Rule 8 demands more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

Although pro se pleadings are construed "generously" and reviewed "by substance, not label," *U.S. v. Hassebrock*, 21 F.4th 494, 498 (7th Cir. 2021); *U.S. v. Sutton*, 962 F.3d 979, 984 (7th Cir. 2020), they must still adhere to the procedural rules and requirements outlined by the Federal Rules of Civil Procedure, including pleading requirements. *See Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2021).

## <u>ARGUMENT</u>

**I.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

Even accepting Plaintiffs' allegations as true, their claimed injuries fail to establish Article III standing. To invoke federal jurisdiction, a plaintiff must demonstrate (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The burden of establishing these elements rests on the party invoking jurisdiction. *Apex Digital, Inc.*, 572 F.3d at 443.

The issue is not whether Plaintiffs experienced distress, but whether the FAC plausibly alleges that Defendants caused a legally cognizable injury that is concrete, particularized, and fairly traceable to Defendants' conduct.

Here, Plaintiffs' asserted "damages" (ECF No. 30 ¶¶ 44–46) fail to allege any injury in fact and are entirely speculative and disconnected from any statutory right allegedly violated. The claimed losses—including missed "VA suicide-prevention proposals" totaling millions of dollars, business income allegedly lost due to Espinola's "inability to drive," generalized emotional distress tied to ADHD and anxiety, even if accepted as genuine and sincere, and vehicle-towing expenses arising from enforcement of parking rules—bear no causal relationship to Defendants' alleged housing conduct. None constitutes a cognizable injury "to a legally protected interest" arising under the Fair Housing Act or sections 1981 and 1982. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–43 (1976) (injury must be "fairly traceable" to defendant's challenged conduct, not to independent third-party or personal circumstances).

Moreover, the alleged economic losses are neither concrete nor particularized within the meaning of *Spokeo*. 578 U.S. at 339–40. Plaintiffs identify no facts plausibly showing that Defendants' property-management actions directly caused lost government contracts or other

professional harm. Instead, the asserted chain of causation rests on speculative assumptions involving unrelated business ventures, discretionary third-party funding decisions, and Plaintiffs' own personal circumstances—including alleged missed federal proposal opportunities and downstream business disruptions. Such allegations do not establish injury in fact or traceability. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be "certainly impending," and "allegations of possible future injury are not sufficient").

Even assuming emotional, psychological, or reputational harms could be cognizable in some circumstances, Plaintiffs fail to allege any concrete, particularized injury fairly traceable to Defendants' conduct rather than to Plaintiffs' own independent decisions or circumstances. The supposed injuries—missed VA proposals, a returned business package, lost RBT income, and Espinola's alleged driving limitations—are speculative, self-inflicted, and untraceable to any act of discrimination. *See Allen v. Wright*, 468 U.S. 737, 754 (1984).

Because Plaintiffs have not alleged a concrete injury fairly traceable to Defendants' conduct and redressable by this Court, they lack Article III standing, and the FAC must be dismissed under Rule 12(b)(1). Even if this Court were to find standing, dismissal is independently warranted under Rule 12(b)(6), as discussed below.

## II. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

### A. *Shotgun Pleading*

Plaintiffs' FAC should be dismissed under Rule 12(b)(6) because, although it now nominally identifies individual defendants in certain counts, it continues to rely on improper group pleading and fails to allege specific conduct attributable to each Defendant sufficient to satisfy the elements of the asserted claims. Each count broadly incorporates preceding allegations and then asserts legal conclusions against multiple Defendants without explaining which Defendant

engaged in which allegedly actionable conduct, when, or how that conduct gives rise to liability under the particular statutory or common-law theory invoked.

This pleading approach deprives Defendants of fair notice of the claims against them and makes it impossible to discern the factual basis for liability as to each Defendant. As courts in this District have recognized, pleadings that rely on collective allegations and conclusory assertions— rather than defendant-specific facts—"prevent the opposing party from reasonably being able to prepare a response." *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011); *see also U.S. SEC v. Winemaster*, 529 F. Supp. 3d 880, 906–07 (N.D. Ill. 2021).

Although the FAC lists the defendants associated with each count, it does not allege facts showing how each Defendant's individual conduct satisfies the elements of the claims asserted. Merely naming defendants in a count, without pleading defendant-specific acts, does not satisfy Rule 8's requirement of a short and plain statement showing entitlement to relief. Because the FAC's structure and allegations obscure the basis for liability and rely on conclusory, collective assertions, dismissal under Rule 12(b)(6) is warranted. In any event, as set forth below, each remaining count also independently fails to state a claim as a matter of law.

## B. Fair Housing Act Retaliation (Count I)

Count I of Plaintiffs' FAC asserts a claim for retaliation under the Fair Housing Act, 42 U.S.C. § 3617, against Defendants BH and Blair. Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with" a person because they have exercised rights protected by the FHA. To state a claim for retaliation, a plaintiff must plausibly allege that (1) they engaged in protected activity under the FHA; (2) they suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018).

Although the FAC attempts to recast Plaintiffs' prior disputes with property management as protected activity, it still fails to plausibly allege that Plaintiffs engaged in activity protected by § 3617. Plaintiffs reference various "complaints" and communications with Defendants concerning parking enforcement, payment portal access, late fees, towing, and lease administration. But complaints regarding routine lease enforcement or administrative matters—untethered to opposition to discriminatory housing practices—do not constitute protected activity under the FHA. *See Hobbs v. Goncharko*, No. 25-cv-3398, 2025 WL 2532561, *8 (N.D. June 6, 2025) (quoting *Johnson v. Flannery*, Case No. 3:21-cv-50421, 2022 WL 103710, at *2 (N.D. Ill. Jan. 11, 2022)) ("That may be retaliation, but it is not retaliation under the Fair Housing Act.").

Even assuming Plaintiffs engaged in some form of FHA-protected activity, the FAC fails to allege facts plausibly showing that Defendants took any adverse action because of that activity. The actions Plaintiffs characterize as retaliatory—including notices of lease violations, assessment of late fees, towing enforcement, and initiation of eviction proceedings—are facially neutral property-management actions consistent with routine enforcement of lease terms. The FAC pleads no nonconclusory facts showing that these actions were motivated by retaliatory animus rather than by Plaintiffs' admitted lease violations or unpaid charges.

Plaintiffs further reference a purported "second retaliatory eviction" filed during the pendency of this case but attach only the first page of the state-court eviction complaint. (*See* ECF No. 30 ¶¶ 42–43 & Ex. T.) Defendants respectfully request that the Court take judicial notice of the complete eviction pleading filed in *BH Management Services, LLC v. Holt*, Lake County Case No. 2025EV00001817, which reflects that that action specifically seeks recovery of approximately

$21,056.77 in unpaid rent and charges accrued during Plaintiffs' tenancy. *See* Complete Verified Complaint for Eviction, attached hereto as **Exhibit A.**[1]

Temporal proximity alone, without factual allegations supporting retaliatory motive, is insufficient to state a claim under § 3617. The FAC relies on conclusory assertions that Defendants' conduct was "retaliatory" but does not allege facts linking any Defendant's actions to Plaintiffs' purported FHA-related complaints. Absent such allegations, Plaintiffs fail to plead the required causal connection. *See Hobbs*, 2025 WL 2532561, at *8.

Accordingly, Plaintiffs fail to state a claim for retaliation under 42 U.S.C. § 3617 and Count I should be dismissed with prejudice.

### C. *Fair Housing Act Discrimination (Count II)*

In Count II, Plaintiffs assert a claim for discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(b), against BH, AMZAK, and Blair. That provision prohibits discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling," or in the "provision of services or facilities" connected to a tenancy. The Seventh Circuit has construed § 3604(b) narrowly to encompass either (1) pre-acquisition discrimination in renting or (2) limited post-acquisition conduct involving discriminatory denial of services or facilities tied to the tenancy. *Bloch v. Frischholz*, 587 F.3d 771, 779 (7th Cir. 2009) (en banc); *Wetzel*, 901 F.3d at 867.

Plaintiffs' allegations fall into neither category. Their § 3604(b) claim rests on conclusory assertions of "racial profiling," use of a towing vendor alleged to have a "history of racist conduct," and purported selective enforcement of parking and lease rules. These allegations do not plausibly

---

[1] Courts routinely take judicial notice of state-court pleadings and docket entries as public records on a Rule 12(b)(6) motion without converting the motion to one for summary judgment, particularly where, as here, the pleading is referenced in the complaint and partially attached by the plaintiff and is considered solely for its existence and contents rather than the truth of the allegations asserted. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018); *PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 945 (N.D. Ill. 2011).

connect any Defendant's conduct to Plaintiffs' race or any other protected characteristic. Plaintiffs allege no race-based comments, no discriminatory policy, and no facts suggesting that similarly situated non-minority tenants were treated more favorably.

Instead, the conduct Plaintiffs challenge—billing disputes, payment portal access, vehicle towing, rule enforcement, and apartment entry—constitutes routine, facially neutral property-management activity. Absent factual allegations plausibly supporting an inference that such actions were taken because of Plaintiffs' race, they do not amount to discrimination in the "terms, conditions, or privileges" of rental or in the provision of services under § 3604(b). *See Hobbs*, 2025 WL 2532561, at *3–5.

Plaintiffs' reliance on conclusory labels such as "racial profiling" cannot substitute for factual allegations showing discriminatory intent. Section 3604(b) requires that race be at least a motivating factor in the challenged conduct. *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr. Co.*, 2025 WL 975967, at *42 (N.D. Ill. Mar. 31, 2025). Plaintiffs allege none. Because the FAC pleads no facts permitting a reasonable inference of race-based discrimination, Count II fails to state a claim and should be dismissed with prejudice.

### D. Sections 1981 and 1982 (Counts III and IV)

In Counts III and IV, Plaintiffs assert claims under 42 U.S.C. §§ 1981 and 1982 alleging race-based interference with contractual and property rights. Both claims are asserted solely against Defendants BH and AMZAK. Each fails as a matter of law.

Section 1981 guarantees that "all persons … shall have the same right … to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981. To state a claim, a plaintiff must allege (1) membership in a protected racial class; (2) intentional discrimination on the basis of race; and (3) that the discrimination concerned the making, performance, modification, termination, or enjoyment of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.

1996). Section 1981 reaches only purposeful discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).

Following *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 331 (2020), a § 1981 plaintiff must also plead that, but for race, the plaintiff would not have suffered the alleged loss of a legally protected contractual right. This standard is stricter than Title VII's motivating-factor test. Although discriminatory intent may be pled generally, a complaint must contain sufficient factual content to permit a reasonable inference of purposeful racial discrimination. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *Iqbal*, 556 U.S. at 678.

Section 1982, which derives from the same statutory lineage as § 1981, guarantees all citizens "the same right … to inherit, purchase, lease, sell, hold, and convey real and personal property" as white citizens. 42 U.S.C. § 1982; *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968). Courts construe §§ 1981 and 1982 in tandem, and both require allegations of intentional racial discrimination and but-for causation. *Morris*, 89 F.3d at 414.

Here, Plaintiffs allege no facts plausibly showing intentional racial discrimination by either BH or AMZAK. The FAC challenges routine lease-administration actions—such as enforcement of parking rules, temporary payment-portal access issues, assessment of late fees, and initiation of eviction proceedings—but pleads no facts suggesting that any such actions were taken because of Plaintiffs' race. Plaintiffs identify no contractual term denied or impaired on a race-based basis and allege no facts showing that similarly situated non-minority tenants were treated more favorably.

Absent factual allegations permitting a reasonable inference that race was the but-for cause of any alleged interference with contractual rights, Plaintiffs fail to state a claim under § 1981. *See Comcast*, 589 U.S. at 331.

The same defects foreclose Plaintiffs' § 1982 claim. Plaintiffs do not allege that they were denied the right to lease, possess, or hold property on equal terms, nor do they allege any interference with their ability to "purchase, lease, sell, hold, or convey" property because of race. Their leasehold remained intact throughout the relevant period. At most, the FAC alleges administrative disputes arising from rent payment and management practices—matters outside the scope of § 1982.

Because Plaintiffs allege neither intentional discrimination nor a but-for causal connection between race and any loss of contractual or property rights, Counts III and IV should be dismissed with prejudice.

### E. Breach of Covenant of Quiet Enjoyment (Count V)

In Count V, Plaintiffs assert a claim for breach of the implied covenant of quiet enjoyment against Defendants BH and AMZAK. The claim fails as a matter of law.

Under Illinois law, the covenant of quiet enjoyment protects a tenant against substantial interference with possession of the leased premises. *Blue Cross Ass'n v. 666 N. Lake Shore Dr. Assocs.*, 100 Ill. App. 3d 647, 652 (1st Dist. 1981). A breach requires conduct amounting to actual or constructive eviction or a material disturbance that effectively deprives the tenant of the use and enjoyment of the premises. *Brown v. Lober*, 75 Ill. 2d 547, 553 (1979); *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 149 (2d Dist. 1988). Minor inconveniences, administrative disputes, or isolated incidents do not suffice. *Blue Cross*, 100 Ill. App. 3d at 652.

The FAC alleges no such substantial interference. Plaintiffs do not allege that they were dispossessed, forced to vacate, or constructively evicted, and they remained in their unit

throughout the relevant period. Instead, Plaintiffs complain of routine property-management matters, including temporary payment-portal access issues, assessment of late fees, towing enforcement, and a purported "unannounced" entry for inspection.

Even accepting the allegation of an unannounced entry as true, a single or limited entry— without any allegation of repeated intrusion, prolonged presence, or deprivation of possession— does not constitute the type of substantial interference required to support a claim for breach of quiet enjoyment under Illinois law. At most, such an allegation describes a discrete incident that may give rise to other theories, but it falls well short of actual or constructive eviction or a material disturbance of possession.

Because Plaintiffs allege no loss of possession and no conduct amounting to substantial interference with their tenancy, they fail to state a claim for breach of the implied covenant of quiet enjoyment. Accordingly, Count V should be dismissed with prejudice.

### F. Trespass and Intrusion Upon Seclusion (Count VI)

In Count VI, Plaintiffs assert claims for intrusion upon seclusion and trespass against Defendants BH and Miller based on a single alleged entry into their apartment on or about October 15, 2024. Even accepting Plaintiffs' allegations as true, Count VI fails to state a claim under Illinois law.

1. Intrusion Upon Seclusion

To state a claim for intrusion upon seclusion, a plaintiff must allege (1) an unauthorized intrusion into the plaintiff's seclusion; (2) that the intrusion would be highly offensive to a reasonable person; (3) that the intrusion concerned private matters; and (4) resulting anguish or suffering. *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 70 (2004); *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013). The "highly offensive" element is a demanding standard and

13

is not satisfied by ordinary or *isolated* intrusions. *Johnson v. Kmart Corp.*, 311 Ill. App. 3d 573, 578 (1st Dist. 2000).

Plaintiffs allege that Miller entered their apartment without notice while Holt was showering. Even assuming the truth of that allegation, Plaintiffs plead no facts suggesting that Miller observed Plaintiffs in a private act, lingered, recorded or disseminated private information, or engaged in any conduct beyond the alleged brief entry itself. Illinois courts consistently hold that a single, discrete entry—absent egregious conduct or exploitation of private information—does not rise to the level of a "highly offensive" intrusion required to state a claim for intrusion upon seclusion. *See Johnson*, 311 Ill. App. 3d at 578.

Nor do Plaintiffs allege facts supporting vicarious liability against BH. Intrusion upon seclusion is an intentional tort, and Plaintiffs plead no facts showing that BH authorized, directed, or ratified the alleged entry, or that the conduct furthered a personal purpose unrelated to routine property management. *Maras v. Milestone, Inc.*, 348 Ill. App. 3d 1004, 1008 (3d Dist. 2004).

2. Trespass

Plaintiffs' trespass claim fails for similar reasons. Trespass requires an intentional and unauthorized entry onto land in the possession of another. *Benno v. Cent. Lake Cnty. Joint Action Water Agency*, 242 Ill. App. 3d 306, 313 (2d Dist. 1993). However, entry is not wrongful where it is permitted by the terms of a valid lease authorizing management access for inspections, repairs, or maintenance. *See Schweihs v. Chase Home Fin., LLC*, 2021 IL App (1st) 191779, ¶ 30.

Plaintiffs do not allege facts showing that the entry exceeded any lease-based right of access, was undertaken for a non-management purpose, or was directed by BH. At most, the FAC alleges a disputed or allegedly improper exercise of management access—not a tortious invasion of possessory rights. Even where nominal damages may theoretically be available, Illinois courts

14

still require factual allegations of a wrongful or unauthorized entry. *Chicago Title Land Tr. Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶¶ 77, 88.

Because Plaintiffs allege only a single, isolated entry and fail to plead facts supporting the elements of either intrusion upon seclusion or trespass, Count VI fails to state a claim and should be dismissed with prejudice.

### G. Abuse of Process (Count VII)

In Count VII, Plaintiffs assert a claim for abuse of process against Defendants BH and AMZAK based on the service of a 10-day notice and the filing of an eviction action that was later dismissed. The claim fails under settled Illinois law.

To state a claim for abuse of process, a plaintiff must allege (1) an ulterior purpose or motive, and (2) an act in the use of legal process that is improper in the regular course of proceedings. *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (1st Dist. 2004); *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 967 (1st Dist. 1972). Critically, the tort requires misuse of process after it has been issued; the mere initiation of legal proceedings—even if allegedly motivated by ill will or retaliation—does not suffice. *Holiday Magic*, 4 Ill. App. 3d at 967 (citing *Bonney v. King*, 201 Ill. 47, 51 (1903)).

Plaintiffs allege no such improper act here. They do not identify any coercive, extortionate, or otherwise perverted use of the eviction process beyond its ordinary function—namely, seeking possession of property and other relief available in eviction proceedings. The filing and prosecution of an eviction action, even if later dismissed and even if Plaintiffs subjectively believe it was retaliatory, is a paradigmatic example of lawful process used for its intended purpose. Plaintiffs also appear to suggest that Defendants' conduct is further evidenced by a subsequent eviction action filed during the pendency of this case, but they plead no facts identifying any misuse or perversion of process associated with that proceeding.

15

Because Plaintiffs allege no misuse of process separate from its initiation or maintenance, and no act outside the legitimate scope of the eviction proceeding, Count VII fails to state a claim for abuse of process and should be dismissed with prejudice.

### H. *Intentional Infliction of Emotional Distress (Count VIII)*

In Count VIII, Plaintiffs assert a claim for intentional infliction of emotional distress ("IIED") against all Defendants. The claim too fails as a matter of law.

To state a claim for IIED under Illinois law, a plaintiff must allege: (1) truly extreme and outrageous conduct; (2) intent to cause, or knowledge of a high probability of causing, severe emotional distress; and (3) actual severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 268–69 (2003); *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988). The "extreme and outrageous" element imposes a demanding threshold: the conduct must go "beyond all possible bounds of decency" and be regarded as "utterly intolerable in a civilized community." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992).

Plaintiffs' allegations do not come close to meeting this standard. They complain of routine property-management actions—billing disputes, enforcement of parking rules, temporary payment-portal access issues, pursuit of eviction remedies, and a single alleged unannounced entry—recast in inflammatory terms. Even accepting Plaintiffs' characterization as true, ordinary landlord-tenant disputes and enforcement of contractual rights are not "extreme and outrageous" as a matter of law. *See Public Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976); *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 746–47 (1st Dist. 2000).

Plaintiffs' conclusory allegation that Defendants maintained a relationship with a "racist towing vendor" does not alter the analysis. The FAC pleads no facts showing that any Defendant adopted, endorsed, or engaged in racially abusive conduct, or that any towing action was accompanied by threats, slurs, or other behavior approaching the level required for IIED. Labels

16

and characterizations, without supporting factual allegations, are insufficient under Illinois law. Nor do Plaintiffs allege facts plausibly connecting Defendants' conduct to the severe emotional distress alleged, as opposed to Plaintiffs' own subjective reactions to ordinary landlord-tenant disputes.

Nor do Plaintiffs allege a pattern of ongoing harassment or a continuing course of abusive conduct comparable to the rare cases in which IIED claims survive dismissal. *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 746 (1st Dist. 2001). At most, the FAC describes isolated incidents and administrative disputes, which Illinois courts routinely deem inadequate to support an IIED claim.

Finally, IIED is an intentional tort requiring personal participation. Plaintiffs plead no facts showing that any corporate Defendant authorized, directed, or ratified conduct intended to cause severe emotional distress, or that any individual Defendant acted within the scope of employment with such intent. *Maras v. Milestone, Inc.*, 348 Ill. App. 3d 1004, 1008 (3d Dist. 2004).

Because Plaintiffs allege no conduct "beyond all bounds of decency," no intent to cause severe distress, and no facts showing actual severe emotional harm caused by Defendants' conduct, Count VIII fails to state a claim and should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Plaintiffs' First Amended Complaint should be dismissed in its entirety. Plaintiffs lack Article III standing because their alleged injuries are speculative and not fairly traceable to any conduct by Defendants. Independently, each remaining count fails to state a plausible claim for relief under Rule 12(b)(6). Plaintiffs repeatedly rely on improper group pleading, conflate multiple defendants, and substitute conclusory allegations for well-pleaded facts, warranting dismissal with prejudice.

WHEREFORE, Defendants, BH MANAGEMENT SERVICES, LLC, AMZAK WAUKEGAN, LLC, KATRINA BLAIR, and LAQUEVIA MILLER, respectfully request that

Plaintiffs' First Amended Complaint be dismissed, with prejudice, and for any further relief that this Court deems reasonable and just.

Respectfully submitted,

/s/ *Zachary G. Stillman*
One of the Attorneys for Defendants

Phillip G. Litchfield (6317818)
Zachary G. Stillman (6342749)
**LITCHFIELD CAVO LLP**
303 West Madison, Suite 300
Chicago, IL 60606
(312) 781-6584 (Litchfield)
(312) 781-6672 (Stillman)
LitchfieldP@LitchfieldCavo.com
Stillman@litchfieldcavo.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 21, 2026, the foregoing Motion was served via email to the following parties, as well as electronically filed with the CM/ECF system.

ALFRED HOLT
*Pro Se Plaintiff*
805 Baldwin Ave, Apt 303
Waukegan, Illinois 60085
(224) 518-8376
Albizsmart@gmail.com

MARILIA COUTINHO ESPINOLA
*Pro Se Plaintiff*
805 Baldwin Ave, Apt 303
Waukegan, Illinois 60085
Mariliaholt@gmail.com

/s/ *Zachary G. Stillman*
One of the Attorneys for Defendants