**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALFRED HOLT and MARILIA COUTINHO ESPINOLA,<br><br>Plaintiffs,<br><br>v.<br><br>BH MANAGEMENT SERVICES, LLC, AMZAK WAUKEGAN, LLC, KATRINA BLAIR, and LAQUEVIA MILLER,<br><br>Defendants. | Case No. 25 C 10936<br><br>Hon. LaShonda A. Hunt |

**ORDER**

For the reasons set forth in the statement below, Defendants' motion to dismiss (Dkt. 40) is granted and Plaintiffs' First Amended Complaint (Dkt. 30) is dismissed without prejudice. Any amended complaint must be filed by 9/21/26.

**STATEMENT**

## I. Background

Self-represented Plaintiffs Alfred Holt, who is Black, and Marilia Coutinho Esinola, who is Brazilian (Latina), reside or resided at 805 Baldwin Avenue, Apt. 303, Waukegan, Illinois 60085 (the "Property") (Am. Compl. ¶¶ 9-10, Dkt. 30).[1] They filed this lawsuit against a handful of parties affiliated with the Property: owner AMZAK Waukegan, LLC, property management company BH Management Services, LLC, property manager Katrina Blair, and assistant property manager LaQuevia Miller. (*Id.* ¶¶ 11-14).

Plaintiffs allege that after years of living at the Property without incident, they complained to Blair in 2024 about the Property's towing vendor that towed Plaintiffs' vehicle. (*Id.* ¶¶ 16-22, 26-32). According to Plaintiffs, the vendor selectively towed non-white residents' vehicles. (*Id.* ¶¶ 18-22). Shortly after complaining, Plaintiffs say Defendants began retaliating against them. (*Id.*)

The purported retaliation began with Defendants disabling Plaintiffs' access to the "RentCafe" payment portal, the only mechanism for Plaintiffs to pay their rent. (*Id.* ¶¶ 26-27). It continued with Miller and unnamed maintenance staff entering Plaintiffs' apartment without notice for an inspection. (*Id.* ¶¶ 28-29). And it eventually led to Plaintiffs being served a lease

[1] Defendants' filings indicate that Plaintiffs may no longer reside at the Property. (Reply, Ex. A, Eviction Order, Dkt. 43-1).

termination notice and subsequent eviction notices for allegedly pretextual lease violations that Plaintiffs say were selectively enforced against them, but not white tenants. (*Id.* ¶¶ 30-31, 37-43).

Plaintiffs bring claims under the Fair Housing Act ("FHA"), Sections 1981 and 1982 (Counts I-IV), and myriad state law claims (Counts V-VIII), for which they say they suffered damages of over $60,000,000. As explained below, Plaintiffs' amended complaint is dismissed without prejudice.

## II. Legal Standard

Defendants move to dismiss Plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction, it cannot proceed. *State of Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Cath. Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

To survive a Rule 12(b)(6) motion, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Even so, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022).

## III. Analysis

Defendants contend that Plaintiffs' claims fail because they do not allege non-speculative injury, a standing requirement, and because the Amended Complaint fails to state a claim and relies on impermissible group pleading.

### A. Fed. R. Civ. P. 12(b)(1)

Defendants first argue that Plaintiffs' claimed damages are speculative and so disconnected from their conduct that they do not constitute a concrete injury. (*See generally* Mot. 639-40).[2] While some of Plaintiffs' eye-popping claimed damages would presumably invite scrutiny in litigation, Plaintiffs need not prove their entitlement to those damages at this stage. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may

[2] Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header of the document, not other page numbers in the header or footer."

suffice," because "on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

In any event, the Amended Complaint includes allegations sufficient to show that Plaintiffs were injured. For instance, Plaintiffs allege that Defendants caused them to accrue late fees by restricting their ability to access to the RentCafe portal. (Am. Compl. ¶ 27). They also say they incurred improper towing charges. (*Id.* ¶¶ 18-25).[3] Such monetary damages, however limited, constitute injury. Plaintiffs further allege that Defendants' actions caused them distress, including "fear of homelessness, sleep disturbance, and loss of peace and quiet in their home." (*Id.* ¶ 44). Emotional distress caused by housing discrimination can be a compensable injury. *See Seaton v. Sky Realty Co.*, 491 F.2d 634, 636-38 (7th Cir. 1974); *see also United States v. Ballistrieri*, 981 F.2d 916, 932 (7th Cir. 1992) ("The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action . . . ."). Dismissal on this basis is not warranted.

### B. <u>Fed. R. Civ. P. 12(b)(6)</u>

Defendants next argue that the Amended Complaint must be dismissed under Rule 12(b)(6) claim. The Court begins with Plaintiffs' FHA claims for retaliation under 42 U.S.C. § 3617 (Count I) and for discrimination under 42 U.S.C. § 3604(b) (Count II). The alleged actions at the center of both claims include Defendants' tolerating discriminatory towing by the Property's towing vendor and Defendants' retaliation against Plaintiffs' after they complained about the vendor. (*See, e.g.,* Am. Compl. ¶¶ 30-31, 37-43, 53).

Retaliation claims under § 3617 require a plaintiff allege that (1) they engaged in protected activity under the FHA; (2) they suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018). And discrimination claims § 3604(b) claims require allegations of either (1) pre-acquisition discrimination in renting or (2) post-acquisition conduct involving discriminatory denial of services or facilities tied to the tenancy. *Bloch v. Frischholz*, 587 F.3d 771, 779 (7th Cir. 2009) (en banc).

Defendants primarily argue that Plaintiffs' issues, which they describe as "[g]eneral disputes regarding rent collection, parking enforcement, portal access, or management," are not FHA-protected activities. (*See, e.g.*, Mot. at 701). But this narrow interpretation ignores the fact that Plaintiffs complained specifically about the vendor's discriminatory towing practices. (Am.

[3] Plaintiffs allege that the towing charge they allegedly incurred was reversed by Plaintiff Espinola's bank. (Compl., Ex. D, Dkt. 31 at 518). The Court further notes that Plaintiffs cite to an exhibit—a letter from Plaintiff Espinola's bank crediting her account for the towing charge—in support of the allegation that the bank "investigation determined the towing charges were improper or fraudulent and confirmed the dispute outcome in writing." (Am. Compl. ¶¶ 23-25). But the exhibit includes no such explanation of fraud for the reversed transaction—it simply communicates that a disputed amount of $370 was credited to Plaintiff Espinola's account. (Compl., Ex. D, Dkt. 31 at 518). Plaintiffs are reminded of their obligations under Rule 11, including that their "the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3).

Compl. ¶¶ 18-20, 47). Such a complaint certainly goes beyond a "routine" property management issue as Defendants suggest. (Mot. at 701). And such a complaint could certainly touch on FHA-related issues such that it may be a protected activity. *See Williams v. Heartland Realty Invs., Inc.*, No. 24-1491, 2025 WL 3142139, at *1 (7th Cir. Nov. 10, 2025) (discussing FHA claim where lease provision was selectively enforced on Black resident); *cf. Wetzel*, 901 F.3d at 859-62 (discussing FHA liability based on response to third parties' discriminatory acts).

However, the complaint still fails to connect the Plaintiffs' complaint about the vendor to the alleged resulting harm. As a counterexample, in *Wetzel v. Glen St. Andrew Living Community., LLC*, 901 F.3d 856 (7th Cir. 2018), dismissal of a plaintiff's FHA claims was reversed where the plaintiff faced "a torrent of physical and verbal abuse from other residents" at a defendant senior living facility "because she [was] openly lesbian." *Id.* at 859. There, the 15-month campaign of abuse and harassment included plaintiff being repeatedly berated with slurs and curse words, another resident announcing that he "reveled in the memory" of the Pulse nightclub massacre, residents telling her that she would burn in hell because of her sexual orientation, and that she was repeatedly assaulted, spat at, and knocked off the motorized scooter that she relied on for mobility. *Id*. at 680.

That plaintiff's FHA claim was allowed to proceed because the defendant responded to the plaintiff's requests for help not by assisting her, but instead by taking "affirmative steps to retaliate against Wetzel for her complaints," including "limit[ing] her use of facilities" that she was guaranteed access to under her tenant agreement "and build[ing] a case for her eviction." *Id*. at 859-60. The court noted that had the defendant "done nothing but listen," there may have been no FHA case. *Id.* at 860. But because the defendant responded to Wetzel's complaints of being "trampled" by "relegat[ing] Wetzel to a less desirable dining room location" and responded to her other complaints by "barr[ing] her from the lobby" before "falsely accus[ing] Wetzel of smoking in her room," and once, when she denied smoking in her room, "slapp[ing] her across the face," her claims could proceed. *Id*.

And in *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir. 2004), a Jewish plaintiff's FHA claim under ¶ 3617 was allowed to proceed where the defendant president of the plaintiff's homeowner association engaged in a campaign of discriminatory harassment against the plaintiff because of their religion:

> The president of the association wrote "H-town property" on a wall of the plaintiffs' property, "H-town" being short for "Hymie Town," and he further vandalized the property by damaging trees and plants and cutting down strings of holiday lights. When the plaintiffs posted flyers offering a reward for identifying the vandal, the president destroyed or removed the flyers. To further thwart the plaintiffs' efforts to investigate the vandalizing of their property, the association destroyed minutes of its board meetings and erased a tape recording of a meeting at which the president had threatened to "make an example" of the plaintiffs. The defendants applied chemicals to the plaintiffs' yard against the plaintiffs' wishes and with adverse effects on their health and peace of mind and adopted rules restricting the plaintiffs' lawful use of their property. The entire campaign of harassment was caused or at least influenced by the religion of the Jewish plaintiff.

*Id.* at 328. In both *Wetzel* and *Halprin*, the complaint traced the discrimination against those plaintiffs' to the harm they suffered.

Contrast those allegations with the complaint here. Plaintiffs allege their vehicle was towed a single time by a towing vendor that was racist, a characteristic that Plaintiffs allege Blair acknowledged. (Am. Compl. ¶¶ 18-22). They further allege that the circumstances surrounding the tow "were wrongful and selective when compared to similarly situated white tenants' vehicles." (*Id.* at ¶ 18). But Plaintiffs point to no factual allegations explaining that conclusion. There is no allegation that other non-white tenants' vehicles were towed, or that white tenants' vehicles were left alone. Plaintiffs point only to the Amended Complaint's Exhibit U, an email including two pictures, to show the "selective parking enforcement":






(Am. Compl. Ex. U, Dkt. 31 at 599-600).

But that exhibit does not show selective enforcement, and the allegations do not fill the gap either. The first photograph in Exhibit U shows only two vehicles: one that is seemingly Plaintiffs' parked in its correct spot, and a second that is presumably another resident's and is parked over the line. (*Id.*) The second photo shows only the second vehicle remaining "after my car was towed." (*Id.* at 599). Nothing in the Complaint explains how this was discriminatory enforcement

against Plaintiffs. Without the conclusory allegation that the tow was discriminatory, it is only clear that Plaintiffs' vehicle was—apparently wrongly, for whatever reason—towed.

The retaliation allegations fare similarly. (Am. Compl. ¶ 26). In their opposition, Plaintiffs' argue that they alleged causation between the vendor complaint and Defendants' retaliation, pointing to the "close temporal proximity and surrounding circumstances," including the lack of a formal investigation into the towing vendor before they "immediate[ly] pivot[ed] to punitive enforcement." (Opp. at 692, Dkt. 42). But again, there are no allegations bridging the gap between Plaintiffs' complaints about the towing vendor to Defendants' discriminatory intent or to their purportedly retaliatory actions. At most, Plaintiffs claim that they had resided at the Property since 2019 but had no issues until 2024 once they complained to Defendants. But the Court cannot infer from that bare allegation that retaliatory animus motivated Defendants. Indeed, Plaintiffs' allege that Blair agreed the vendor was racist; as such, why would Defendants retaliate against Plaintiffs for making such an accusation? Even less clear is how the lack of a formal investigation into the towing vendor is connected to the RentCafe removal and eventual eviction notice.

Related to this point, Plaintiffs' allegations regarding the September 2024 retaliatory removal of their access to RentCafe—"the only method Defendants accepted [for rent payments]"—caused them to incur late fees, (*see, e.g.*, Am. Compl. ¶¶ 26-27; *id*., Ex. M, Dkt. 31 at 592), is arguably contradicted by documents filed in the state court eviction action, showing that Plaintiffs in fact made a "chk# Flex" payment for $1,688.39 on October 4, 2024, (Mot., Ex. A, Dkt. 40-1 at 681).[4] To survive dismissal, Plaintiffs must set forth a basis for a plausible finding of misconduct by Defendants. They have not met that standard.

Similarly, Plaintiffs' allegations that the lease provisions they received a lease termination notice for—"marijuana presence" and having an "unauthorized pet"—were "selectively enforced" against them are also conclusory. (Am. Compl. ¶¶ 30-32). To be clear, such selective enforcement can give rise to FHA claims. *See Williams*, 2025 WL 3142139, at *1 (discussing FHA claim where grill prohibition was selectively enforced on Black resident despite allegations that plaintiff had "seen other tenants with grills"). But, like the allegations about selective towing, the allegations that these provisions were selectively enforced are entirely conclusory. (Am. Compl. ¶¶ 30-32).

In sum, there are insufficient allegations to allow even an inference of discrimination or retaliation. *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, No. 18 CV 839, 2025 WL 975967, at *5 (N.D. Ill. Mar. 31, 2025), *opinion clarified,* No. 18 CV 839, 2025 WL 3306306 (N.D. Ill. July 9, 2025). It is unclear how these events are connected. Without the conclusory allegations, all the Court is left with are the alleged facts that Plaintiffs complained about the vendor, then were unable

---

[4] The Court may take judicial notice of state-court pleadings as public records on a Rule 12(b)(6) motion without converting the motion to a motion for summary judgment because the pleading is referenced in and partially attached to the Amended Complaint, (Am. Compl. ¶ 43; id., Ex. M, Dkt. 31 at 597) and is considered solely for its existence and contents rather than the truth of the allegations asserted. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018);

to access the RentCafe portal, then later received a 10-Day lease termination notice. (Am. Compl. ¶¶ 19-22, 26, 30).

Next, Plaintiffs' claims for racial discrimination in contracting under 42 U.S.C. § 1981 (Count III) and property rights discrimination under 42 U.S.C. § 1982 (Count IV) fail for similar reasons. These claims require that a plaintiff allege, among other things, intentional discrimination based on race. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). While Plaintiffs need not *prove* the existence of such intentional discriminatory at this stage, they still must provide non-conclusory factual allegations that such intent was present. To the extent there are allegations of such intent in the amended complaint, they are entirely conclusory.

Last, Defendants argue the Amended Complaint fails to state a claim because it "rel[ies] on improper group pleading and fails to allege specific conduct attributable to each Defendant sufficient to satisfy the elements of the asserted claims." (Mot. at 640-41). Defendants are correct that allegations must put a defendant on notice of the claims asserted against them. *See Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 955 (N.D. Ill. 2024) (noting that a complaint "does not violate Rule 8 so long as [it] provides sufficient detail to put the defendants on notice of the claims.") (internal citations omitted).

"Group pleading, while not ideal, is not categorically impermissible." *Fulton v. Bartik*, 547 F. Supp. 3d 799, 810 (N.D. Ill. 2021); *see also Robles v. Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019) ("There is no 'group pleading' doctrine, *per se*, that either permits or forbids allegations against defendants collectively."). On one hand, courts have refused to dismiss a civil rights complaint on group pleading grounds where "a plaintiff [wa]s forced to employ limited group pleading because they [could not] specify which individual committed which parts of the alleged misconduct before the benefit of discovery." *See Linke v. Baits*, 2025 WL 2689922, at *8 (N.D. Ill. Sep. 19, 2025). And where alleged misconduct is relatively "straightforward," allegations "directed at multiple defendants can be adequate to plead personal involvement, particularly where the allegations pertain to all defendants." *Jackson v. Forberg*, 831 F. Supp. 3d 661, 684 (N.D. Ill. 2026) (citing *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)). Also, where a complaint "directs every allegation at all defendants" it still puts defendants on notice because they need not "speculate about which claims or allegations pertain to them, and they must defend against them all." *Sexton v. Bd. of Educ., Dist. 130, Cook Cnty., Illinois*, 815 F. Supp. 3d 801, 806-07 (N.D. Ill. 2025) (citing *Sloan*, 711 F. Supp. 3d at 955-56).

But "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). For instance, a complaint that broadly refers to defendants collectively and ambiguously attributes specific actions to an unknown defendant or group of defendants does not provide adequate notice. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the use of "one or more of the Defendants" in the complaint failed to provide notice to defendants). In short, there is no bright line rule for when allegations are sufficient to give a particular defendant notice.

Plaintiffs' allegations here toe that somewhat muddied line. On one hand, the Amended Complaint is rife with allegations levied at the group of Defendants. (*See, e.g.*, Am. Compl. ¶¶ 25-27, 33-35, 37, 39, 41, 43). Even several of the allegations that begin to describe a specific Defendant's conduct wade into potentially problematic group pleading territory. (*See, e.g.*, Am. Compl ¶ 4 ("Defendant *Katrina Blair* acknowledged the towing vendor's racism and confirmed *Defendants'* awareness of it . . . .") (emphasis added)). But on the other, the misconduct Plaintiffs allege is relatively straightforward and may be sufficient to put Defendants on notice. Plaintiffs say they complained to their property management company about a purported racist vendor. Then Defendants acted together to retaliate against them—on multiple fronts—for those complaints. Further, in some instances, it is hard to imagine how Plaintiffs *could* know who specifically took part in an alleged retaliatory action, like issuing the lease termination notice to Plaintiffs, without discovery. While the Court stops short of saying dismissal is warranted on this basis alone, the Amended Complaint could stand for more specific pleading regarding specific Defendants' actions where feasible.

Because Plaintiffs' federal claims are dismissed, the Court lacks supplemental jurisdiction over and defers ruling their state law claims (Counts V-VIII). Any amended complaint regarding Plaintiffs' state law claims should be cognizant of the pleading standards and Rule 11 obligations as discussed herein.

In conclusion, Plaintiffs' First Amended Complaint is dismissed without prejudice. Plaintiffs are granted leave to file an amended complaint consistent with this ruling by 9/21/26. Failure to do so will result in this converting to a dismissal with prejudice and the case being closed without further court order.

**DATED**: August 31, 2026

**ENTERED**:

LaShonda A Hunt

LASHONDA A. HUNT
United States District Judge